**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BONNIE FISH, CHRISTOPHER MINO, MONICA LEE WOOSLEY, LYNDA D. HARDMAN and EVOLVE BANK & TRUST, | Case No. 09 cv 1668 |
| Plaintiffs, | Judge Shadur |
| | Magistrate Judge Valdez |
| v. | |
| GREATBANC TRUST COMPANY, LEE MORGAN, ASHA MORGAN MORAN and CHANDRA ATTIKEN, | |
| Defendants. | |

**DEFENDANTS LEE MORGAN'S, ASHA MORGAN MORAN'S AND**
**CHANDRA ATTIKEN'S MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

By:     /s/ Michael L. Scheier
             One of Their Attorneys

Michael L. Scheier
Danielle M. D'Addesa
Keating Muething & Klekamp PLL
One East Fourth Street, Suite 1400
Cincinnati, OH 45202
(513) 579-6545

- and -

John P. Morrison
Joshua J. Heidelman
K&L GATES LLP
70 W. Madison, Suite 3100
Chicago, Illinois 60602
(312) 372-1121

## TABLE OF CONTENTS

**Page**

I.    **INTRODUCTION**.................................................................................1
II.   **STATEMENT OF FACTS**..................................................................2

    A.    **The Parties** .........................................................................2

    B.    **The Plan** ...............................................................................3
         1.   *Plan Provides for Ownership of Company Stock* ...................3
         2.   *ESOP Appoints Greatbanc as Independent Trustee*
             *for the Tender Offer* ...............................................................4

    C.    **The Tender Offer** ................................................................5
         1.   *The Offer to Purchase is Distributed to All Antioch*
             *Shareholders, Including Plaintiffs, Disclosing to Them*
             *All of the Risks of Which the Plaintiffs Now Complaint* .........6

         2.   *Greatbanc, as Independent Trustee of the ESOP for*
             *Purposes of the Tender Offer, Determines that the*
             *Tender Offer is in the Best Interests of the Participants* .........7

         3.   *Consummation of the Tender Offer* .........................................9

    D.    **Antioch's Insolvency is Caused by the Specific Risks Disclosed**
         **to Plaintiffs Prior to the Tender Offer** ................................9

III.   **MOTION TO DISMISS STANDARD** .......................................10
IV.   **LEGAL ARGUMENT**......................................................................11

    A.    **Plaintiffs' ERISA Claims are Time-Barred Because This Action**
         **Was Commenced More Than Three Years After Plaintiffs'**
         **Acquired Actual Knowledge of the Tender Offer** ...........11
         1.   *The Statute of Limitations Defense is Properly*
             *Considered on a Rule 12(b)(6) Motion to Dismiss* .................11

         2.   *ERISA's Three Year Statute of Limitations*
             *Applies to Bar the Plaintiffs' Claims* ....................................11

         3.   *Plaintiffs' Had Actual Knowledge of the Transaction*
             *Giving Rise to Their Alleged Claims, the Precise Risks*
             *that the Transaction Posed, and Even Admit in Their*
             *Pleading that the Limitations Period Has Run* ........................14
             a.   **Disclosure of the Transaction Triggered**
                **the Running of the Limitations Period** ............................14

b.   **Plaintiffs Had Actual Knowledge of the Alleged Breach More Than Three Years Prior to Filing this Action** ..............................15

c.   **Plaintiffs Concede Their Claims are Time-Barred** ......................17

B.   **The Antioch Defendants Were Not ERISA Fiduciaries With Respect to the Tender Offer, and Therefore Did Not Breach Any Fiduciary Duties Under ERISA § 404** ......................18

1.   *The Plain Language of the Amended Complaint Paragraphs 42 and 43* ..............................................................19

2.   *The ESOP Documents and Offer to Purchase Incorporated Into the Amended Complaint Further Demonstrate that the Antioch Defendants Did Not Act as ERISA Fiduciaries for the Tender Offer* ....................................21

C.   **Plaintiffs' § 406 Prohibited Transaction Claim Fails As a Matter of Law** ..........................................................22

V.   **CONCLUSION** ........................................................................24

## TABLE OF AUTHORITIES

### CASES

*188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730 (7th Cir. 2002) ....................................10

*Adolescent Psychiatry, S.C. v. Home Life Insurance Co.*, 941 F.2d 561 (7th Cir. 1991) ...........................................................................................................................21

*Amato v. Western Union International, Inc.*, 596 F. Supp. 963 (S.D.N.Y. 1984) .............23

*Angell v. John Hancock Life Insurance Co.*, 421 F. Supp. 2d 1168 (E.D. Mo. 2006) .............................................................................................................................11

*Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516 (6th Cir. 2008) .................................11

*Bontkowski v. First National Bank of Cicero*, 998 F.2d 459 (7th Cir. 1993) ...................10

*Brown v. American Life Holdings, Inc.*, 190 F.3d 856 (8th Cir. 1999) .......................13, 14

*Chao v. Emerald Capital Management, Ltd.*, 2006 WL 2620055 (W.D.N.Y. 2006) ..............................................................................................................13, 14

*Edes v. Verizon Communications, Inc.*, 417 F.3d 133 (1st Cir. 2005)...............................17

*Evans v. City of Chicago*, 2007 U.S. Dist. LEXIS 87846 (N.D. Ill. 2007).......................11

*Flake v. Hoskins*, 55 F. Supp. 2d 1196 (D. Kan. 1999) ....................................................20

*Garratt v. Supplemental Executive Retirement Plan of Knowles Electronics, Inc.*, 2001 WL 969071 (N.D. Ill. 2001) ..............................................................................4

*Golbourn v. General Motors Company*, 1998 U.S. Dist. LEXIS 5529 (N.D. Ill. 1998) .............................................................................................................................11

*Hecker v. Deere*, 556 F.3d 575 (7th Cir. 2009) ...............................................................10

*Holzer v. Prudential Equity Group LLC*, 458 F. Supp. 2d 587 (N.D. Ill. 2006) ...............10

*Hunter v. Caliber System, Inc.*, 220 F.3d 702, 724-25 (6th Cir. 2000).............................23

*Jordan v. VanDyke*, 2000 U.S. Dist. LEXIS 938 (N.D. Ill. Jan. 28, 2000) ......................11

*Kaden v. First Commonwealth Insurance Co.*, 2006 WL 1444886 (N.D. Ill. 2006)... 10-11

*Kauthar SDN BHD v. Sternberg*, 149 F.3d 659 (7th Cir. 1998)........................................11

*Klosterman v. Western General Management*, 32 F.3d 1119 (7th Cir. 1994)...................19

*Lockheed Corp. v. Spink*, 517 U.S. 882 (1996)..................................................................23

*Martin v. Feilen*, 965 F.2d 660 (8th Cir. 1992) .............................................................20

*Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078 (7th Cir. 1992) ........... 12-13

*Neuma, Inc. v. Wells Fargo & Co.*, 515 F. Supp. 2d 825 (N.D. Ill. 2006) ......................12

*Pappas v. Buck Consultants, Inc.*, 923 F.2d 531 (7th Cir. 1991) .........................19, 20, 21

*Pegram v. Herdrich*, 503 U.S. 211 (2000)........................................................................18

*Pohl v. Nat'l Benefits Consultants, Inc.*, 956 F.2d 126 (7th Cir. 1992)............................21

*Potter v. ICI Americas Inc.*, 103 F. Supp. 2d 1062 (S.D. Ind. 1999)................................11

