**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **BONNIE FISH, CHRISTOPHER MINO, MONICA LEE WOOSLEY, LYNDA D. HARDMAN, and EVOLVE BANK & TRUST, an Arkansas bank and trust company,** | **Case No. 1:09-cv-01668** |
| **Plaintiffs,** | Honorable Milton I. Shadur |
| **vs.** | |
| **GREATBANC TRUST COMPANY, an Illinois corporation; LEE MORGAN, ASHA MORGAN MORAN, and CHANDRA ATTIKEN,** | |
| **Defendants.** | |

**PLAINTIFFS' MOTION FOR LEAVE TO FILE A COMBINED**
**MEMORANDUM OF LAW IN EXCESS OF THIRTY TOTAL PAGES**
*INSTANTER*

Plaintiffs Bonnie Fish, Christopher Mino, Monica Lee Woosley, Lynda D.

Hardman, and Evolve Bank & Trust (collectively "Plaintiffs"), hereby respectfully

move this Court, pursuant to Rule 7.1 of the Local Rules of the District Court for the

Northern District of Illinois, for leave to file *instanter* a combined Memorandum of

Law in excess of thirty (30) total pages, in opposition to the separate Motions to

Dismiss Plaintiffs' First Amended Complaint filed by Defendant GreatBanc Trust

Company ("GreatBanc") and by Defendants Lee Morgan, Asha Morgan Moran, and

Chandra Attiken (the "Individual Defendants") respectively. A copy of the proposed

Combined Response Memorandum is attached hereto as Exhibit A and incorporated

herein by reference. In support of their Motion and in lieu of a supporting memorandum, Plaintiffs state as follows:

1.     On June 3, 2009, GreatBanc filed its Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. 51 and 52, "Motion to Dismiss") which consisted of a thirteen (13) page Memorandum of Law (Dkt. 52), a three (3) page Affidavit of GreatBanc principal Marilyn H. Marchetti (Dkt. 52-2), and fourteen (14) separate documents representing more than 200 pages of materials which were not within the pleadings (Dkt. 52-3 – 52-16).

2.     On the same date, the Individual Defendants filed their separate Motion to Dismiss (Dkt. 48 - 49) which consisted of a twenty-four (24) page Memorandum of Law, a two (2) page Affidavit of Chandra Attiken (Dkt. 49-2), and nine (9) separate documents representing more than 280 pages of materials which were not within the pleadings (Dkt. 49-3 – 49-6).

3.     In their Motions to Dismiss, GreatBanc and the Individual Defendants have made the highly unusual request that the Court consider each of the Affidavits and documents (which are clearly outside of the pleadings) in ruling upon their Motions to Dismiss. By relying upon this plethora of evidentiary materials, Defendants have converted purely legal arguments as to the sufficiency of the pleadings into a fact-intensive motion for summary judgment.

4.     While Plaintiffs believe that all of the materials outside of the pleadings should be stricken in ruling upon these Motions to Dismiss, Plaintiffs have no choice but to address both the legal and factual arguments in responding to Defendants' procedurally incorrect motions.

5.      Pursuant to Rule 7.1 of the Local Rules, Plaintiffs are entitled to file separate memorandums of law in response to each Motion to Dismiss up to fifteen (15) pages in length, or a total of thirty (30) pages.  However, to streamline Plaintiffs' arguments and avoid unnecessary duplication, Plaintiffs intend to file a Combined Response to Defendants' Motions to Dismiss Plaintiffs' First Amended Complaint ("Combined Response").

6.      Because of the fact-intensive nature of Defendants' arguments and their use of voluminous documents outside of the pleadings, Plaintiffs have been unable to limit their Combined Response to thirty (30) pages or less.  Plaintiffs did make a good faith and diligent effort to limit and reduce the length of their Memorandum during the drafting process, but believe that further reduction of the length of the Memorandum will jeopardize the strength and clarity of Plaintiffs' arguments.

7.      Plaintiffs will require up to thirty-five (35) pages for completion of their Combined Response which exceeds the page limit limitation by five (5) pages.  If leave is granted, Plaintiffs' Combined Response will be two (2) pages shorter in length than the total pages in both memoranda of law supporting the Motions to Dismiss filed by all Defendants.

8.      Plaintiffs also submit that had the individual Plaintiffs and the institutional Plaintiff Evolve Bank & Trust submitted separate memoranda, in response to both Motions to Dismiss in compliance with the Local Rules on an individual basis, the total number of pages submitted to the Court in separate memoranda could have greatly exceeded the number of pages which Plaintiffs seek to file in their Combined Response.

9.      The Individual Defendants were granted leave to exceed the page limits for their Motion to Dismiss by Order of this Court (Dkt. 55).

10.     Counsel for all of the Defendants have indicated to Plaintiffs' counsel that as a matter of courtesy, they do not intend to object to Plaintiffs' Motion for leave to exceed the page limits with respect to the Combined Response.

11.     For these reasons, Plaintiffs respectfully move for leave to exceed the page limits of Local Rule 7.1 and request that Plaintiffs be permitted to file a Combined Response not to exceed thirty-five (35) pages in length.

12.     In the alternative, if the Court denies Plaintiffs' Motion, then Plaintiffs request that the Court grant them an additional seven (7) days to file a Combined Response complying with Local Rule 7.1, or such other page limit as the Court may deem appropriate given the nature of this case.

WHEREFORE, Plaintiffs respectfully request that their Motion for Leave to File a Combined Memorandum of Law in excess of Thirty Total Pages *Instanter* be granted.


RESPECTFULLY SUBMITTED this 6th day of July, 2009.

FUTTERMAN HOWARD WATKINS
WYLIE & ASHLEY, CHTD.

By:  /s/ Charles R. Watkins
         Charles R. Watkins
          John R. Wylie
         122 South Michigan Avenue
         Suite 1850
         Chicago, Illinois 60603
         Telephone: (312) 427-3600
         Facsimile:  (312) 427-1850
         cwatkins@futtermanhoward.com

KELLER ROHRBACK, PLC
Gary D. Greenwald
Gary A. Gotto
3101 North Central Avenue
Suite 1400
Phoenix, Arizona 85012
Telephone: (602) 248-0088
Facsimile:  (602) 248-2822
ggreenwald@krpl.com
ggotto@krplc.com
*Of Counsel*


SEBALY SHILLITO + DYER
James Dyer
Jon M. Sebaly
David C. Ahlstrom
40 North Main Street
1900 Kettering Tower
Dayton, Ohio 45402
Telephone: (937) 222-2500
Facsimile:  (937) 222-6554
jdyer@ssdlaw.com
jsebaly@ssdlaw.com
dahlstrom@ssdlaw.com
*Of Counsel*

*Counsel for Plaintiffs*

# Exhibit A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **BONNIE FISH, CHRISTOPHER MINO, MONICA LEE WOOSLEY, LYNDA D. HARDMAN, and EVOLVE BANK & TRUST, an Arkansas bank and trust company,** | **Case No. 1:09-cv-01668** |
| **Plaintiffs,** | Honorable Milton I. Shadur |
| **vs.** | |
| **GREATBANC TRUST COMPANY, an Illinois corporation; LEE MORGAN, ASHA MORGAN MORAN, and CHANDRA ATTIKEN,** | |
| **Defendants.** | |

<u>**PLAINTIFFS' COMBINED RESPONSE TO**</u>
<u>**DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS'**</u>
<u>**FIRST AMENDED COMPLAINT**</u>

**I.      INTRODUCTION**

Defendant GreatBanc Trust Company ("GreatBanc") and Defendants Lee

Morgan, Asha Morgan Moran, and Chandra Attiken (the "Individual Defendants") have

each filed separate Motions to Dismiss the Amended Complaint, asserting many of the

same arguments.  In the interests of avoiding duplication in responding to each brief,

Plaintiffs are hereby filing a single response to both Motions.

The Amended Complaint asserts three separate claims for breach of fiduciary

duty under ERISA § 404 (29 U.S.C. § 1104), a claim for a non-exempt prohibited

transaction under ERISA §§ 406 and 408 (29 U.S.C. §§ 1106 and 1108), and a claim for co-fiduciary liability under ERISA § 405 (29 U.S.C. § 1105). Defendants have each argued that all of the claims are time-barred and should be dismissed under ERISA § 413 (29 U.S.C. § 1113). In addition, all Defendants have argued that the 2003 Transaction is not a prohibited transaction under ERISA and that such claim should be dismissed. Lastly, the Individual Defendants alone claim they were not ERISA fiduciaries with respect to the Tender Offer and therefore, did not breach § 404.[1]

Defendants' Motions to Dismiss are particularly conspicuous in what they do not claim. **None of the Defendants** contest that the fiduciary conduct in connection with the ESOP's decision to decline the Tender Offer and approve the 2003 Transaction implicate ERISA fiduciary duties under ERISA § 404. Nor have the Individual Defendants denied their liability as co-fiduciaries under ERISA § 405. Rather, the Individual Defendants have wholly ignored the § 405 issue in their motion papers.