*Reeves v. Airlite Plastics, Co.*, 2005 WL 2347242 (D. Neb. 2005)......................13, 14, 17

*Rizzo v. Bankers Life & Casualty Co.*, 2004 WL 1093359 (N.D. Ill. 2004).....................10

*Rush v. Martin Petersen Co.*, 83 F.3d 894 (7th Cir. 1990)................................................12

*Spangler v. Altec International Ltd. Partnership*, 1999 U.S. App. LEXIS 2114
    (7th Cir. 1999)................................................................................................................13

*Tamayo v. Blagojevich*, 526 F.3d 1074 (7th Cir. 2008)....................................................10

*Thompson v.  Continental Casualty Co.*, 2009 U.S. Dist. LEXIS 20559 (N.D. Ill.
    2009) ................................................................................................................................11

*Varity Corp. v. Howe*, 516 U.S. 489 (1995) .....................................................................18

*Venture Associates Corp. v. Zenith Data System Corp.*, 987 F.2d 429 (7th Cir.
    1993) ................................................................................................................................10

*Wolin v. Smith Barney Inc.*, 83 F.3d 847 (7th Cir. 1996) .................................................13

*Wright v. Associated Insurance Cos., Inc.*, 29 F.3d 1244 (7th Cir. 1994)....................4, 10

*Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004) ......................23, 24

*Young v. General Motors Investment Management Corp.*,
    550 F. Supp. 2d 416 (S.D.N.Y. 2008)........................................................12, 13, 14, 17

## STATUTES

29 U.S.C. § 1002(21)(A)...............................................................................................14, 18

29 U.S.C. § 1104(a)(1)(D) ...........................................................................................21, 22

29 U.S.C. § 1106...........................................................................................2, 14, 22, 23, 24

29 U.S.C. § 1113................................................................................................1, 2, 12, 14, 15

29 U.S.C. § 1132(a)(2)...........................................................................................................3

Internal Revenue Code § 401(a) ...........................................................................................3

Internal Revenue Code § 4975(e)(7).....................................................................................3

## MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Lee Morgan, Asha Morgan Moran, and Chandra Attiken (collectively the "Antioch Defendants") move the Court for an Order dismissing Plaintiffs' First Amended Complaint ("Amended Complaint").

## I.    INTRODUCTION

Plaintiffs purport to bring this action under the Employee Retirement Income Security Act of 1974 ("ERISA") for plan-wide relief on behalf of a potential putative class of participants and beneficiaries of the Antioch Company Employee Stock Ownership Plan (the "Plan" or "ESOP"). The entire basis for Plaintiffs' action centers around a 2003 tender offer (the "Tender Offer") made to all Antioch shareholders. (*See* Amended Complaint *passim*). Plaintiffs allege that the Tender Offer – more specifically the ESOP's decision not to tender its shares as part of the Tender Offer – was a prohibited transaction and that the Antioch Defendants breached their fiduciary duties to the ESOP by way of the Tender Offer. (*Id.* ¶¶ 70, 77-81). Plaintiffs' Amended Complaint, however, is defective on multiple grounds requiring dismissal.

First and foremost, Plaintiffs' action is barred by the three year statute of limitations set forth in ERISA § 413, 29 U.S.C. § 1113. Plaintiffs had actual knowledge of the Tender Offer – and all risks associated with it – as early as November 2003 when the details of this "transaction" were explicitly disclosed to Plaintiffs. This ERISA action, however, was not filed by Plaintiffs against the Antioch Defendants until March 2009 – more than five years after the "transaction" on which Plaintiffs' claims are entirely based. Thus, Plaintiffs' claims are time-barred.

Second, Plaintiffs seek to assert § 404 liability against the Antioch Defendants – non-ERISA fiduciaries with respect to the ESOP in connection with the Tender Offer – based solely on the fact that the Antioch Defendants are members of the Advisory Committee ("Committee"). The Plan documents and Trust Agreement (the "ESOP Documents") and Tender Offer, however,

1

explicitly make clear that the Antioch Defendants delegated any and all fiduciary responsibilities on behalf of the ESOP relating to the Tender Offer to an independent Trustee, who maintained exclusive decision-making power to act on behalf of the ESOP without direction from the Committee. Thus, the Antioch Defendants were not fiduciaries with respect to the ESOP in connection with the Tender Offer, and Plaintiffs' ERISA § 404 claim therefore fails as a matter of law.

Third, Plaintiffs assert that the Tender Offer was a prohibited transaction under ERISA § 406 in that the ESOP – by not tendering its Antioch shares as part of the Tender Offer – allegedly participated in a "sale or exchange of [] property between a plan and a party in interest or a fiduciary." 29 U.S.C. § 1106. As a matter of law, however, the independent Trustee's decision to not tender the ESOP's shares as part of the Tender Offer does not amount to a "sale or exchange of any property" and Plaintiffs' purported ERISA § 406 prohibited transaction claim is therefore baseless.

For the foregoing reasons, separately or collectively, the Court should dismiss Plaintiffs' Amended Complaint.

## II.   <u>STATEMENT OF FACTS</u>

This Statement of Facts is taken from the factual allegations of Plaintiffs' Amended Complaint, the exhibits attached to the Antioch Defendants' pleading, and other materials incorporated into the Amended Complaint under Seventh Circuit authority, all of which the Court may consider without converting the Motion to Dismiss to a motion for summary judgment.

### A.   <u>The Parties</u>

Plaintiffs Bonnie Fish ("Fish"), Christopher Mino ("Mino"), Monica Lee Woosley ("Woosley"), and Lynda D. Hardman ("Hardman") are/were employees of Antioch Company

("Antioch" or the "Company") and participants in the ESOP. (Amended Complaint ¶¶ 1-4). Plaintiff Evolve Bank & Trust ("Evolve") is an Arkansas bank and trust company that was appointed on or about January 17, 2008 to serve as trustee for the ESOP. (*Id*. ¶ 5). Plaintiff Evolve purports to bring this ERISA action as ESOP Trustee. (*Id.* ¶ 10). Plaintiffs Fish, Mino, Woosley and Hardman purport to bring this action in a representative capacity on behalf of the Plan as members of a class of "all persons except Defendants, who were participants or beneficiaries of the ESOP as of December 16, 2003, and continue to hold ESOP accounts invested in Antioch stock as of the present date." (*Id.* ¶¶ 10, 16). Plaintiffs Fish, Mino, Woosley and Hardman also seek to reserve their right to bring this action without class certification pursuant to 29 U.S.C. § 1132(a)(2). (*Id.* ¶ 15). Plaintiffs Fish, Mino, Woosley, Hardman, and Evolve are collectively referred to as Plaintiffs.

Plaintiffs' Amended Complaint names the following Defendants: (1) Greatbanc Trust Company ("Greatbanc") – independent Trustee for the ESOP with respect to the Tender Offer; (2) Lee Morgan – President, Chairman of the Antioch Board of Directors (the "Board"), and member of the Committee; (3) Asha Morgan Moran – Vice-President, CEO, Antioch Director, and member of the Committee; and (4) Chandra Attiken – Vice-President of Human Resources, and member of the Committee. (*Id.* ¶¶ 6-9).