In this Memorandum, Plaintiffs will demonstrate that each of Defendants' arguments are without merit and impermissibly rely upon evidence outside of the Amended Complaint. Therefore, the Motions to Dismiss should be denied.

## II. STATEMENT OF FACTS

The Antioch Company ("Antioch" or the "Company") established an Employee Stock Ownership Plan ("ESOP" or "Plan") in 1979 to provide retirement benefits for Antioch employees. (Plaintiffs' First Amended Complaint Dkt. 43 at ¶ 21.)[2] As of November 2003, the ESOP owned 42.8% of all Antioch shares issued and outstanding

---

[1] GreatBanc has not made this argument and thereby recognizes its liability if Plaintiffs demonstrate a fiduciary breach.

[2] Citations to Plaintiffs' First Amended Complaint will hereafter be referenced to by the Court's docket number and specific paragraphs as follows "(Dkt. 43, at ¶ ___.)"

while Defendants Lee Morgan and Asha Morgan Moran (the "Morgans"), individually

and as trustee for certain Morgan Family Trusts ("the Morgan family"), owned and

controlled 46.5%. (Dkt. 43 at ¶ 21)  The balance of shares were owned by 38 other non-

ESOP shareholders.  (*Id.*)

At all relevant times, the Individual Defendants were the sole members of the

ESOP Advisory Committee which had complete discretionary authority over the ESOP.

(Dkt. 43 at ¶¶ 7-9, 22)  Lee Morgan and Asha Morgan Moran were also ERISA

fiduciaries at all relevant times in their capacity as Antioch directors with the duty to

monitor the actions of any other ESOP fiduciaries. (Dkt. 43 at ¶¶ 7-9, 72)

Effective January 1, 1999, Antioch eliminated taxation at the corporate level by

electing S-corporation status. (Dkt. 43 at ¶ 31)  As a result, during the years 1999 through

2003, Antioch was required to distribute to all of its shareholders on a pro-rata basis

approximately 45% of its annual income.  (*Id.*)  The non-ESOP shareholders, including

the Individual Defendants, used this distribution to pay their share of tax on corporate

earnings, while the ESOP was not subject to income tax liability on any of the

distributions received.  (*Id.*)  For the year ending December 31, 2002, Antioch distributed

approximately $35 million to all shareholders with the ESOP receiving approximately

$15 million in cash.  (Dkt. 43 at ¶ 32)

In 2003, the Morgan family decided to pursue a transaction that would eliminate

the distributions for tax purposes to the non-ESOP shareholders as well as the equalizing

distribution to the ESOP by artificially transferring to the ESOP 100% ownership of all

Antioch stock issued and outstanding (the "2003 Transaction" or the "Transaction").

(Dkt. 43 at ¶¶ 34-38)  However, the Morgan family demanded that the transaction be

structured so that the Morgans maintained control over the Company and its ESOP. (Dkt. 43 at ¶¶ 35, 37)

The 2003 Transaction was structured as a preferential cash-out of the non-ESOP shareholders. The transaction involved two steps: (1) a Tender Offer in which only the non-ESOP shareholders would be permitted to participate in a stock purchase transaction (Dkt. 43 at ¶¶ 36, 40-42); and (2) a Merger of Antioch into a newly-formed company called the TAC[3] Company ("TAC"). Under the Tender Offer, all non-ESOP shares would be redeemed in exchange for cash only or a combination of cash, notes, and warrants. (Dkt. 43 at ¶ 36) The Morgan family interests intended to opt for cash, notes, and warrants, from which the warrants would enable them to purchase shares of common stock in 2014 and return their control to approximately 57% ownership. (*Id.* at ¶¶ 36-37) The 2003 Transaction was conditioned upon the ESOP Trustee declining to tender Antioch shares in the Tender Offer. (Dkt. 43 at ¶ 42) Since approval of the 2003 Transaction was conditioned upon an act of the Trustee which would result in the ESOP owning 100% of Antioch's shares, **the ESOP Trustee effectively had the power to approve or reject the 2003 Transaction**. (Dkt. 43 at ¶¶ 42, 48)

After the Morgans structured and pre-approved the Transaction at the Board of Directors and ESOP fiduciary level, GreatBanc was engaged to serve as ESOP Trustee with respect to the Tender Offer and the Merger. (Dkt. 43 at ¶ 40) In connection with the Tender Offer, GreatBanc had discretionary authority on behalf of the ESOP and was at all relevant times an ERISA fiduciary. (Dkt. 43 at ¶¶ 42, 48, 70-74, 78) GreatBanc

---

[3] The Amended Complaint does not allege that approval of the Merger was a precondition to consummation of the Tender Offer. Indeed, two of the documents GreatBanc improperly submitted to support the Motion to Dismiss state that the Merger was simply a means to cash out any shares other than those held by the ESOP, which were not timely tendered as part of the Tender Offer. See (first) Exhibit F, Dkt. 52-6 at 2 of 9 and (second) Exhibit F, Dkt. 52-7 at 11 of 21)

negotiated with the Morgans acting on behalf of the Company and agreed to approve an $850.00 per share purchase price payable to the non-ESOP shareholders (including the Morgans and their family interests), along with the option for sellers to receive notes and warrants in partial lieu of cash; and GreatBanc further agreed to decline any tender of ESOP owned shares in the Tender Offer in exchange for certain agreed upon annual distributions to be paid to the ESOP by the Company over a five year period and in exchange for a certain Put Price Protection Agreement. (Dkt. 43 at ¶¶ 41-44)

The Put Price Protection Agreement implemented special distribution rules applicable to all ESOP participants who terminated their employment during the period January 1, 2003, through September 2006, by establishing the fair market value of shares at no less than $840.26 per share for terminations prior to October 1, 2004, and at a premium over fair market value in each of the subsequent years. (Dkt. 43 at ¶ 44) By agreeing to these terms, the ESOP agreed to receive at least 25% less in annual distributions than it had been previously receiving, agreed to lock-in the Morgan family's continued control and domination of Antioch while the ESOP was the purported 100% owner, and agreed to approve the issuance of warrant contracts that diluted the ESOP's 100% ownership interest through synthetic equity from 2004-2014, and thereafter authorized the issuance of common shares to the non-ESOP shareholders returning the ESOP to a minority position. (Dkt. 43 at ¶¶ 45, 47-48, 38)

In December 2003, each of the non-ESOP shareholders agreed to the Tender Offer, while GreatBanc exercised discretionary authority on behalf of the ESOP by declining the Tender Offer. (Dkt. 43 at ¶¶ 43, 46) The 2003 Transaction was funded by Antioch's use of $46 million of cash reserves and borrowing $109 million from lenders.

(Dkt. 43 at ¶ 49)  Antioch's ability to carry and repay the debt was based upon management's ill-advised assumption that ESOP repurchase liability to retirees and terminated employees would not exceed an average of $10 to $12 million per year.  (*Id.*)

The fiduciary discretion of the Defendants in structuring and approving the Transaction required a determination of the fairness of the purchase price and other terms to the ESOP from a financial point of view. (Dkt. 43 at ¶ 52)  GreatBanc hired Duff & Phelps as its financial advisor to prepare a fairness opinion for the Transaction.  (*Id.*)

GreatBanc and Duff & Phelps should have recognized that the enormous increase in debt from the Transaction increased Company risk and volatility to unacceptable levels and that the Put Price Protection Agreement created a strong incentive for employees to leave the Company and lock-in the repurchase prices guaranteed through September 30, 2006. (Dkt. 43 at ¶¶ 50, 54-55, 57)  Thus, any significant increase in the departure rate of employees would further burden the Company with even more debt financing and would further multiply the risk and volatility of the ESOP's investment post-transaction. (Dkt. 43 at ¶¶ 56-57, 78)

As part of its fairness analysis, Defendants should have obtained an appraisal from its financial advisor both on a pre-transaction and post-transaction basis to assess fairness of the price and terms of the Transaction and to assure that the non-ESOP shareholders were paid no more than adequate consideration under ERISA. (Dkt. 43 at ¶¶ 52, 78)  However, GreatBanc failed to obtain an independent appraisal or a fairness opinion **on a pre-transaction and post-transaction basis** which took into consideration the substantial increase in risk of loss to the ESOP from the change of circumstances of the ESOP's investment and its repurchase liability.  *Id.*  As a result, GreatBanc approved

a very risky transaction for a price which was substantially greater than adequate consideration and was unfair to the ESOP. (Dkt. 43 at ¶ 78)