### B. **The Plan**

#### 1. ***Plan Provides for Ownership of Company Stock***

The Plan is a stock bonus plan, qualified under § 401(a) of the Internal Revenue Code of 1986, as amended (the "Code"), and an employee stock ownership plan under § 4975(e)(7) of the Code and § 407(d)(6) of ERISA. (*See* Affidavit of Chandra Attiken, attached as Attachment A

3

("*Att.* A"), Exhibit ("*Ex.*") 1, Plan at § 1)[1].  The ESOP also includes the Antioch Company Employee Stock Ownership Trust Agreement (the "Trust Agreement").  (*Id.* at § 2).

The primary purpose of the Plan is to enable participating employees or former employees ("Participants") to "acquire stock ownership interests in the Company."  (*Id.* at § 1).  Consistent with ERISA and Congressional intent, the Plan is designed not only to invest primarily in Antioch stock, but also "to be available as a technique of corporate finance to the Company."  (*Id.* at §§ 1, 16).

During the periods relevant to the Amended Complaint, the ESOP was generally administered by the Committee, whose members were appointed by the Board. (*Id.* at §§ 1, 18(a)).

## 2.    *ESOP Appoints Greatbanc as Independent Trustee for the Tender Offer*

The Trust Agreement was amended, effective August 20, 2003, to reflect the appointment of Greatbanc as an independent Trustee with respect to the Tender Offer.  (*See* Trust Agreement, *Att.* A, *Ex.* 1).  Specifically, Greatbanc was appointed as an independent Trustee to make decisions on behalf of the ESOP in connection with the Tender Offer without direction from the Committee.

In that regard, Paragraph B(6) of the Trust Agreement states that "the decision whether or not to tender shares of Company Stock to the Company in December 2003 shall be effected by [Greatbanc] (without directions from the Committee) based on the Trustee's determination (in

---

[1] In compliance with Seventh Circuit authority, the Antioch Defendants have attached the Affidavit of Chandra Attiken authenticating the exhibits attached in support of their Motion to Dismiss.  *Wright v. Associated Ins. Cos., Inc.,* 29 F.3d 1244, 1247 (7th Cir. 1994) (documents attached to motion to dismiss may be considered when properly authenticated by an affidavit); *Garratt v. Supplemental Executive Retirement Plan of Knowles Electronics, Inc.,* 2001 WL 969071, at *3 (N.D. Ill. 2001) (same).

the exercise of its reasonable judgment) that such decision is in the best interests of the Plan and the Participants . . . ." (*Id.* at ¶ B(6)).[2]

Effective October 1, 2003, the Plan was also amended to make it consistent with the amended Trust Agreement and to recognize the appointment of Greatbanc as a Trustee independent of the Committee and its direction with respect to the Tender Offer. (Amendment No. 1 to the Amended and Restated Plan ("Plan Amendment No. 1"), *Att.* A, *Ex.* 1; Amended Complaint ¶ 40). Tracking the amendment to the Trust Agreement, Plan Amendment No. 1 states that "notwithstanding the provisions of Section 5(a) and (b), the decision whether or not to tender shares of Company Stock to the Company in December 2003 shall be effected by the Trustee (without directions from the Committee) based on the Trustee's determination (in the exercise of reasonable judgment) that such decision is in the best interests of the Plan and the Participants and is in compliance with all applicable requirements of the Code and ERISA." (Plan Amendment No. 1, *Att.* A, *Ex.* 1). Thus, Plan Amendment No. 1 channeled discretion to sell the ESOP's Antioch stock in connection with the Tender Offer to Greatbanc, and away from the Committee. (*Id.*; Amended Complaint ¶ 40).

Accordingly, as of October 1, 2003, only Greatbanc "had the power to approve or reject" the Tender Offer in accordance with the "best interests of the Plan and the Participants" and "without directions from the Committee." (Plan Amendment No. 1, *Att.* A, *Ex.* 1; Amended Complaint ¶ 42).

C.     **The Tender Offer**

The entirety of Plaintiffs' Amended Complaint centers around the Tender Offer made to all Antioch shareholders in November 2003 and the independent Trustee's decision not to tender

---

[2] Prior to the August 2003 amendment to the Trust Agreement, the Committee was charged to "direct the Trustee to sell" Antioch stock (*see* Plan, *Att.* A, *Ex.* 1 at § 5(b)), and the Trustee generally took "directions from the Committee" in regard to investment decisions. (*Id.* at § 5(a)).

the ESOP's Antioch stock in response to the Tender Offer. (Amended Complaint ¶¶ 41, 42, 70, 79; *see also* The Antioch Company Offer to Purchase and Proxy Statement, dated November 14, 2003 (the "Offer to Purchase"), *Att.* A, *Ex.* 2 at 5). Accordingly, the Antioch Defendants will describe the key aspects of the Tender Offer relevant to this Motion to Dismiss.

> ### 1. *The Offer to Purchase is Distributed to All Antioch Shareholders, Including Plaintiffs, Disclosing to Them <u>All of the Risks of Which the Plaintiffs Now Complain</u>*

On November 14, 2003, Antioch distributed the Offer to Purchase to all Antioch shareholders, including all Participants. (Amended Complaint ¶ 41). The Offer to Purchase described the details and risks of the Tender Offer, and stated numerous times that a condition of the offer was that Greatbanc not tender the ESOP's Antioch stock in the Tender Offer. (Offer to Purchase, *Att.* A, *Ex.* 2 at 2, 6, 19, 30; *see also* Amended Complaint ¶¶ 41-42). Thus, all Antioch shareholders were aware in November 2003 that the transaction would only take place if the ESOP Trustee did not tender the ESOP's Antioch stock in the Tender Offer. (*Id.*).

Likewise, the Offer to Purchase contained a comprehensive Risk Factors section that alerted all Antioch shareholders to the exact risks of which Plaintiffs now complain. (Offer to Purchase, *Att.* A, *Ex.* 2 at 67-72). Because Antioch stock is not publicly traded and requires an appraisal for valuation purposes, the Risk Factors disclosure section clearly stated that Greatbanc and Antioch (together with their financial advisors) may have overvalued or undervalued Antioch's business when determining the purchase price of Antioch stock. (*Id.* at 69). The Offer to Purchase also clearly stated that Antioch would take on a substantial amount of indebtedness in connection with the Tender Offer and would be substantially more leveraged as a result, which could cause harmful consequences to Antioch. (*Id.* at 67).

Importantly, the Offer to Purchase explicitly disclosed – as Plaintiffs themselves admit – the risk of employee departure, increasing repurchase obligations, and the resulting decline in value of the Antioch stock held by the ESOP. (*Id.* at 70; Amended Complaint ¶ 57). Plaintiffs,

as recipients of the Offer to Purchase, were aware of the risks that: (1) Antioch would have significant repurchase obligations as employees resigned or retired; (2) the repurchase obligations would be exacerbated if the fair market value of the stock subject to repurchase increased substantially; (3) repurchase obligations would be difficult to project and could be significantly greater than anticipated; and (4) if Antioch was unable to meet its repurchase obligations, Antioch could be left insolvent. (Offer to Purchase, *Att.* A, *Ex.* 2 at 70; Amended Complaint ¶ 57).

Likewise, the Offer to Purchase explicitly disclosed that prior to closing the transaction, the ESOP would be amended to provide that Antioch had special re-purchase obligations with respect to Participants who terminated their employment between January 1, 2003 and September 30, 2006. (Offer to Purchase, *Att.* A, *Ex.* 2 at 27, 43, Appendix I-2; *see also* Amended Complaint ¶ 44). The Offer to Purchase explained that, pursuant to the ESOP share "put" price provision, Antioch was obligated to re-purchase the shares of any Participant who terminated employment prior to October 1, 2004 at the greater of fair market value or $840.26 per share. (Offer to Purchase, *Att.* A, *Ex.* 2 at 27, 43, Appendix I-2; *see also* Amended Complaint ¶¶ 44, 55 ).[3] Thus, as early as November 2003, Plaintiffs were aware of Antioch's special re-purchase obligation, which they now allege provided an incentive to employees to terminate their employment. (Amended Complaint ¶¶ 55-59).