The acts of all of the Defendants in 2003 placed the ESOP participants at unnecessary risk and was imprudent by failing to conduct an appropriate corporate finance and ERISA analysis, by failing to account for the likely increased repurchase liability in its financial analysis, by failing to obtain an independent study of Antioch's repurchase liability, by failing to obtain their own appraisal, by failing to take action to reduce the likelihood of a stampede of terminations and redemptions, which would load the Company up with an even greater unmanageable debt burden, and by approving a Transaction which was never intended to give the ESOP true control, *inter alia*. (Dkt. 43 at ¶ 78)

After the Transaction, a veritable stampede of employees gave notice of their resignations so as to lock-in the value of their ESOP accounts at the inflated guaranteed prices set forth in the Put Price Protection Agreement. (Dkt. 43 at ¶ 59)  By the end of 2004, Antioch had paid or assumed repurchase obligations in the additional sum of $105 million. (*Id.* at ¶ 59)  The mass exodus of terminating employees continued in 2005 and 2006 creating unmanageable Company debt and triggering multiple defaults in loan agreements with its key lenders. (Dkt. 43 at ¶¶ 60-62)  By 2008, Antioch was forced to file for bankruptcy protection when it was unable to meet its stock repurchase obligations to ESOP participants, its outstanding bank loans, and other obligations. (Dkt. 43 at ¶ 64)  As a result, the ESOP is now worthless and was forced to file this lawsuit to recover its losses. (Dkt. 43 at ¶ 65)

## III.     ARGUMENT

### A.     LEGAL STANDARDS APPLICABLE TO A MOTION TO DISMISS

Defendants' motions assert that Plaintiffs have failed to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Courts are reluctant to dismiss cases on the pleadings alone, before any discovery has taken place, and express this reluctance in a variety of ways. One common formulation, adopted by "the Supreme Court and the courts in every circuit . . . in innumerable cases" is "that all of the allegations of the pleading are to be construed in the light most favorable to the pleader and accepted as true." Wright & Miller, Federal Practice and Procedure § 1363 at 112-13 (2004 & Supp. 2007).

In its most recent statements on the standard, *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), the Supreme Court held that a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." The Amended Complaint here meets that standard easily. It is not a conclusory statement that Defendants have violated the law, but a detailed recitation of the background facts relevant to the theories of liability. As required by *Twombly*, the Amended Complaint provides "enough detail to give the defendants fair notice of the nature of the claim and the grounds upon which it rests and to show that relief is plausible." *Snead v. Unknown Number of United States Bureau of Prisons Correctional Officers*, 308 Fed. Appx. 18, 20 (7th Cir. 2009). Thus, Defendants have a heavy burden to carry to persuade the court that the Amended Complaint, or any part of it, should be dismissed.

### B.    DEFENDANTS IMPROPERLY RELY ON MATTERS OUTSIDE THE PLEADINGS TO SUPPORT THEIR MOTIONS

Defendants have improperly proffered and relied on numerous matters that are outside the pleadings and that may not be considered on a motion to dismiss without converting the motion to one for summary judgment.   The matters outside the pleadings that are improperly relied on by Defendants are the subject of Plaintiffs' Motion to Strike Matters Outside the Pleadings ("Motion to Strike") filed concurrently herewith and those arguments are incorporated herein by reference.

As set forth more fully in the Motion to Strike, the matters outside the pleadings improperly proffered and relied upon by Defendants include the following: (1) a letter attaching a board resolution;[4] (2) an e-mail and letter exchange between an Antioch principal and Marilyn Marchetti (Dkt. 52-2 at ¶¶ 5-6; Dkt. 52-5 at 2 of 2) ; (3) certain alleged memoranda from GreatBanc addressed to "Participants in the Employee Stock Ownership Plan and Trust," including two memoranda and a document entitled "Fiduciary Obligations of Trustee Concerning Voting" (Dkt. 52 at 7-8; Dkt. 52-2 at ¶ 7; Dkt. 52-6); (4) "ballots" executed by three of the four named individual Plaintiffs (Dkt. 52 at 7; Dkt. 52-2 at ¶ 7; Dkt. 52-16); (5) the Successor Trustee Engagement Agreement between GreatBanc and Antioch and its First Amendment (Dkt. 52 at 3; Dkt. 52-2 at ¶¶ 3-4; Dkt. 52-3; Dkt. 52-4); and (6) the Antioch Company Employee Stock Ownership

---

[4]  GreatBanc's Memorandum in Support of its Motion to Dismiss Plaintiffs' First Amended Complaint shall be referenced by the Court's Docket Number (hereinafter, "Dkt. 52 at ___ of ___") as will the attached Exhibits (hereinafter "Dkt. 52-___ at ___ of ___").  Although GreatBanc cites to (see Dkt. 52 at 4 of 14) and quotes from "Exhibit E, Letter dated February 23, 2004 from Barry Hoskins to Marilyn Marchetti and attachments," this Exhibit was not included as an attachment to the Marchetti Affidavit (Dkt. 52-2 at ¶ 6).

Plan (including its amendments), the Antioch Company Trust Agreement, and the Proxy (Dkt. 49 at 3-5 of 32; Dkt. 52 at 7-8 of 14 and n.2; Dkt. 49-3; Dkt. 52-7 to 52-16).[5]

The Antioch Company Employee Stock Ownership Plan and the Antioch Company Proxy dated November 14, 2003 are referred to in Plaintiffs' First Amended Complaint, but it is not at all clear that these lengthy documents relied on by Defendants (or the proffered amendments to the Plan) are the same documents referred to and relied on by Plaintiffs or that they can properly be used for the purposes suggested. The remaining documents proffered by Defendants are not even arguably referred to by Plaintiffs, nor are they central to Plaintiffs' claims. *Albany Bank & Trust v. Exxon Mobil Corp.*, 310 F.3d 969 at 971. Accordingly, they cannot be considered without converting Defendants' motions to dismiss into motions for summary judgment which should not be done here at this very early stage before any discovery has even commenced.

### C. PLAINTIFFS' ERISA CLAIMS ARE NOT TIME BARRED BY ERISA'S THREE-YEAR STATUTE OF LIMITATIONS

#### 1. Introduction.

While as a general rule, a statute of limitations defense is not appropriately used in the context of a Rule 12(b)(6) motion to dismiss, an exception is recognized where the complaint facially shows that the time limit for bringing the claim has passed. *Kauthar SDN BHD v. Sternberg,* 149 F.3d 659, 669-670 (7th Cir. 1998). However, the Seventh Circuit has clearly stated that, because the question of whether a plaintiff had sufficient facts to place it on actual notice of a claim is one of fact, it may be inappropriate to even consider such defense on a Rule 12(b)(6) motion to dismiss. *Id.* If a statute of limitations

---

[5] The Individual Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiffs' First Amended Complaint shall be referred to by the Court's Docket Number (hereinafter "Dkt. 49 at ___ of ____") as will the attached Exhibits (hereinafter "Dkt. 49-___ at ___ of ___").

defense in a motion to dismiss is to be considered, then the court must accept all of plaintiff's factual allegations as true and draw all reasonable inferences in favor of plaintiff. *Twombly*, 127 S. Ct. at 1970-74.

Defendants have not argued that the face of the Amended Complaint affirmatively indicates that the time limit for bringing the claim has passed. Rather, Defendants have filed affidavits and a multitude of documents outside of the Amended Complaint to support their statute of limitations defense. Nor does the Amended Complaint even arguably provide any basis to demonstrate that the Plaintiffs had **actual knowledge** of a fiduciary breach or ERISA violation in 2003 or 2004, as required for the application of ERISA's three-year statute of limitations. There are simply no such allegations in the Amended Complaint that support this argument. Because the question of whether Plaintiffs had actual knowledge of a fiduciary breach or violation is inherently a factual question, Defendants' Motion to Dismiss on statute of limitation grounds is inappropriate and should be denied.

### 2. Applicable Federal Law On ERISA's Statute Of Limitations.

As Defendants have stated, the statute of limitations for an ERISA claim against a fiduciary is (1) six years after (a) the date of the last act which constitutes a part of the breach or violation, or (b) in the case of an omission, the latest date on which the fiduciary could have cured the violation or breach; or (2) three years after the earliest date on which the plaintiff had **actual knowledge** of the breach or violation. ERISA § 413 (29 U.S.C. § 1113). Defendants each claim that Plaintiffs had **actual knowledge** of the fiduciary breach or violation in 2003 and 2004, and therefore argue that the three-year statute of limitations is applicable to bar Plaintiffs' claims.