### 2. Greatbanc, as Independent Trustee of the ESOP for Purposes of the Tender Offer, Determines that the Tender Offer is in the Best Interests of the Participants

Because the Antioch Defendants were acting in their corporate capacity in relation to the

---

[3] Moreover, the shares of ESOP Participants who terminated employment after October 1, 2004 and prior to October 1, 2005 and who consented to a distribution at that time, would be repurchased at fair market value plus $21.00 per share; and the shares of ESOP Participants who terminated employment after October 1, 2005 and prior to October 1, 2006 and who consented to a distribution at that time, would be repurchased at fair market value plus $12.80 per share.

Tender Offer, they concluded that an independent Trustee was necessary to act on behalf of the Participants and ESOP beneficiaries in connection with the Tender Offer. (*See* Offer to Purchase, *Att.* A, *Ex.* 2 at 6).

Accordingly, the Antioch Defendants engaged Greatbanc, a nationally recognized, highly skilled, independent trustee with a specialization in ESOPs, to serve as independent Trustee for the ESOP with respect to the Tender Offer. (*Id.*; Amended Complaint ¶ 40). The Antioch Defendants delegated to Greatbanc, through the previously discussed amendments to the Plan and the Trust Agreement, sole fiduciary discretion over the decision of whether the ESOP should participate in the Tender Offer. (*Id.*).

The Offer to Purchase explicitly informed the Plaintiffs, and all other shareholders, of Greatbanc's duties under ERISA: "In reaching its conclusion, [Greatbanc] will consider, among other things: its duties under the Employee Retirement Income Security Act of 1974 ("ERISA"); the stated purposes of the ESOP; its review, together with that of its financial and legal advisors, of the financial statements and the business and prospects of the Company, and the equity interest in the Company which the ESOP would hold upon closing of the transaction." (Offer to Purchase, *Att.* A, *Ex.* 2 at 6).

Thereafter, Greatbanc engaged Duff & Phelps, LLC ("Duff & Phelps") to serve as its financial advisor and assist it in making the determination of whether to tender the ESOP's Antioch stock. (*Id.*). Duff & Phelps, after evaluating Antioch, concluded that the transaction was financially fair to the ESOP, and delivered a preliminary fairness opinion letter to Greatbanc prior to the distribution of the Offer to Purchase to Antioch shareholders. (*Id.* at 6, 26). Based on Duff & Phelps' fairness opinion, Greatbanc made a preliminary determination that the transaction was in the best interests of the Participants and ESOP beneficiaries. (*Id.*).

3.    *Consummation of the Tender Offer*

In December 2003, each of the non-ESOP shareholders of Antioch agreed to the Tender Offer, at which time Antioch redeemed all of their 274,686 shares of Antioch stock pursuant to the terms of the Tender Offer. (Amended Complaint ¶ 46). Greatbanc – having the sole power to accept or reject the Tender Offer on behalf of the ESOP – did not tender the ESOP's Antioch stock. (*Id.* ¶ 43). As a result of the non-ESOP shareholders' tendering of shares and Greatbanc not tendering the ESOP's shares, the ESOP owned 100% of the outstanding common stock of Antioch. (*Id.* ¶ 48).

D.    **Antioch's Insolvency is Caused by the Specific Risks Disclosed to Plaintiffs Prior to the Tender Offer**

After the Tender Offer was consummated, many of the potential risks disclosed to the Plaintiffs and others in the Offer to Purchase became reality. In 2004, Antioch disclosed to employee-Participants a decline in sales from the prior year. (*Id.* ¶ 58). Employee-Participants also began receiving annual ESOP statements reflecting an increased value of their ESOP accounts based on the June 2004 $894.00 per share valuation of Antioch stock. (*Id.* ¶¶ 58-59). Due to the increased value of the ESOP accounts, many employee-Participants resigned from Antioch to lock in the increased value of their ESOP accounts before the October 1, 2004 deadline in the put price agreement. (*Id.* ¶ 59). The increase in employee resignations exacerbated Antioch's repurchase obligations, causing an increase in debt and Antioch's inability to keep its financial loan covenants with lenders. (*Id.*). By the end of 2004, Antioch had paid nearly $75 million to resigning employees due to the ESOP repurchase obligations and assumed an additional $30 million in note debt. (*Id.* ¶ 60). Antioch's earnings fell from $44.8 million as of December 31, 2003 to $9.4 million as of December 31, 2006. (*Id.* ¶ 62). By 2006, Antioch ceased making any further repurchase payments to former employees, and also ceased making

9

the agreed upon dividend payments to the ESOP. (*Id.*). Antioch ultimately filed for bankruptcy in 2008 when it became unable to meet its financial obligations. (*Id.* ¶ 64).

## III.    MOTION TO DISMISS STANDARD

In ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded facts. *Bontkowski v. First National Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993). Nonetheless, the Seventh Circuit has made clear that "[i]f the plaintiff voluntarily provides unnecessary facts in her complaint, the defendant may use those facts to demonstrate that she is not entitled to relief." *Hecker v. Deere*, 556 F.3d 575, 580, 588 (7th Cir. 2009) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008)).

Further, the Court is generally not limited to the allegations in, and attachments to, the complaint, but should consider exhibits attached to a defendant's moving papers on a motion to dismiss if they are referred to in the complaint and are central to the claims. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); *Wright v. Associated Insurance Companies Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). By widening the review to include such documents, a court may prevent parties from surviving a motion to dismiss "by artful pleading or by failing to attach relevant documents." *188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 735 (7th Cir. 2002); *see also Rizzo v. Bankers Life & Cas. Co.*, 2004 WL 1093359, at *1 (N.D. Ill. 2004). Here, because Plaintiffs specifically quote from the Tender Offer and refer to the Plan throughout their Amended Complaint, the ESOP Documents and Offer to Purchase are properly considered in support of this Motion to Dismiss.[4]

---

[4] We are not asking the Court to do anything unusual in considering these materials. The Seventh Circuit and the Northern District of Illinois routinely consider plan documents attached to a defendant's motion to dismiss in cases involving ERISA claims. *See, e.g., Hecker*, 556 F.3d at 582 (upholding district court's consideration of summary plan descriptions and trust agreement attached to motion to dismiss because the documents were referred to by the complaint and they were central to the plaintiffs' ERISA claim); *Holzer v. Prudential Equity Group LLC*, 458 F. Supp. 2d 587, 589-90 (N.D. Ill. 2006) (consideration of plan documents attached to defendant's motion to dismiss was proper where plan documents were referenced in plaintiff's complaint and were central to plaintiff's ERISA claims); *Kaden v. First*

IV.   **LEGAL ARGUMENT**

    A.    **Plaintiffs' ERISA Claims are Time-Barred Because This Action Was Commenced More Than Three Years After Plaintiffs' Acquired Actual Knowledge of the Tender Offer**

        1.    *The Statute of Limitations Defense is Properly Considered on a Rule 12(b)(6) Motion to Dismiss*