Actual knowledge, however, must be distinguished from constructive knowledge, the latter of which is insufficient to trigger the three-year limitations period. *Martin v. Consultants & Admrs., Inc.*, 966 F.2d 1078, 1085-1086 (7th Cir. 1992). The Seventh Circuit has recognized that the line between actual and constructive knowledge is often difficult to find and requires a fact intensive inquiry. To have actual knowledge of a violation to trigger the three-year limitations period, "a plaintiff must know of the essential facts of the transaction or conduct constituting the violation." *Martin,* 966 F.2d at 1086.

The Seventh Circuit explained the fact intensive inquiry as follows:

> But how does one characterize the relevant transaction and its essential facts? Like so many areas of law, this matter turns on the level of generality employed in characterizing the transaction at issue. We know that somewhere between "every last detail" and "something was awry" lies the requisite knowledge of an ERISA violation. The proper characterization will usually turn in part on the complexity of the underlying factual transaction, the complexity of the legal claim and the egregiousness of the alleged violation. Beyond such generalizations, however, we can only say that judges, faced with particular contexts and relying on their "situation sense," must make the determination.

*Id.*

Applying this test, it is clear that to charge Plaintiffs with actual knowledge of an ERISA violation, "it is not enough that he had notice that something was awry; he must have had specific knowledge of the actual breach of duty upon which he sues." *Martin,* 966 F.2d at 1086; *Radiology Center, S.C. v. Stifel, Nicolaus & Co.,* 919 F.2d 1216, 1222 (7th Cir. 1990).

**3.  Defendants Proffered Factual Materials From Outside Of The Amended Complaint Did Not Give Plaintiffs Actual Knowledge Of A Fiduciary Breach Or Violation In 2003 And 2004**.

Each of the Defendants contend that the Proxy Materials and Voting Instructions improperly submitted with the motions to dismiss demonstrate that Plaintiffs had actual knowledge of a fiduciary breach or violation in 2003.  However, this argument <u>assumes</u> that the Proxy Materials and Voting Instructions, even if received and read (which is not demonstrated by the voluminous materials submitted by Defendants), provide actual knowledge of all of the essential facts that Defendants committed a fiduciary breach or ERISA violation by approving and agreeing to the 2003 Transaction.  Such assumption is unsupportable in light of the complexity of the underlying agreements comprising and other documents related to the 2003 Transaction, the complexity of the legal claim and the seriousness of the fiduciary breach or violations alleged.  *Martin*, 966 F2d. at 1086.[6]

In governing the conduct of fiduciaries for employee benefit plans, Congress has adopted a prudent man standard of care which is process oriented and requires that a fiduciary acting on behalf of a plan must discharge his duties with respect to the plan solely in the interest of the participants and beneficiaries and:

A.  For the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan;

B.  Acting with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; and

C.  In accordance with the documents and instruments governing the plan.

ERISA § 404 (29 U.S.C. § 1104); *Eyler v. Commissioner*, 88 F.3d 445, 455 (7th Cir. 1996) ("In reviewing acts of ESOP fiduciaries under the objective person standard, courts

---

[6]  Indeed, the Proxy Statement alone is almost two hundred pages long requiring GreatBanc to submit it as an Exhibit in nine separate parts.  See Dkt. 52-7 to 52-15.

examine both the process used by the fiduciaries to reach their decision as well as an evaluation of the merits"); *Reich v. Valley Nat'l Bank of Arizona,* 837 F. Supp. 1259 (S.D.N.Y. 1993). These fiduciary duties cover three essential components: the duty of loyalty, the prudent man standard, and the exclusive purpose requirement. *See, Donovan v. Bierwirth,* 680 F.2d 263, 271 (2d Cir. 1982), *cert. denied,* 459 U.S. 1069. If a fiduciary fails to meet these high standards, he is personally liable for any losses to the plan resulting from his breach of duty. ERISA § 409(a) (29 U.S.C. § 1109(a)).

In addition to alleging a fiduciary breach by Defendants under § 404 of ERISA, Plaintiffs have also alleged a prohibited transaction in violation of ERISA §§ 406 and 408 (29 U.S.C. §§ 1106 and 1108). Plaintiffs will explain and demonstrate how the 2003 Transaction was a "prohibited transaction" under § 406 in a later part of this Memorandum. However, even if the 2003 Transaction was prohibited under § 406, it still would be exempt under ERISA § 408(e) if the purchase is for not more than "adequate consideration."

ERISA defines "adequate consideration" for stock with no generally recognized market as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plans and in accordance with regulations promulgated by the Secretary [of Labor]." 29 U.S.C. § 1002(18)(B). Like the prudence standard in § 404, the "adequate consideration test" is also process oriented. Under the regulations proposed by the Department of Labor[7] and applicable case authority, the definition of "adequate consideration" imposes a two-fold requirement: (1) the fiduciary must make a careful and independent, good faith investigation of the circumstances

---

[7] The Regulations were proposed and published in May 1988, and most ESOP consultants and courts consider them authoritative. *Keach v. U.S. Trust Co.,* 419 F.3d 626, 636 (7th Cir. 2005).

prevailing at the time of the sale or purchase; and (2) the price paid must reflect the fair market value of the asset.  Prop. DOL Reg. § 2510.3-18(b)(1)(ii); *Keach*, 419 F.3d 626, 636 (7th Cir. 2005).  Nor is reliance upon an independent assessment from a financial advisor evidence of a thorough or good faith investigation or a complete defense to imprudence.  *Martin v. Feilen,* 965 F.2d 660, 670-71 (8th Cir. 1992); *Donovan v. Mazzola,* 716 F.2d 1226, 1234 (9th Cir. 1983).  The trustee must also make certain that reliance on the expert's advise is reasonably justified under the circumstances.  *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1219 (2d Cir. 1987); *Howard v. Shay,* 100 F.3d 1484, 1489 (9th Cir. 1996).

In this case, GreatBanc has attempted to inject into the record on a motion to dismiss the Proxy Materials consisting of a memorandum from GreatBanc to participants dated November 14, 2003, the Antioch Offer to Purchase and Proxy Statement dated November 14, 2003, and the Voting Instruction forms. (Dkt. 52-6 to 52-16)  These documents provide no information whatsoever about **the conduct of the ESOP fiduciaries.**

While Plaintiffs contend consideration of those documents is not proper, even so, the GreatBanc memorandum dated November 14, 2003, (Dkt. 52-6 at 1 of 9) specifically states:

> We will determine whether to agree to the proposed transaction based on an independent investigation that we are conducting.  With the help of independent financial and legal advisors, we are analyzing the proposed transaction with a view towards determining whether it is in your best interests.

In other words, the Trustee and its advisor had not even completed their work or made a determination whether to approve the Transaction and had not tendered the ESOP shares

when these documents were purportedly sent. The Offer to Purchase and Proxy Statement confirmed that neither GreatBanc nor its financial advisor had rendered any final opinion on the fairness of the Transaction to the ESOP or whether it should be approved as of the date of the Offer. (Dkt. 52-7 at 13 of 21; Dkt. 52-8 at 13-14 of 21) In addition, no preliminary opinion letters of the **ESOP's financial advisor** were attached to nor explained in the Proxy Materials.[8]

When read in context, these documents reflected that GreatBanc was still considering the Transaction and thus could not provide actual knowledge of a fiduciary breach or violation. *Montgomery v. Aetna Plywood, Inc.*, 956 F. Supp. 781, 786 (N.D. Ill. 1997). When Plaintiffs and the other participants learned that the 2003 Transaction had been completed and approved, they still had not received anything from GreatBanc, Duff & Phelps, and/or the Company which explained what actual processes the ESOP fiduciaries had used in completing any investigation of the Transaction and conclusions they had drawn based on these processes in order to determine the fairness of the Transaction to the ESOP. Even if proper to consider in a Motion to Dismiss (which it is not), Defendants have proffered no evidence that suggests that the participants ever obtained that critical information.