It is well-established that dismissal on a Rule 12(b)(6) motion is appropriate based on the expiration of the statute of limitations when a plaintiff "effectively pleads herself out of court by alleging facts that are sufficient to establish the defense." *Evans v. City of Chicago*, 2007 U.S. Dist. LEXIS 87846, at *2 (N.D. Ill. 2007); *see also Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 670 (7th Cir. 1998) ("if a plaintiff pleads facts that show its suit is barred by a statute of limitations, it may plead itself out of court under a Rule 12(b)(6) analysis."). Indeed, courts consistently grant 12(b)(6) motions where the plaintiff alleges facts in the complaint sufficient to establish the expiration of the statute of limitations set forth in ERISA § 413 because "statutes of limitations serve as more than mere technicalities and must be adhered to strictly." *Jordan v. VanDyke*, 2000 U.S. Dist. LEXIS 938, at *8 (N.D. Ill. Jan. 28, 2000); *see also Thompson v. Continental Casualty Co.*, 2009 U.S. Dist. LEXIS 20559, at *3 (N.D. Ill. 2009); *Golbourn v. General Motors Company*, 1998 U.S. Dist. LEXIS 5529, at *12 (N.D. Ill. 1998).[5]

        2.    *ERISA's Three Year Statute of Limitations Applies to Bar the Plaintiffs' Claims*

ERISA provides a three year statute of limitations for actions alleging breaches of fiduciary duties or any other violations of ERISA's general fiduciary and prohibited transaction

---

*Commonwealth Ins. Co.*, 2006 WL 1444886, at *2 (N.D. Ill. 2006) (considering plan documents attached to defendant's motion to dismiss on the basis of the rule set forth in *Venture*).

[5] Cases from other jurisdictions are in accord. *Potter v. ICI Americas Inc.*, 103 F. Supp. 2d 1062, 1071 (S.D. Ind. 1999); *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 533 (6th Cir. 2008); *Angell v. John Hancock Life Ins. Co.*, 421 F.Supp. 2d 1168, 1175 (E.D. Mo. 2006).

provisions where, as here, the plaintiff has actual knowledge of the transaction giving rise to the alleged breach of duty. ERISA § 413, codified at 29 U.S.C. § 1113, provides that:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation.

29 U.S.C. § 1113.[6]

The Seventh Circuit has held that the "actual knowledge" referenced in § 1113(2) requires only knowledge of the facts or transaction that gives rise to the alleged violation. It is not necessary for a defendant to show that the plaintiff had knowledge of a cognizable claim under ERISA to trigger the statute of limitations. *See, e.g., Martin v. Consultants & Administrators, Inc*., 966 F.2d 1078, 1086 (7th Cir. 1992) ("the relevant knowledge for triggering the statute of limitations is knowledge of the facts or transaction that constituted the alleged violation."); *Rush v. Martin Petersen Co*., 83 F.3d 894, 896 (7th Cir. 1990) (quoting *Martin*, 966 F.2d at 1086); *Neuma, Inc. v. Wells Fargo & Co*., 515 F. Supp. 2d 825, 854 (N.D. Ill. 2006) ("a potential plaintiff's relevant knowledge for purposes of § 1113(2) is of facts, not of the alleged illegality of the defendant's conduct."). For example, the three year limitation period is triggered where, prior to the allegedly offensive transaction, a document describing the transaction is distributed to ERISA participants. *See Young v. General Motors Investment Management Corp*., 550 F. Supp. 2d 416, 418-419 (S.D.N.Y. 2008) (disclosure of prospectuses – on which plaintiffs relied in their complaint – sufficient for finding of actual knowledge to trigger commencement of three year statute of limitations).[7]

---

[6] Although this section extends the limitations period to six years in the case of fraud or concealment, Plaintiffs have not asserted any such allegations. (*See* Amended Complaint, *passim*).

[7] The Seventh Circuit has also held that the three year statute of limitations may be triggered even if a plaintiff is not aware of all of the details of a transaction. *See, e.g., Martin,* 966 F.2d at 1086 ("It is not

Further, the ERISA statute of limitations may be triggered before a plaintiff suffers any harm. *Wolin v. Smith Barney Inc.*, 83 F.3d 847, 853 (7th Cir. 1996) ("ERISA's statute of limitations for suits against fiduciaries does not begin to run at the time of injury, but instead . . . at the time that the prospective plaintiff acquires actual knowledge . . . which may precede any injury."); *Spangler v. Altec Int'l Ltd. P'ship*, 1999 U.S. App. LEXIS 2114, at *9 (7th Cir. 1999) (unpublished) (noting that it is "clear" that the ERISA statute of limitations begins to run "regardless of when the injury is felt").

Another controlling principle applicable to this case is that where a plaintiff alleges an ERISA § 406 prohibited transaction claim, he is asserting that the alleged transaction – on its face – is prohibited and is an inherent breach of fiduciary duty under ERISA. *See, e.g., Chao v. Emerald Capital Management, Ltd.*, 2006 WL 2620055, at **6-7 (W.D.N.Y. 2006). Accordingly, where a plaintiff pleads an ERISA § 406 claim the disclosure of the transaction to the plaintiff alone gives rise to the requisite "actual knowledge" sufficient to commence the three year limitations period for both ERISA §§ 406 and 404 claims. *See, e.g., Chao*, 2006 WL 2620055, at *6 ("in cases where the transaction is facially illegal, awareness of the occurrence of the transaction itself does constitute knowledge of facts necessary to understand that breach of a fiduciary duty occurred."); *Young*, 550 F. Supp. 2d at 419 ("where the alleged breach stems from a transaction that a plaintiff claims is 'inherently a statutory breach of fiduciary duty,' knowledge of the transaction 'standing alone' may be sufficient to trigger the obligation to file suit."); *Brown v. American Life Holdings, Inc*., 190 F.3d 856, 859-60 (8th Cir. 1999) ("if the fiduciary made an illegal investment – in ERISA terminology, engaged in a prohibited transaction – knowledge of the transaction would be actual knowledge of the breach."); *Reeves v. Airlite Plastics, Co*., 2005 WL 2347242, at **4-6 (D. Neb. 2005) (holding that the three year statute of

necessary for a potential plaintiff to have knowledge of every last detail of a transaction or knowledge of its illegality.").

limitations ran from the earliest date on which the allegedly prohibited transaction was disclosed to the plaintiff).

> **3.** **Plaintiffs' Had Actual Knowledge of the Transaction Giving Rise to Their Alleged Claim, the Precise Risks that the Transaction Posed, and Even Admit in Their <u>Pleading That The Limitations Period Has Run</u>**

> **a.** **Disclosure of the Transaction Triggered the Running of the Limitations Period**

Plaintiffs have pled both ERISA §§ 406 and 404 claims asserting that the Tender Offer was a prohibited transaction, and that the Antioch Defendants breached their fiduciary duties by causing the ESOP to decline to tender its Antioch stock as part of the Tender Offer. (Amended Complaint ¶¶ 70, 77-81). By virtue of Plaintiffs' § 406 claim, therefore, disclosure of the Tender Offer alone to the Plaintiffs triggers the commencement of the three year statute of limitations under ERISA § 413(2). *See, e.g., Chao*, 2006 WL 2620055, at *6; *Young*, 550 F.Supp.2d at 419; *Brown*, 190 F.3d at 859-60; *Reeves*, 2005 WL 2347242, at **4-6.