To the contrary, as made clear in the Amended Complaint, the Plaintiffs never saw any fairness opinion from Duff & Phelps, never saw any appraisal prepared for the ESOP in connection with the Transaction, never saw any repurchase liability studies relied on by the Defendants, and never saw any reports from GreatBanc explaining what they or their financial advisor had done in analyzing and approving the fairness of this

---

[8] The Offer to Purchase did generally describe the findings of Houlihan Lokey, the financial advisor for the Company and the non-ESOP shareholders. Houlihan Lokey opined that it was fair to the non-ESOP selling shareholders, but specifically disclaimed that it was fair to the ESOP. (Dkt. 52-14 at 8, 10 of 21)

Transaction to the ESOP.  Without such information, Plaintiffs were denied actual

knowledge of the processes followed by the fiduciaries and therefore did not have

essential facts necessary to conclude that a claim existed for breach of fiduciary duty

under ERISA § 404 or for a non-exempt prohibited transaction under ERISA §§ 406 and

408.  Contrary to Defendants' argument, there was simply nothing contained in the Proxy

Materials which could provide that critical information.[9]  In addition, the complexity of

the components and consequences of the 2003 transaction and the legal claims they

engender are far beyond the understanding of ordinary people.  *Martin*, 966 F.2d at 1086.

Given this, actual knowledge of Defendants' wrongdoing was not possible absent

disclosure of the process used by the fiduciaries to analyze the fairness of the transaction

before approval.

    The Amended Complaint clearly outlined the acts of imprudence and breach of

fiduciary duty by Defendants (Dkt. 43 at ¶¶ 74-77) and the act of causing the ESOP to

enter into a non-exempt prohibited transaction (Dkt. 43 at ¶¶ 78-79).  Yet nowhere is it

alleged that Plaintiffs or the participants had any actual or even constructive knowledge

of the specific acts set forth therein.  Thus, the Amended  Complaint provides no basis for

this Court to find that Plaintiffs had actual knowledge of any wrongdoing in 2003 or

2004.

    Nor did the stampede of employees starting in 2004 put the Plaintiffs on actual

notice that their fiduciaries had committed a fiduciary breach or violation of ERISA.  The

---

[9]   Defendants have argued that disclosure of the risks in the Proxy Materials provided actual knowledge to participants of a fiduciary breach.  However, knowledge of the risks of a transaction does not provide evidence of a breach.  Many transactions properly authorized by fiduciaries have a variety of associated risks.  Rather, it is how the risks were assessed and weighed by the ESOP fiduciaries in determining "adequate consideration" and financial fairness that determines whether any fiduciary duties were breached.  *Eyler*, 88 F.3d at 455; *Gluck v. Unisys Corp.*, 960 F.2d 1168,1178-79 (3d Cir. 1992).

fact that employees left — no matter what the number — provided no information that the fiduciaries' processes were flawed or that they had violated the duty of loyalty, the prudent man standard, the exclusive purpose requirement, the requirement of good faith investigation, or the fair market value determination. Until Plaintiffs were provided that information, they could not be deemed to have actual knowledge to trigger the three-year statute of limitations. As stated in *Martin,* "it is not enough that [plaintiff] had notice that something was awry; he must have had specific knowledge of the actual breach of duty upon which he sues." 996 F.2d at 1086. For these reasons, Defendants have failed to show that the Amended Complaint is barred as a matter of law by ERISA's three-year statute of limitations.

### 4. Plaintiffs Have Never Admitted That Their Claims Against GreatBanc Are Untimely.

GreatBanc has argued that Plaintiffs have admitted that their claims against it were not timely by alleging in Paragraph 18(e)(iii) of the Amended Complaint that one of the common questions of law and fact for the class action is whether the Individual Defendants failed to bring suit against GreatBanc and themselves within the applicable statute of limitations. This argument is not only unsupported by any law, but is also frivolous in light of the Federal Rules of Civil Procedure.

Fed.R.Civ.P. 8(d) authorizes a plaintiff to set out two or more statements of a claim, alternatively or hypothetically, either in a single count or separate counts. Plaintiffs' allegation is nothing more than an alternative claim approved by Rule 8(d). On the one hand, it is Plaintiffs' position that the original complaint was filed within ERISA's applicable statute of limitations (29 U.S.C. § 1113) and that the claims against GreatBanc and the Individual Defendants are not time barred. However, to the extent this

Court were to find that such claims for breach of fiduciary duty and prohibited transaction are time barred, then the Individual Defendants are nonetheless liable under ERISA for failing to bring suit against GreatBanc and themselves for fiduciary breach and other violations within the applicable time period in 29 U.S.C. § 1113. *Martin*, 996 F.2d at 1089-1090.

Therefore, it would be improper for the Court to treat this allegation as an admission against interest when it simply represents alternative pleading of claims.

> **5. Assuming *Arguendo* That Plaintiffs' 2003 Claims Against Defendants Are Time Barred Under 29 U.S.C. § 1113, Then Plaintiffs Have Stated A Claim Against The Individual Defendants For Failure To Sue Within The Applicable Limitations Period.**

In the Amended Complaint, Plaintiffs have alleged that the Individual Defendants served as members of the Antioch Board of Directors and as members of the ESOP Advisory Committee during and at all times after the 2003 Transaction. (Dkt. 43 at ¶¶ 7-9, 22, 37, 72-73) Plaintiffs also alleged that the ESOP Advisory Committee had discretionary control over the Plan and its assets. (Dkt. 43 at ¶ 22) If in fact, GreatBanc stepped down as Special Trustee in December 2003 as the Defendants' improperly assert without reference to the Amended Complaint, then the Individual Defendants as members of the ESOP Advisory Committee had the authority and fiduciary duty to sue GreatBanc as well as themselves for their ERISA violations before such claims would become time barred under ERISA's applicable statute of limitations. *Delta Star, Inc. v. Patton,* 76 F. Supp. 2d 617, 637 (W.D. Pa. 1999); *Atwood v. Burlington Industries Equity, Inc.,* No. 2:92cv00716, 1994 U.S. Dist. LEXIS 12347 (M.D.N.C. Aug. 3, 1994).

Where delay by the ESOP fiduciaries in bringing suit has prejudiced the ability of the ESOP to recover its losses, then such fiduciaries are liable under ERISA for their

failure to sue. *Martin,* 966 F.2d at 1089-1090. The "end-point of the statute of limitations on the primary claim will mark the start of the limitations period on the derivative claim," because only then would a plaintiff have knowledge of a failure-to-sue violation. *Id.*

Even if the Court concludes that the Plaintiffs had actual knowledge (which Plaintiffs believe is not warranted based on the allegations in the Amended Complaint), the Individual Defendants would then, *a fortiori*, also have had knowledge of all essential facts to bring any action against GreatBanc and themselves as early as December 2003. But they failed to bring the action in or before December 2006 as required by their fiduciary duty. Thus, if the ESOP is precluded or prejudiced from recovery to any extent because of the Individual Defendants' failure to sue, the ESOP participants had an additional three years from December 2006, to bring an action for failure to sue. This case was filed in March 2009, at least nine months before the bar date for a failure to sue claim. Accordingly, the Individual Defendants' statute of limitations defense should be overruled.

**D.    PLAINTIFFS HAVE STATED A CLAIM AGAINST THE INDIVIDUAL DEFENDANTS AS ERISA FIDUCIARIES**

The Individual Defendants are ERISA fiduciaries by reason of their discretionary authority and control over the plan, its management, and assets before, during, and after the appointment of GreatBanc, despite their attempt to confuse the issues and deny their fiduciary status after GreatBanc was appointed trustee. These duties arise from their roles as members of the ESOP Advisory Committee, directors of Antioch, and/or the creators, designers, and supporters of the Transaction. Each of these individual roles subject the Individual Defendants to liability as ERISA fiduciaries, notwithstanding the

20

engagement of GreatBanc.  Furthermore, none of the Defendants have even moved to dismiss the claim that they are ERISA co-fiduciaries under Section 405, which means they concede that they can be held jointly liable for their actions or inactions in that capacity.

A person becomes an ERISA fiduciary with respect to a plan either by being named as a fiduciary or identified as a fiduciary pursuant to a procedure specified in a written plan instrument or by exercising discretionary authority or control over the management, administration or assets of a plan.   29 U.S.C. § 1102(a)(2); 29 U.S.C. § 1002(21)(A).  A person may thus become an ERISA fiduciary where he exercises *de facto* control over plan assets by controlling "whether and on what terms the ESOP transaction would go through."  *Keach v. U.S. Trust Co.*, 234 F. Supp. 2d 872, 881 (C.D. Ill. 2002), *affir'd* 419 F.3d 626 (7th Cir. 2005); *see also Newton v. Van Otterloo*, 756 F. Supp. 1121, 1129 (N.D. Ind. 1991).