As explicitly conceded by Plaintiffs, the Tender Offer – and all risks associated with it – were disclosed to Plaintiffs in November 2003 when Antioch issued the Offer to Purchase to all Antioch shareholders, including the Plaintiffs. (Amended Complaint ¶¶ 41, 57).[8] The Offer to Purchase clearly stated numerous times that a condition of the Tender Offer was that the independent Trustee, Greatbanc, must decline to tender the ESOP's Antioch stock in the Tender Offer. (Amended Complaint ¶ 42; Offer to Purchase, *Att.* A, *Ex.* 2 at 2, 6, 19, 30). Because the alleged prohibited transaction – the Tender Offer – was therefore disclosed to Plaintiffs no later than November 2003, Plaintiffs had actual knowledge of the transaction at that time, commencing the three year statute of limitations. Since Plaintiffs did not file their Original

---

[8] For purposes of this statute of limitations analysis, although Plaintiff Evolve became ESOP Trustee on or about January 17, 2008, the actual knowledge of predecessor ESOP Trustees, including Greatbanc, is imputed to Evolve. Research has not revealed any Seventh Circuit authority or district court authority within the Seventh Circuit to the contrary.

Complaint until March 2009, more than five years after disclosure of the Tender Offer, Plaintiffs' ERISA action is barred by the three year statute of limitations articulated in § 413(2).

Although it is sufficient for the Court's analysis to end here, identification of the transactional facts disclosed to Plaintiffs further demonstrates that they had the requisite "actual knowledge" to start the commencement of the statute of limitations over three years ago.

> **b.**     **Plaintiffs Had Actual Knowledge of the Alleged Breach More Than Three Years Prior to Filing this Action**

In their Amended Complaint, Plaintiffs assert that the Tender Offer created a serious risk that a large block of employees would resign and demand redemption of their shares, causing financial problems, and triggering a severe decline in the value of ESOP shares. (Amended Complaint ¶¶ 55, 75). Plaintiffs also allege that the Tender Offer exacerbated the risk by permitting employees to terminate their employment by September 30, 2004 and lock in their stock values at an inflated price – that is, at the greater of fair market value or $840.26 per share. (*Id.*). Thus, Plaintiffs claim that Defendants breached their fiduciary duties in approving the Tender Offer. (*Id.* ¶¶ 77-78).

Plaintiffs, however, admit the risk of employee departure and resulting decline in the value of the ESOP shares was explicitly disclosed in the Offer to Purchase. As quoted in Paragraph 57 of Plaintiffs' Amended Complaint, the Offer to Purchase stated:

> 57. The Company will experience significant repurchase obligations as employees with significant vested account balances in the ESOP die, become permanently disabled, resign, retire or diversify. These repurchase obligations will be exacerbated if, at the same time, the fair market value of the Common Stock subject to repurchase increases substantially. As a result, the Company's cash resources might be severely drained and could be insufficient to meet the Company's repurchase obligations. The Company has projected the potential repurchase liability through the year 2013 under a set of assumptions that the Company believes to be reasonable. Because it is impossible to estimate future repurchase

> obligations accurately, there is a possibility that the Company's
> repurchase obligations will be significantly greater than
> anticipated. If the Company were unable to meet its repurchase
> obligations, the Company could be left insolvent and unable to pay
> other obligations, including the subordinated notes, and the
> warrants could become worthless.

(Amended Complaint ¶ 57; Offer to Purchase, *Att.* A, *Ex.* 2 at 70).

Likewise, the Offer to Purchase disclosed that prior to closing, the Company would amend the ESOP to provide that it would re-purchase the shares of any ESOP Participant who terminated employment prior to October 1, 2004 at the greater of fair market value or $840.26 per share. (Offer to Purchase, *Att.* A, *Ex.* 2 at 27). The re-purchase obligation was also disclosed on page 43 of the Offer to Purchase, and in an Appendix attached to this disclosure. (*Id.* at 43, Appendix I-2). Thus, the re-purchase obligation – which the Plaintiffs allege provided an incentive to employees to terminate their employment – was disclosed not once, but three separate times in the Offer to Purchase.

Plaintiffs also admit that they were aware of the harm that occurred as a result of the allegedly prohibited transaction as early as 2004, by way of documents provided by the Company to all employee-participants. Indeed, Paragraph 58 of Plaintiffs' Amended Complaint specifically states:

> 58. In 2004, Antioch provided financial reports to employee-
> participants that revealed a decline in sales from the prior year. By
> June 2004, employee-participants were receiving their annual
> ESOP statements which reflected the increased value of their
> ESOP accounts as of December 31, 2003, based upon the Prairie
> valuation.

(Amended Complaint, ¶ 58). Thus, not only were Plaintiffs aware of a drop in sales in 2004, Plaintiffs were also aware of the allegedly inflated value of the ESOP accounts and the resulting

"incentive" for employees to terminate and cash in their ESOP holdings so as to lock in the value prior to the deadline set forth in the put price agreement.[9]

Simply stated, the Offer to Purchase provided Plaintiffs with actual knowledge of every fact they needed to assert their claims, and indeed most of the facts they now assert in support of their claims. Thus, Plaintiffs clearly had actual knowledge of the facts upon which they base their prohibited transaction and breach of fiduciary duty claims as early as November 2003, and certainly no later than 2004. Because this case was originally commenced on March 17, 2009, more than five years later, the court should dismiss this action as time-barred.

### c.      Plaintiffs Concede Their Claims are Time-Barred

It is noteworthy to point out to the Court that Plaintiffs themselves – in their Amended Complaint – actually concede that their ERISA claims are barred by the statute of limitations. (*See* Amended Complaint ¶¶ 18(e)(iii), 84). Plaintiffs assert that somehow the Antioch Defendants are liable because they failed to file suit against themselves and Greatbanc for ERISA fiduciary breaches in relation to the Tender Offer within the applicable statute of limitations. (*Id.*). It is impossible, however, for the same statute of limitations to bar ERISA claims that the Antioch Defendants could have asserted against themselves or Greatbanc without – at the same time – barring the exact same claims against the Antioch Defendants and Greatbanc by Plaintiffs. Same parties, same claims, same statute of limitations, same time-bar.

---

[9] It is irrelevant whether or not Plaintiffs actually read the disclosures contained within the Offer to Purchase, or the financial statements provided to them. As articulated by numerous courts, "[a]ny interpretation of the term 'actual knowledge' that would allow a participant to disregard information clearly provided to him/her would effectively provide an end run around ERISA's limitations requirement . . . 'we do not think Congress intended the actual knowledge requirement to excuse willful blindness by a plaintiff.'" *Young*, 550 F. Supp. 2d 416, 419 (quoting *Edes v. Verizon Communications, Inc.,* 417 F.3d 133, 142 (1st Cir. 2005)); *see, e.g., Reeves*, 2005 WL 2347242, at *5 (citing supporting cases from the First, Second, and Ninth Circuits).

For all the foregoing reasons, Plaintiffs' ERISA action should be dismissed as it is time-barred by the applicable three year statute of limitations.

### B. The Antioch Defendants Were Not ERISA Fiduciaries With Respect to the Tender Offer, and Therefore Did Not Breach Any Fiduciary Duties Under ERISA § 404

Plaintiffs' entire Amended Complaint centers around alleged breaches of ERISA fiduciary duties arising out of the Tender Offer. The Antioch Defendants, however, were not ERISA fiduciaries with respect to the Tender Offer. Plaintiffs' own Amended Complaint, the ESOP Documents, and the Offer to Purchase make clear that it was Greatbanc, an independent Trustee, that had sole fiduciary discretion over the decisions made on behalf of the ESOP with respect to the Tender Offer. Because the Antioch Defendants were not fiduciaries exerting discretion over the ESOP in connection with the Tender Offer, they cannot be liable for breaches of fiduciary duties under ERISA § 404.