Individuals can exercise actual and/or *de facto* control even when an independent trustee has been appointed to serve as a special trustee for purposes of an ESOP transaction.  Where individuals exercise control by motivating, structuring, and/or negotiating an ESOP transaction, they may be held liable as ERISA fiduciaries even if an independent trustee has been appointed for purposes of the transaction.  *Keach*, 234 F. Supp. 2d at 881-83.  This is so because the selection of the trustee to advise the ESOP specifically for purposes of the transaction may be "so inextricably intertwined with the desired end of effectuating the [transaction] that the act of appointing the trustee essentially exercised *de facto* control over the plan assets and management."  *Keach*, 234 F. Supp. 2d at 882-83.

21

### 1. The Individual Defendants Were Section 404 ERISA Fiduciaries Before the Hiring of GreatBanc.

Before the engagement of GreatBanc, the Individual Defendants had complete, actual discretionary control over plan, management, and administration in their roles as ESOP Advisory Committee members. (Dkt. 43 at ¶¶ 7-9, 22) In such role, they were named fiduciaries identified by the plan instruments. Defendants Lee Morgan and Asha Morgan Moran, in their capacity as directors of Antioch, also had well-recognized ERISA fiduciary duties to appoint, remove, and monitor the members of the ESOP Advisory Committee and any trustee. (Dkt. 43 at ¶¶ 7-9, 70-73); 29 U.S.C. §1002(21); *Leigh v. Engle*, 727 F.2d 113, 135 (7th Cir. 1984); *Keach*, 234 F. Supp. 2d at 881. The Individual Defendants acted in their fiduciary capacity as ESOP Advisory Committee members and/or directors of Antioch by motivating, structuring, and negotiating the Transaction to reposition the ESOP from its 42.8% minority ownership of Antioch common stock to control ownership of 100% of Antioch common stock. (Dkt. 43 at ¶¶ 21, 33-39, 57, 70-73) The Individual Defendants also acted in their fiduciary capacity as ESOP Advisory Committee members and/or directors of Antioch to removed Barry Hoskins as the ESOP directed trustee and to appoint GreatBanc as a successor discretionary trustee to approve the Transaction. (Dkt. 43 at ¶¶ 22, 40, 70-73)

### 2. The Individual Defendants Were Section 404 ERISA Fiduciaries During the Tenure of GreatBanc.

After GreatBanc was engaged as successor trustee, the Individual Defendants in their roles as ESOP Advisory Committee members continued to exercise actual discretionary control over plan management and administration, except with regard to the approval of the Transaction. (Dkt. 43 at ¶¶ 40-49, 70-74) Defendants Lee Morgan and

Asha Moran Morgan also continued to have ERISA fiduciary responsibilities in their director capacities to monitor the actions of the ESOP trustee and ESOP Advisory Committee members and to remove any who breached his duties to the ESOP. (Dkt. 43 at ¶¶ 7-8, 22, 70-74); *Leigh*, 727 F.2d at 134-135; *Keach*, 234 F. Supp. 2d at 882 (fiduciary who appoints plan trustee has a duty to monitor actions of appointed trustee). The Individual Defendants in their capacity as ERISA co-fiduciaries also were precluded from knowingly participating as co-fiduciaries in the breaches of fiduciary duty resulting from the Transaction. ERISA §405(a). (Dkt. 43 at ¶¶ 40-57, 70-74)

### 3. The Individual Defendants Were Section 404 ERISA Fiduciaries After GreatBanc Resigned as Trustee.

After the transaction was consummated and GreatBanc resigned as trustee, the Individual Defendants continued as members of the ESOP Advisory Committee, but with complete discretionary control over plan management, administration, and plan assets. (Dkt. 43 at ¶¶ 48-51, 58-64, 77-85) Lee Morgan and Asha Morgan Moran continued to serve as directors with ERISA fiduciary duties to appoint, monitor, and, where appropriate, remove the plan trustee and members of the ESOP Advisory Committee. (Dkt. 43 at ¶¶ 7-8, 22, 72-74); *Leigh*, 727 F.2d at 134-135; *Keach*, 234 F. Supp. 2d at 882. Furthermore, they continued to be ERISA co-fiduciaries with the duty not to knowingly conceal the breaches of fiduciary duty by themselves and GreatBanc arising from the Transaction and with the affirmative duty to make reasonable efforts to remedy the breaches upon learning of them. ERISA §405(a). The Individual Defendants breached these fiduciary duties at all times after the Transaction. (Dkt. 43 at ¶¶ 40-57, 70-85) Lastly, assuming *arguendo* that ERISA's three-year statute of limitation applies, the Individual Defendants failed to sue GreatBanc and themselves within the applicable

23

limitations period. (Dkt. 43 at ¶¶ 84-85); *Delta Star v. Patton*, 76 F. Supp. 2d at 637 (W.D.Pa. 1999).

### 4. The Individual Defendants' Case Authority Does Not Relieve Them of These ERISA Fiduciary Duties.

The Individual Defendants' cases do not provide a basis for relieving them of their fiduciary duties before, during, and after the appointment of GreatBanc. Indeed, they merely confirm their applicability. The Individual Defendants rely heavily on *Flake v. Hoskins*, 55 F. Supp. 2d 1196 (D. Kas.), to support dismissal of the fiduciary allegations against them. (Dkt. 49 at 20-21) Although the defendants in *Flake* were determined, on the specified facts of that case, not to be ERISA fiduciaries for purpose of the sale and disposition of ESOP assets because an independent fiduciary had been appointed and exercised actual control over the transaction, the Court held that they remained liable as ERISA fiduciaries for all other acts of plan management and administration and for removal of the trustee. *Flake*, 55 F. Supp. 2d at 1221 ("Some allegations do implicate defendants' fiduciary duties under ERISA, which include (1) plan administration, (2) the issuance of advisory opinions regarding disposition of the trust assets, and (3) removing the trustee . . . . These allegations state a claim for breach of fiduciary duties under ERISA."). *Flake* also can be distinguished from this case in that it did not involve a claim of co-fiduciary liability under ERISA §405. *Flake*, 55 F. Supp. 2d 1196.

The other cases relied upon by the Individual Defendants are factually distinguishable from this case because none of them involved named fiduciaries or directors with ERISA-defined fiduciary responsibility. *Pappas v. Independent Insulating Glass Co.*, 923 F.2d 531, 535 (7th Cir. 1991) (holding that ERISA fiduciary duties were

not applicable to parties not in control of the plan, such as professionals like accountants, attorneys, and actuaries that merely advise a trustee in its exercise of control); *Klosterman v. Western Gen. Management*, 32 F.3d 1119, 1122-23 (7th Cir. 1994) (holding that ERISA fiduciary duties were not applicable to employer's insurance broker and third-party administrator that merely provided the insurance framework for the plan); *Pohl v. Nat-l Benefits Consultants, Inc.*, 956 F.2d 126, 129 (7th Cir. 1992) (holding ministerial plan administrator could not be an ERISA fiduciary because it did not exercise any discretion or control, but that plan administrators could be ERISA fiduciaries under other facts); *Associates in Adolescent Psychiatry S.C. v. Home Life Ins. Co.*, 941 F.2d 561, 568-69 (7th Cir. 1991) (holding that ERISA fiduciary duties were not applicable to annuity insurer that was responsible only for funding mechanism of plan).

### 5. The Defendants Are Also §405 ERISA Co-Fiduciaries.

The Defendants do not dispute that they may be liable as ERISA co-fiduciaries under § 405, since they have not moved to dismiss Plaintiffs claims under that Section. (Dkt. 43 at ¶ 83; Dkt. 49 *passim*; Dkt. 52 *passim*) Defendants may be held liable as ERISA co-fiduciaries if 1) they knowingly participate in or knowingly undertake to conceal a breach by another fiduciary, 2) their own breach enables another fiduciary to commit a breach, or 3) they have knowledge of a breach by another fiduciary's breach but fail to make reasonable efforts to remedy the breach. 29 U.S.C. § 1105(a) (identified as ERISA § 405(a)) Plaintiffs alleged that each of the Defendants knew of and/or participated in the breaches of the other and failed to take reasonable steps to correct those breaches. (Dkt. 43 at ¶ 83)

For purposes of a motion to dismiss, Plaintiffs have adequately alleged that the Individual Defendants are ERISA fiduciaries and liable for breach of their duties under ERISA §§ 404, 405, 406, and 408.

## E. PLAINTIFFS HAVE PROPERLY ALLEGED AN ERISA PROHIBITED TRANSACTION CLAIM AGAINST ALL DEFENDANTS

### 1. Introduction.

ERISA expressly prohibits certain transactions involving plan assets because of the risk of unfair dealing inherent in such transactions which Congress deemed highly likely to invite wrongdoing. A prohibited transaction results when a party-in-interest engages in a transaction described in ERISA § 406 that involves plan assets or when a fiduciary participates in a transaction that creates an inherent conflict of interest. ERISA §§ 406(a) and (b) (29 U.S.C. § 1106(a) and (b)). To mitigate the broad effect of the prohibited transaction rules, Congress provided certain statutory exemptions in ERISA § 408 (29 U.S.C. § 1108).