Under ERISA § 3(21)(A), "a person is a fiduciary with respect to a plan, and therefore subject to ERISA fiduciary duties, to the extent that he or she exercises any discretionary authority or discretionary control respecting management of the plan, or has any discretionary authority or discretionary responsibility in the administration of the plan." *Varity Corp. v. Howe*, 516 U.S. 489, 498 (1995) (quoting 29 U.S.C. § 1002(21)(A)) (internal quotations omitted). To assist courts in determining whether a person is an ERISA fiduciary, the United States Supreme Court has stated "[i]n every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 503 U.S. 211, 226 (2000).

The Seventh Circuit has interpreted the terms "'discretionary authority,' 'discretionary control,' and 'discretionary responsibility,'" "as speaking to actual decision-making power rather

than to the influence that a professional may have over the decisions made by the plan trustees she advises." *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 535 (7th Cir. 1991). Therefore, "the power to act for the plan is essential to status as a fiduciary under ERISA." *Klosterman v. Western Gen. Management*, 32 F.3d 1119, 1123 (7th Cir. 1994).

Under this Seventh Circuit authority, the Court should dismiss the Amended Complaint against the Antioch Defendants because the Plaintiffs admit in their Amended Complaint that the Antioch Defendants did not have actual decision-making power and discretion over the ESOP's decision whether to tender its Antioch stock as part of the Tender Offer. *See Pappas*, 923 F.2d at 535; *Klosterman*, 32 F.3d at 1123. In fact, a reading of the plain language of the Amended Complaint demonstrates Plaintiffs' recognition that Greatbanc, as independent Trustee, was the only party authorized to make decisions on behalf of the ESOP, and was required to do so without any direction from the Antioch Defendants. Moreover, the ESOP Documents and Offer to Purchase, both of which are incorporated into the Amended Complaint, illustrate this delegation of fiduciary responsibility to Greatbanc and delineate Greatbanc's fiduciary responsibilities on behalf of the ESOP in relation to the Tender Offer.

### 1.  *The Plain Language of the Amended Complaint Paragraphs 42 and 43*

Paragraphs 42 and 43 of the Amended Complaint specifically acknowledge that fiduciary responsibility for the ESOP in connection with the Tender Offer rested with Greatbanc, and not the Antioch Defendants:

> 42.  . . . [T]he ESOP Trustee effectively had the power to approve or reject the Proposed Transaction.

> 43.  Greatbanc negotiated and thereafter agreed to decline to sell ESOP shares in the Tender Offer in exchange for certain agreed annual distributions (dividends and contributions) to be paid to the ESOP by the Company over a five year period and in exchange for a certain Put Price Protection Agreement.

(Amended Complaint ¶¶ 42-43).

When a trustee retains "the ability to negotiate and accept offers for disposition of ESOP shares," corporate defendants "never obtain[] actual decision-making power over ESOP assets." *Flake v. Hoskins*, 55 F. Supp. 2d 1196, 1219 (D. Kan. 1999) (citing *Pappas*, 923 F.2d at 535). *See also Martin v. Feilen*, 965 F.2d 660, 665 (8th Cir. 1992) (when action does not involve administering plan or investing assets, indirect effect on plan does not implicate fiduciary duties under ERISA). Plaintiffs admit through these allegations, which are assumed accurate in this procedural posture, that the Antioch Defendants did not have decision-making power over Greatbanc's judgment as to whether the ESOP would or would not participate in the Tender Offer.

*Flake* is particularly instructive in light of Plaintiffs' admission. In *Flake*, the plaintiff alleged that the defendants had control over the disposition of ESOP assets where a separate trustee was in place. 55 F. Supp. 2d at 1219. The defendants took actions to resist losing control of the company, including influencing the trustee's negotiations with potential buyers of ESOP shares, but had no "direct ability to accept or reject any offers regarding ESOP shares." *Id*. at 1219-1220. The court found that the defendants, therefore, had no "actual decision-making power specifically over the ESOP assets." *Id*. at 1219 (citing *Pappas*, 923 F.2d 531 (control or authority requires actual decision-making power)). The court noted that although the defendants "attempted to influence those who had the control over the ESOP shares," they never exercised any control on their own. *Id*. As such, the court sustained the "defendants' motion to dismiss plaintiff's claim that defendants owed fiduciary duties regarding the disposition of ESOP assets," because without control the defendants had no discretion and owed no fiduciary duties to the plaintiff regarding the disposition of ESOP assets. *Id*. at 1221.

Because the Antioch Defendants did not have the "direct ability to accept or reject any offers regarding the ESOP shares," they had no "actual decision-making power." *Flake*, 55 F.

Supp. 2d at 1219 (*citing* Pappas, 923 F.2d 535). The "actual decision-making power" belonged to Greatbanc. The Antioch Defendants, therefore, had no discretion over Greatbanc's decision to accept or reject the Tender Offer. *Pappas*, 923 F.2d at 535. Without discretion, the Antioch Defendants were not ERISA fiduciaries for the ESOP with respect to the Tender Offer, are not liable under ERISA § 404 for breaches of fiduciary duty relating to the Tender Offer, and Plaintiffs have therefore failed to state a claim. *Pohl v. Nat'l Benefits Consultants, Inc.*, 956 F.2d 126, 129 (7th Cir. 1992).

> **2.** **The ESOP Documents and Offer to Purchase Incorporated Into the Amended Complaint Further Demonstrate that the Antioch Defendants Did Not Act as ERISA Fiduciaries for the Tender Offer**

The Seventh Circuit has stated that a fiduciary's duty extends only to those areas where the plan gives the fiduciary the power to act. *Adolescent Psychiatry, S.C. v. Home Life Ins. Co.*, 941 F.2d 561, 569 (7th Cir. 1991) ("obligation as a fiduciary pertains only to the discretion thus created"). On October 1, 2003, the Plan was amended to explicitly delegate fiduciary responsibility to Greatbanc, as independent Trustee, to decide whether to tender the ESOP's Antioch stock to the Company as part of the Tender Offer:

> Section 5 is amended by adding the following new subsection (f) at the end thereof, effective as of October 1, 2003:
>
> (f)     2003 Tender Offer – Notwithstanding the provisions of Section 5(a) and (b), **the decision whether or not to tender shares of Company Stock to the Company in December 2003 shall be effected by the Trustee (without directions from the Committee)** based on the Trustee's determination (in the exercise of reasonable judgment) that such decision is in the best interests of the Plan and the Participants and is in compliance with all applicable requirements of the Code and ERISA.

(Plan Amendment No. 1, *Att.* A, *Ex.* 1 (emphasis added)). The Trust Agreement was similarly amended to reflect this delegation of fiduciary responsibility from the Antioch Defendants to Greatbanc with respect to the Tender Offer. (Trust Agreement, *Att.* A, *Ex.* 1 at ¶ B(6)). ERISA § 404(a)(1)(D) requires a fiduciary to act "in accordance with the documents and instruments

governing the plan." 29 U.S.C. § 1104(a)(1)(D). As such, the Antioch Defendants had a duty to follow these amendments. *See id.* Accordingly, Greatbanc acted as the sole ERISA fiduciary for the ESOP with respect to the Tender Offer.