The prohibited transaction rules address two broad categories. Section 406(a) applies to transactions between a plan and a party-in-interest. ERISA's definition of a party-in-interest includes, but is not limited to: fiduciaries, an employer whose employees are covered by a plan, an officer, director or employee, and a 10% or greater shareholder directly or indirectly, of the employer corporation. ERISA § 3(14) (29 U.S.C. § 1002(14)).

Section 406(b) prohibits certain transactions between a plan and its fiduciaries, including, but not limited to, where the fiduciary receives any consideration for his own personal account from any party dealing with the plan in connection with a transaction

involving the assets of the plan. ERISA § 406 (29 U.S.C. § 1106). A person is a fiduciary with respect to a plan to the extent he exercise discretionary authority or discretionary control respecting plan management or administration or investment of its assets. 29 U.S.C. § 1002(21).

In their Amended Complaint, Plaintiffs have alleged that GreatBanc was an ESOP fiduciary in its capacity as special trustee for the Antioch ESOP (Dkt. 43 at ¶¶ 40, 71) and that the Individual Defendants were ESOP fiduciaries and parties-in-interest in their capacities as officers, directors, employees, 10% or greater shareholders in Antioch, and as members of the ESOP Advisory Committee (Dkt. 43 at ¶¶ 21-22, 71-73). Plaintiffs have also alleged that the 2003 Transaction structured by the Individual Defendants and their advisors and approved by GreatBanc changed the circumstances of the ESOP's investment and the repurchase liability, thereby substantially increasing the risk of loss to the ESOP and its participants (Dkt. 43 at ¶¶ 75-78); and that the Individual Defendants acted with disloyalty to the ESOP by allowing their fiduciary responsibility to be clouded by their concerns for liquidity to the non-ESOP shareholders (including themselves) and for maintaining continuing control by the Morgan family (Dkt. 43 at ¶ 77).

Despite the detailed factual pleading, all Defendants contend there is no prohibited transaction under § 406 because there is no transaction between the Plan and a party-in-interest. This myopic view of the Transaction should be rejected by this Court.

### 2. The 2003 Transaction Was An Indirect Sale Of Control Of Antioch Stock To The ESOP.

The purpose of the Transaction was to temporarily increase the ESOP's stock ownership in Antioch from 43% to 100% so that there would be no taxation at the shareholder level. (Dkt. 43 at ¶34) This could have been accomplished two different

ways: (1) by the ESOP's leveraged purchase of all shares owned or controlled by the non-ESOP shareholders funded by an Antioch loan to the ESOP (ESOP direct purchase) or (2) by a corporate redemption of all shares owned or controlled by the non-ESOP shareholders (ESOP indirect purchase). Under either method, the corporation would finance a transaction which would result in the ESOP becoming a 100% shareholder of the corporation for federal tax purposes.

Antioch and the Individual Defendants selected the indirect method of acquisition so that the Morgan family could lock-in control of Antioch management, Board of Directors and the ESOP Advisory Committee during the period 2003-2014 and so that the corporation could issue warrants to the Morgan Family as part of the redemption which would allow them to be restored to a 57% ownership position by 2014. (Dkt. 43 ¶ 37). This constituted blatant self-dealing and breach of loyalty by these ERISA fiduciaries who structured the transactions primarily for their own benefit. Defendants all understood that this peculiar transaction could not be accomplished without the consent of the ESOP and its trustee. As plainly stated in the Amended Complaint: "Since the approval of the proposed Transaction was conditional upon an act of the ESOP Trustee, the ESOP Trustee effectively had the power to approve or reject the Proposed Transaction." (Dkt. 43 at ¶ 42)[10]

While the ESOP could prevent the Transaction by simply tendering its shares, the ESOP was also in a position where it could negotiate what it considered were acceptable terms for the Transaction – including the purchase price paid to sellers as well as benefits

---

[10] Plaintiffs contend in the accompanying Motion to Strike that the documents submitted by GreatBanc along with the Motion to Dismiss should be ignored. But if they are not, a memorandum submitted by GreatBanc states: "Because the transaction is designed to result in the Company being wholly-owned by the ESOP, a condition to closing the transaction is that we, as the ESOP Trustee, decline to sell Antioch shares in the tender offer." (Dkt. 52-6 at 2 of 9)

for the ESOP and all of its participants. This complex Transaction was without a doubt a transaction between a plan and a party-in-interest as well as between a plan and its fiduciaries.

The negotiated Transaction resulted in the ESOP approving the terms of the Tender and declining to tender its shares on the same terms. As a result, the ESOP indirectly acquired 100% ownership of Antioch but subject to the contractual right of the Morgan family to continue its control of the company, receive stock warrants as partial consideration for the sale of shares and convert the warrants to common stock in 2014 and regain a control position over company stock. In agreeing to these terms, the ESOP trustee gave up its right to receive equalizing distributions from the presence of multiple shareholders in an S corporation, obtained an agreement to receive future distributions over a 5 year period that were at least 25% lower than what the ESOP had received in the past, and agreed to allow its 100% ownership position to be diluted over 10 years from the warrants issued to the selling shareholders. (Dkt. 43 at ¶¶ 36-37, 45) This was in every sense a transaction which involved the plan and its assets.

Surely these facts distinguish this case from *DeGroot v. Suburban Bank & Trust Co.,* No. 08 C 1167, 2008 U.S. Dist. LEXIS 59959, *12 (N.D. Ill. Aug. 6, 2008) and *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004) relied upon by Defendants. In *DeGroot,* the complaint specifically alleged that no transaction involving the ESOP had occurred, because the plan's offer to redeem and repurchase shares was rejected by *DeGroot* who did not believe the offer price was fair. Under these circumstances, there could be no prohibited transaction under ERISA.[11] Conversely in

---

[11]   However, the court pointed out that while *DeGroot* did not allege a claim for a prohibited transaction under § 406, he still maintained an ERISA claim for breach of fiduciary duty under § 404.

this case, a transaction was negotiated, consummated, and approved by the ESOP which resulted in the ESOP ownership increasing from 43% to 100% and the ESOP agreeing to stock warrants which would reduce the ESOP's ownership back to a minority position by 2014. Similarly, the *Wright* decision (holding that the decision of an ESOP to continue to hold plan assets in employer stock is the very purpose of an ESOP and cannot constitute a violation of ERISA §§ 404 or 406 (29 U.S.C. §§ 1104 and 1106) has no application herein where the ESOP has actually engaged in a complex transaction affecting its assets and corporate governance for years to come.

> **3. Applicable Case Law In The Seventh Circuit Recognizes That A Trustee's Decision To Decline To Sell Plan Assets In A Tender Offer Is A Prohibited Transaction Where ESOP Fiduciaries And Parties-in-Interest Will Benefit From The Trustee's Decision.**

Contrary to Defendants' argument, an ESOP trustee's decision to decline to sell Plan assets in a Tender Offer is a prohibited transaction where ESOP fiduciaries and parties-in-interest will benefit from the trustee's decision. In *Sandoval v. Simmons,* 622 F. Supp. 1174 (C.D. Ill. 1985), Defendant Simmons, as chairman of the board of National City Lines ("NCL"), proposed that NCL and Amalgamated Sugar Company ("ASC") enter into an agreement under which they would make a joint tender offer to purchase any and all ASC shares for $65.00 per share. The cost of the purchase was allocated first to ASC cash up to $77,000,000, the next $30,000,000 from ASC loans, and the balance to be paid by NCL. Defendant Simmons promised and represented that NCL and certain of its affiliates, including the Keystone Consolidated Industries ("Keystone") Pension Trust, would agree not to tender their shares under the offer. At the time, Defendant Simmons and his brother were officers, directors, and controlling shareholders of Keystone and

30

fiduciaries with discretionary authority over the assets of the Keystone Pension Trust. The Tender Offer was completed after NCL and its affiliates, including the Keystone Pension Trust, declined the tender. This decline of the tender resulted in NCL minimizing its cash obligation under the tender offer. *Id.* at 1197-1202.