The Offer to Purchase further delineates Greatbanc's complete decision-making power in relation to the Tender Offer:

> The Company decided that an independent trustee would be in the best position to act on behalf of the participants and beneficiaries of the ESOP in the consideration of the actions to be taken by the ESOP during the transaction. (Offer to Purchase, *Att.* A, *Ex.* 2 at 6).

The Offer to Purchase also explicitly informed all shareholders of Greatbanc's duties under ERISA:

> In reaching its conclusion, the Trustee will consider, among other things: its duties under the Employee Retirement Income Security Act of 1974 ("ERISA"); the stated purposes of the ESOP; its review, together with that of its financial and legal advisors, of the financial statements and the business and prospects of the Company, and the equity interest in the Company which the ESOP would hold upon closing of the transaction. (*Id.* at 6).

This Court need not go beyond the allegations in the Amended Complaint cited in the prior subsection to find that dismissal is proper. But the Court may also look to the unambiguous words of the ESOP Documents and Offer to Purchase. Both sources show that Greatbanc was the sole, independent Trustee for the ESOP with respect to the Tender Offer authorized to make all decisions without any direction from the Antioch Defendants. Accordingly, this Court should dismiss Plaintiffs' ERISA § 404 claims against the Antioch Defendants as they were not ERISA fiduciaries with respect to the Tender Offer.

## C. Plaintiffs' § 406 Prohibited Transaction Claim Fails As a Matter of Law

To state a prohibited transaction claim under § 406(a)(1), a plaintiff must show that a fiduciary caused the plan to engage in one of the following prohibited unlawful transactions:

(A) a sale or exchange or leasing of any property between a plan and a party in interest; (B) lending of money or other extension of credit between a plan and a party in interest; (C) furnishing of goods, services or facilities between a plan and a party in interest; (D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan; or (E) acquisition, on behalf of a plan, of any employer security or employer real property in violation of ERISA § 407(a). 29 U.S.C. § 1106(a); *see also Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996).

Where a plaintiff fails to identify a transaction that falls within one of these five delineated § 406 prohibited transactions, dismissal of the claim is appropriate. *See, e.g., Lockheed Corp.*, 517 U.S. at 895 (dismissal of prohibited transaction claim for failure to state a claim was proper because ERISA § 406 did not prohibit the transaction at issue); *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004) (upholding dismissal of prohibited transaction claim for failure to state a claim because the defendants decision to continue to hold assets in employer stock was not a transaction within § 406); *Hunter v. Caliber System, Inc.*, 220F.3d 702, 724-25 (6th Cir. 2000) (upholding dismissal of prohibited transaction where transaction that defendants engaged in was not identified in § 406); *Amato v. Western Union Int'l, Inc.*, 596 F. Supp. 963, 969 (S.D.N.Y. 1984) (plaintiffs did not state a prohibited transaction claim where transaction complained of did not fall within prohibited transactions enumerated in § 406).

Here, Plaintiffs define their ERISA prohibited transaction claim as a § 406(a)(1)(A) claim, whereby the ESOP – by declining to tender its Antioch shares as part of the Tender Offer – allegedly participated in a "sale or exchange of [] property between a plan and a party in interest or a fiduciary." (29 U.S.C. § 1106; Amended Complaint ¶¶ 68, 79). Plaintiffs, however, misconstrue this claim. It was an explicit condition of the Tender Offer that the ESOP not tender its Antioch shares. (Amended Complaint ¶ 42). As a matter of law, therefore, the ESOP did not

participate in a "sale or exchange of any property" as part of the Tender Offer. As such, the ESOP's non-action did not even amount to a transaction at all, much less a prohibited transaction under ERISA § 406.

In *Wright v. Oregon Metallurgical Corporation*, the Ninth Circuit dealt with this issue and held that a plan's decision not to tender shares is not a prohibited transaction under ERISA § 406. 360 F.3d at 1101. Regardless of the fact that the plaintiffs in *Wright* articulated their argument as a § 406(a)(1)(D) claim, the court determined that because the plan merely continued to hold certain assets rather than sell them, no transaction existed at all for purposes of ERISA § 406. *Id.*

Similar to *Wright*, the ESOP – as a condition of the Tender Offer – merely continued to hold Antioch shares rather than tender them. (Amended Complaint ¶ 42). The only sale or exchange involved in the Tender Offer was between Antioch and the non-ESOP shareholders of Antioch. (*Id.* ¶ 46). Indeed, Plaintiffs' own allegations admit that the ESOP did not participate in the Tender Offer – it did not tender its shares. (*Id.* ¶ 79). As in *Wright*, therefore, Greatbanc's decision not to tender the ESOP's Antioch shares does not constitute a "transaction" under ERISA § 406 and Plaintiffs' prohibited transaction claim should be dismissed as a matter of law.

## V.    CONCLUSION

For all of the reasons discussed above, the Antioch Defendants request that the Court dismiss Plaintiffs' Amended Complaint.

Respectfully submitted,

LEE MORGAN, ASHA MORGAN
MORAN, and CHANDRA ATTIKEN


    /s/ Michael L. Scheier

By:   One of Their Attorneys


Michael L. Scheier
Danielle M. D'Addesa
Keating Muething & Klekamp PLL
One East Fourth Street, Suite 1400
Cincinnati, OH  45202
(513) 579-6545

- and -

John P. Morrison
Joshua J. Heidelman
K&L GATES LLP
70 W. Madison, Suite 3100
Chicago, Illinois  60602
(312) 372-1121

25

## CERTIFICATE OF SERVICE

I, Michael L. Scheier, hereby certify that I electronically filed the Antioch Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiffs' First Amended Complaint using the CM/ECF system which will send notification of such filing(s) to the following:

| | |
|---|---|
| Charles Robert Watkins<br>John R. Wylie<br>Futterman Howard Watkins Wylie & Ashley, Chtd.<br>122 S. Michigan Ave., Suite 1850<br>Chicago , IL 60603<br>(312) 427-3600<br>Fax: (312) 427-1850<br>Email: cwatkins@futtermanhoward.com<br>       jwylie@futtermanhoward.com | Theodore Michaelson Becker<br>Julie Ann Govreau<br>Morgan Lewis & Bockius, LLP<br>77 W. Wacker Drive, 5th Floor<br>Chicago , IL 60601<br>(312) 324-1000<br>Fax: (312) 324-1001<br>Email: tbecker@morganlewis.com<br>       jgovreau@morganlewis.com |
| Gary A Gotto<br>Gary D Greenwald<br>Keller Rohrback, PLC<br>3101 North Central Avenue, Suite 1400<br>Phoenix , AZ 85012<br>(602) 230-6322<br>Email: ggotto@krplc.com<br>       ggreenwald@krplc.com | John P. Morrison<br>Joshua J. Heidelman<br>K&L GATES LLP<br>70 W. Madison, Suite 3100<br>Chicago, Illinois  60602<br>(312) 372-1121<br>Fax: (312) 827-1253<br>Email: pete.morrison@klgates.com<br>       joshua.heidelman@klgates.com |
| Jon Michael Sebaly<br>Sebaly Shillito + Dyer<br>40 North Main Street<br>1900 Kettering Tower<br>Dayton , OH 45423<br>(937) 222-2500<br>Email: jsebaly@ssdlaw.com | |

this 3rd day of June, 2009.

/s/ Michael L. Scheier      
Michael L. Scheier

2952367.10

26