Even though the Keystone Pension Trust actually generated profits from continuing to hold its ASC shares after the tender offer, the court held that defendant Simmons' actions in recommending and voting not to tender the Keystone Pension Trust's ASC shares constituted dealing with the assets of a plan in his own interest in violation of ERISA §§ 406(a)(1)(D) and 406(b)(1). *Id.* at 1213. The court also concluded that the ASC self-tender offer, which provided an opportunity to be paid $65 per share, was a "transaction" within the meaning of ERISA § 406 and that Simmons and others were parties-in-interest with respect to the Keystone Pension Trust. *Id.* at 1213.[12] These findings were made after the court first recognized Congress' overriding concern with the protection of plan beneficiaries and the need to read the protective provisions of ERISA § 406 broadly and in light of these concerns.

The very same issues and concerns are presented in the case at bar, by the 2003 Transaction. The Antioch Tender Offer was indeed a Transaction intended to transfer control of the Company artificially to the ESOP. It drained the coffers of Antioch, leveraged the Company with enormous debt, and changed forever the risk profile of the ESOP's investment by creating an enormous risk for additional debt upon the Company from repurchase liability. The protective provisions of ERISA § 406 were triggered by this Transaction, and as a result, Plaintiffs have stated a claim for violation of ERISA § 406.

---

[12] The district court also concluded that the same acts violated ERISA § 404 as well.

Yet this case presents an even more compelling reason for this Court to find a prohibited transaction than was present in *Sandoval*. By agreeing to the terms of the Transaction and declining to tender ESOP shares, GreatBanc agreed to accept a reduction in future ESOP distributions; agreed to lock-in the Morgans' continued control and domination of Antioch while the ESOP was the purported 100% owner; agreed to approve the issuance of warrant contracts that would dilute the ESOP's 100% ownership interest through the Morgans synthetic equity from 2004-2014 and thereafter authorize the issuance of common shares to certain of the non-ESOP shareholders returning the ESOP once again to a minority position. (Dkt. 43 at ¶¶ 40-57) This type of Transaction clearly fits within the broad protective purposes Congress intended for ERISA, and should therefore be governed by the prohibited transaction rules.

At the very least, the complexity of this Transaction and its impact upon the ESOP and Plan assets renders Defendants' Motions to Dismiss inappropriate at this stage of the proceedings.

## F. CERTAIN OF GREATBANC'S ARGUMENTS ARE PREMATURE AND IRRELEVANT TO THE ALLEGATIONS AND CLAIMS ASSERTED IN THE AMENDED COMPLAINT

In its Motion to Dismiss, GreatBanc has argued that any claims arising after December 16, 2003, must be dismissed and that GreatBanc was not a fiduciary for the merger portion of the Transaction. These superficial arguments are not only irrelevant to the claims asserted, but also require this Court to step well outside of the Amended Complaint to rule on a motion to dismiss.

With respect to the argument that claims arising after December 16, 2003, are precluded, GreatBanc relies entirely upon written evidence attached to their motion

papers that GreatBanc was terminated as ESOP Trustee as of December 16, 2003. A review of the Amended Complaint reveals that there is no allegation as to when GreatBanc was terminated. Accordingly, it is improper to use GreatBanc's alleged evidence (Exhibits E and D to the Marchetti Affidavit at Dkt. 52-5) in connection with this Motion to Dismiss without converting it into a motion for summary judgment.[13]

Notwithstanding, the Amended Complaint only alleges acts of wrongdoing by GreatBanc through the period in which it served as the ESOP Trustee. Each of the acts of imprudence by GreatBanc alleged in Paragraphs 75-76 and 78-79 of the Amended Complaint (Dkt. 43), occurred on or before December 16, 2003, when the Transaction was consummated.[14] Plaintiffs have also alleged in Paragraph 83 that all Defendants are liable as co-fiduciaries under ERISA § 405(a) (29 U.S.C. § 1105(a)). Since § 405 only establishes liability for fiduciaries, such liability would only exist for the period that GreatBanc served as ESOP Trustee. The end date for GreatBanc's service as an ESOP fiduciary presents a factual question that cannot be decided on a motion to dismiss. As a result, this argument is premature and irrelevant on the pleadings.

With respect to GreatBanc's argument that it was not a fiduciary for the merger portion of the Transaction, this argument likewise requires the Court to consider matters not raised by or central to the pleadings, but proffered as Exhibits F and G to the Marchetti Affidavit (Dkt. 52-6 – 52-16). Such documents should be stricken or the motion should be converted to a motion for summary judgment.

---

[13] Based upon information from former Trustee Barry Hoskins, Plaintiffs understand that GreatBanc remained as Trustee until at least February or March 2004. However, based on Plaintiffs' allegations in the Amended Complaint (Dkt. 43), it really doesn't matter whether GreatBanc resigned in December 2003 or at a later date.

[14] Contrary to GreatBanc's argument, Plaintiffs do not contend that GreatBanc is responsible for approving the Prairie Capital appraisal issued in or about June 2004. Rather, Plaintiffs contend that GreatBanc breached its fiduciary duty when it failed to assess the pre-transaction and post-transaction value of the ESOP shares in its fairness analysis before approving the Transaction and declining the Tender Offer.

However, of even greater significance, Plaintiffs have neither alleged that GreatBanc was a fiduciary for the merger portion of the Transaction nor that GreatBanc breached its fiduciary duty or otherwise violated ERISA by approving the merger. This is because the TAC shareholders were to vote on the merger before the Tender Offer closing and a favorable result was assured since the selling, non-ESOP shareholders, controlled 57% of the vote. Such vote was taken knowing that the ESOP participants did not have the right to vote on or tender shares pursuant to the Tender Offer. Only the Trustee GreatBanc had that authority. (*See,* Marchetti Affidavit at Exhibit F, Dkt. 52-6, p. 6.) It is that action which is the subject of the Amended Complaint.

Since Plaintiffs have made no allegations of wrongdoing with respect to the merger vote, GreatBanc's argument is specious and completely irrelevant to the claims asserted in the Amended Complaint.[15]

## IV. CONCLUSION

This case is about fiduciary imprudence in approving a sale price to co-fiduciaries and parties-in-interest which was in excess of adequate or fair consideration and unfair to the ESOP and its participants. Plaintiffs have alleged and will show that GreatBanc failed to conduct a thorough and prudent good faith investigation in that the Transaction proceeded without proper appraisal analysis, without proper corporate finance analysis, without proper and independent repurchase liability studies, and without taking into consideration the post-transaction increase in stock value volatility and bankruptcy risk. As a result, the Trustee and the conflicted Individual Defendants (who had designed and

---

[15] Plaintiffs do not concede that GreatBanc was not a fiduciary for the merger vote, but have chosen not to waste the Court's time with irrelevant arguments. *See Herman v. NationsBank Trust Co.,* 126 F.3d 1354, 1364 (11th Cir. 1997) (holding that a trustee is obligated to ensure that a transaction is prudent, consistent with the plan, and not contrary to ERISA before sending it to participants for a vote).

re-engineered the Transaction), approved a Transaction that should have been rejected or, in the alternative, consummated at a heavily discounted price to offset the risks. The ESOP participants were provided no information regarding the valuation, corporate finance, or repurchase liability analysis performed by Defendants and had no way of knowing the nature of the wrongdoing that took place.

The Amended Complaint clearly states ERISA claims against Defendants for breach of fiduciary duty, prohibited transaction, and co-fiduciary liability. Defendants will have their opportunity to present evidence on their defenses in summary judgment proceedings after discovery is conducted. Surely, a motion to dismiss does not provide the proper forum for the Court to receive and consider evidence which is outside of the Amended Complaint.

For all of the foregoing reasons, each of Defendants' Motions to Dismiss the Amended Complaint should be denied.

RESPECTFULLY SUBMITTED this _____ day of July, 2009.

FUTTERMAN HOWARD WATKINS
WYLIE & ASHLEY, CHTD.

By: /s/ Charles R. Watkins
        Charles R. Watkins
         John R. Wylie
        122 South Michigan Avenue
        Suite 1850
        Chicago, Illinois 60603
        Telephone: (312) 427-3600
        Facsimile: (312) 427-1850
        cwatkins@futtermanhoward.com
        *Counsel for Plaintiffs*

KELLER ROHRBACK, PLC
Gary D. Greenwald
Gary A. Gotto
3101 North Central Avenue
Suite 1400
Phoenix, Arizona 85012
Telephone: (602) 248-0088
Facsimile:  (602) 248-2822
ggreenwald@krpl.com
ggotto@krplc.com
*Of Counsel*


SEBALY SHILLITO + DYER
James A. Dyer
Jon M. Sebaly
David C. Ahlstrom
40 North Main Street
1900 Kettering Tower
Dayton, Ohio 45402
Telephone: (937) 222-2500
Facsimile:  (937) 222-6554
jdyer@ssdlaw.com
jsebaly@ssdlaw.com
dahlstrom@ssdlaw.com
*Of Counsel*

984174.1