**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BONNIE FISH et al., | Case No. 09 cv 1668 |
| Plaintiffs, | |
| | Judge Shadur |
| v. | |
| | Magistrate Judge Valdez |
| GREATBANC TRUST COMPANY, et al., | |
| Defendants. | |

**DEFENDANTS LEE MORGAN'S, ASHA MORAN'S,**
**AND CHANDRA ATTIKEN'S MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

## I.    Introduction

The Court should enter summary judgment in favor of the Individual Defendants because the Plaintiffs had actual knowledge of all of the pre- and post-Transaction facts that form the basis of their complaint more than three years before they filed this lawsuit.  Alternatively, a second deposition of the post-Transaction ESOP trustee, Barry Hoskins, shows indisputably that if the Plan is the proper plaintiff, it too had actual knowledge of the same facts more than three years before the suit was filed through the actual knowledge of post-Transaction trustee Hoskins and the Plan's independent legal counsel, Karen Ng.[1]

As to the Plaintiffs' claim that the Individual Defendants took part in a non-exempt prohibited transaction in violation of ERISA section 406, the undisputed fact is that the 2003 Transaction giving rise to the Plaintiffs' claims (the "Transaction") was not hidden or concealed,

---

[1] It is undisputed that the post-Transaction trustee, Mr. Hoskins, and the ESOP's independent legal counsel Karen Ng, had the same actual knowledge as the individual Plaintiffs.  This Court previously suggested that the Plan may be the real party in interest and the application of the statute of limitations may be dependent on "whether there is or are non-breaching fiduciary or fiduciaries who had actual knowledge and could have taken action on behalf of the plan."  (Transcript of Proceedings Before the Honorable Milton I. Shadur, Judge (October 30, 2009)).

but was forthrightly disclosed. In fact, the Plaintiffs had an opportunity to vote in favor of or against it (3 of the 4 individual Plaintiffs voted in favor; the fourth did not vote). Also, there is no disputed issue of material fact that each of the individual Plaintiffs had actual knowledge that the Transaction closed on December 16, 2003. Under settled law, these two undisputed facts support summary judgment for the Individual Defendants on the Plaintiffs' "prohibited transaction" claim.

And as to the Plaintiffs' general claim that the Individual Defendants breached a fiduciary duty under ERISA section 404, the undisputed evidence shows that the individual Plaintiffs had actual knowledge of every material fact in the complaint more than three years before they filed this lawsuit.

As to pre-Transaction facts, three years prior to filing suit Plaintiffs had actual knowledge of the centerpiece of their breach of duty claims – the so-called Put Price Protection Agreement, its exact terms, and associated changes to the ESOP distribution policy. Through the distribution of the Tender Offer and Proxy Materials to all employees, and pre-closing meetings with all employees to present the nature, benefits and risks of the Transaction and to answer employee-owner questions, the Plaintiffs likewise had knowledge of other facts in their complaint such as the Antioch Board's intention to maintain Morgan family governance post-Transaction; the amount of potential cash proceeds that Lee Morgan, Asha Moran and other non-ESOP shareholders were to receive should they opt to exchange their non-ESOP shares for cash in the tender offer portion of the Transaction; the identity and role of the nationally-renowned independent ESOP trustee, co-Defendant GreatBanc; GreatBanc's engagement of its own independent financial advisor and its determination that the Transaction was fair to the ESOP and its participants; the stated tax-related benefits of the Transaction; the risks associated with

closing the Transaction including the risk of a future insolvency due to a potential that the Company's repurchase obligation may be much larger than anticipated because of a stock price increase, combined with a larger than expected number of terminations and employee ESOP redemptions and declining sales caused by market competition and developments outside of the Company's control.

As to the post-Transaction facts in the Amended Complaint, the Plaintiffs had actual knowledge more than three years before filing suit that the Antioch Board amended the Plan to provide all terminating employees with the right to immediately receive a partial cash payment from their ESOP account, that the number of employees who terminated far exceeded pre-Transaction estimates and historical experience both in dollar amount and in numbers, and that sales and associated revenue were declining in 2004 and in 2005. The Plaintiffs, like all other employee-owners, learned this through the typical transparency with which the Company operated – through the annual reports, quarterly meetings with employees, open, public board of directors meetings to which all employees were invited to attend and ask questions, and monthly "narratives" distributed to all employees by the CEO, Lee Morgan.

These pre- and-post Transaction facts are the basis for Plaintiffs' claims against the Individual Defendants. It is undisputed that the individual Plaintiffs had actual knowledge of these matters more than three years before bringing their claims. Accordingly, the Amended Complaint against the Individual Defendants is time-barred and should be dismissed.[2]

---

[2] The Court has determined that Evolve is "a stranger to the restructuring transaction" and was added to this lawsuit as a "manipulative tactic." Docket # 169, 8/31/2010 Memorandum Opinion and Order, p. 8, n.7. Evolve's knowledge is therefore irrelevant to the Individual Defendant's motion for summary judgment on statute of limitations grounds. Accordingly, the use of "Plaintiffs" throughout will refer to the individual Plaintiffs.

## II.  **Summary Judgment Standard**

Summary judgment is appropriate where there is "no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party has the initial burden of demonstrating that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law.  *Bilthouse v. United States*, 553 F.3d 513, 514-15 (7th Cir. 2009) (citations omitted).  The court may grant summary judgment on the basis of an affirmative defense, such as the statute of limitations.  *See e.g., Martin v. Consultants & Administrators, Inc*., 966 F.2d 1078, 1084-89 (7th Cir. 1992).

Once the moving party satisfies its initial burden, "the non-moving party cannot simply rest on the allegations in the pleadings," but must come forth with affirmative evidence "showing that there is a genuine issue for trial."  *Harris v. OSI Financial Services, Inc*., 595 F. Supp. 2d 885, 888 (N.D. Ill. 2009).  A "genuine issue" is something greater than "some metaphysical doubt as to the material facts."  *Id.* at 888-89 (quoting *Matsushita Electronic Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  To do so, "the nonmoving party must point to specific facts showing that there is a genuine issue for trial, and inferences relying on mere speculation or conjecture will not suffice."  *Stephens*, 569 F.3d at 786.  Otherwise, "summary judgment is warranted."  *Carlisle v. Deere & Co.*, 576 F.3d 649, 653 (7th Cir. 2009).

## III.  **Legal Argument**

Plaintiffs' claims under ERISA section 406 (prohibited transaction) and section 404 (breach of fiduciary duty) are time barred.  (Am. Comp. ¶¶ 70, 77-81).  As a result, their tag-along failure to monitor and failure to sue claims are likewise barred.  (Am. Comp. ¶¶ 83-84).

### A.    The Plaintiffs' Section 406 Claim is Barred Because the Transaction Was Disclosed to the Plaintiffs.

Plaintiffs allege that the tender offer portion of the 2003 Transaction was a non-exempt "prohibited transaction" in violation of ERISA section 406 even though no ESOP assets were used to fund the tender offer, nor pledged as security for loans taken in conjunction with the Transaction.    (Am. Comp. at ¶ 79).

An ERISA § 406 prohibited transaction claim asserts that the alleged transaction – on its face – is prohibited and is an inherent breach of fiduciary duty under ERISA.  *See, e.g., Chao v. Emerald Capital Management, Ltd*., 2006 U.S. Dist. LEXIS 65737, 2006 WL 2620055, at **6-7 (W.D.N.Y. Sept. 13, 2006).  Accordingly, where a plaintiff pleads an ERISA section 406 claim, the mere disclosure of the transaction to the plaintiff gives rise to the requisite "actual knowledge" sufficient to commence the three year limitations period.  *See, e.g., Chao*, 2006 WL 2620055, at *6 ("awareness of the occurrence of the transaction itself does constitute knowledge of facts necessary to understand that breach of a fiduciary duty occurred."); *Brown v. American Life Holdings, Inc*., 190 F.3d 856, 859-60 (8th Cir. 1999) ("knowledge of the transaction would be actual knowledge of the breach").

Applying this law to the undisputed facts requires summary judgment in favor of the Individual Defendants on the section 406 claim.  As of November 14, 2003, the Plaintiffs were aware that Antioch was pursuing the Transaction, including a tender offer for the shares of all outstanding Antioch stock.  (Facts ¶¶37-49).  Moreover, each of the Plaintiffs had undisputed knowledge of the Transaction, as they each admitted they had the opportunity to vote in favor of it or against it with three of the four casting their vote in favor (the fourth, Ms. Hardman, did not exercise her right to vote).  (Facts ¶57).  Lastly, all of the Plaintiffs knew that the Transaction,

including the tender offer between the Company and its shareholders, closed on December 16, 2003. (Facts ¶¶57, 59). These facts are undisputed.

The Plan, through Mr. Hoskins, likewise had "actual knowledge" of the Transaction. Mr. Hoskins, as CFO during the time that the ESOP was protected by co-defendant trustee GreatBanc, was a member of the Antioch team negotiating the Transaction. (Facts ¶8). Moreover, Mr. Hoskins attended all Board meetings where the Transaction was discussed and debated, and made presentations to the Board members. (Facts ¶¶19, 22, 33-35, 52-54). Mr. Hoskins brought his actual knowledge of the Transaction's occurrence with him when he resumed the role of ESOP trustee no later than February, 2004. (Facts ¶¶62). These facts, too, are undisputed.

And lastly, the Plan's independent attorney, Karen Ng, had actual knowledge of the Transaction, and testified that she would have advised Mr. Hoskins to sue the Defendants had the facts warranted such action (she did not believe they did). (Facts ¶63). For example, she assisted the Antioch Board in drafting amended Plan language to bring the Plan in line with certain Transaction features, like the Put Price Protection provisions, and the change in the distribution policy to broaden the scope of employee-owners eligible to terminate and redeem their ESOP shares for an immediate partial cash payment post-Transaction. (Facts ¶58). Of course, it is clear that what the attorney knows is the "actual knowledge" of the client for purposes of the ERISA statute of limitations. *See, e.g., Million v. Trs. Of the Central States, Se. and Sw. Areas Pension Fund*, 50 Fed. App'x 196, 199-200 (6th Cir. 2002) (unpublished) (affirming summary judgment against an ERISA plaintiff because his "counsel had all the information necessary to determine whether [he] had a viable breach of fiduciary duty claim" more than three years before he brought suit); *Trs. of the Carpenters' Pension Tr. Fund-Detroit*

*and Vicinity v. AAA Mortgage Corp.*, 269 F. Supp. 2d 931, 935 (E.D. Mich. 2003) (granting summary judgment on ERISA statute of limitations grounds based in part on a pension fund's knowledge of facts "through [its] counsel").[3]

There is no disputed issue of material fact for the Court to decide regarding the Plaintiffs' actual knowledge of the Transaction and the fact that it closed. Accordingly, the Court should enter summary judgment for the Individual Defendants on the section 406 claim.

**B.     The Plaintiffs' Section 404 Claim is Barred Because They Had Actual Knowledge of All Material facts Alleged in the Complaint More Than Three Years Before Filing Suit**

Plaintiffs' breach of fiduciary duty claim arises from the so-called Put Price Protection provisions of the Transaction. (Am. Comp. at ¶ 43-44, 55, 59). Principally, the Amended Complaint alleges that the Put Price Protection Agreement that GreatBanc negotiated, and the associated distribution policy changes driven by those provisions, allegedly worked to incentivize employees to leave the company (i) when the annual stock valuation by an independent appraiser increased from $680 per share to $894 per share for purposes of valuing the ESOP accounts for employees terminating during the first year of the Put Price Protection period, and/or (ii) when sales and revenues declined in 2004 and 2005 as a result of unanticipated market dynamics, a depressed direct sales/party planning industry, and the stalled American economy in general. (Am. Comp. at ¶ 55, 59).

The Amended Complaint further alleges that the increased redemptions and associated repurchase obligation exacerbated the demands on the Company's cash flow, and increased company unsecured debt as a result of promissory notes issued to terminating employees for part

---

[3] This is in keeping with the long-established principle that an entity has knowledge of facts that are known by its attorney. *See Smith v. Ayer*, 101 U.S. 320, 325-26 (1880) (holding that "[t]he facts brought to the knowledge of [a company's] attorney in his inquiries…are considered in law as brought to [the company's] knowledge").

of the value of their ESOP accounts, allegedly leading to a bankruptcy filing in November, 2008, five years after the 2003 Transaction closed. (*See* Am. Comp. at ¶¶ 25, 38, 42-44, 55, 57, 60-62). Because the Plaintiffs had actual knowledge of these facts more than three years before they filed this litigation, their claims are time-barred.[4]

   *The Actual Knowledge Standard in the Seventh Circuit:* According to the Seventh Circuit, to trigger the section 1113(2) three-year statute of limitations for a section 404 claim, the plaintiff must have 'actual knowledge' of the facts or transaction that gives rise to the alleged violation, and not of the alleged breach of duty. *See, e.g., Martin*, 966 F.2d at 1086; *Rush v. Martin Petersen Co.*, 83 F.3d 894, 896 (7th Cir. 1990) (citation omitted). "But to have actual knowledge of the relevant facts, the [plaintiff] did not have to know the effects of the transaction, or the specific fact of its illegality." *Martin*, 966 F.2d at 1088. In other words, "a potential plaintiff's relevant knowledge for purposes of section 1113(2) is of facts, not of the alleged illegality of the defendant's conduct." *Neuma, Inc.*, 515 F. Supp. 2d at 854. Further, the ERISA statute of limitations may be triggered before a plaintiff suffers any harm. *Wolin v. Smith Barney Inc.*, 83 F.3d 847, 853 (7th Cir. 1996).

   Pertinent to this case, a plaintiff has "actual knowledge" if documents provided to the plan or its participants have disclosed sufficient facts and "not whether individual participants actually saw or read the documents." *Young v. General Motors Inc. Mgmt. Corp.,* 550 F. Supp. 2d 416, 418-19 (S.D.N.Y. 2008). "Plaintiff may not avoid commencement of the statute of limitations merely by refusing to read or examine information disclosing relevant facts that would trigger the statute of limitations." *Shirk*, 2009 WL 3150303, at *3. Simply stated, an ERISA participant cannot "disavow actual knowledge of an alleged fiduciary breach by

---

[4] As a factual and legal matter, the Plaintiffs have this all wrong. Should any part of their claims survive this motion and GreatBanc's motion, a summary judgment motion will be filed on the merits of the Plaintiffs' allegations. This motion is restricted solely to the statute of limitations defense.

deliberately ignoring information that is clearly presented." *Reeves v. Airlite Plastics, Co*., No. 8:05cv56, 2005 U.S. Dist. LEXIS 23628, at *4-6 (D. Neb. Sept. 26, 2005). *See also Edes v. Verizon Communications, Inc*., 417 F.3d 133, 142 (1st Cir. 2005) ("We do not think Congress intended the actual knowledge requirement to excuse willful blindness by a plaintiff.").

These authorities counsel that the statute of limitations begins to run on the date that documents disclosing the facts underlying the alleged breach or violation were provided or otherwise made available to plaintiffs. *See Brown v. Owens Coring Inv. Review Committee*, 622 F.3d 504, 571 (6th Cir. 2010) ("When a plan participant is given specific instructions on how to access plan documents, their failure to read them will not shield them from having actual knowledge of the documents' terms."); *see also Young*, 550 F. Supp. 2d at 418-19 (disclosures in prospectuses were sufficient to trigger the limitations period, regardless of whether plaintiffs actually read or had seen them). As the Court will see, in this case that date is November 14, 2003.

*Pre-Transaction Actual Knowledge:* Discovery has revealed that the most striking trait of The Antioch Company's corporate culture was transparency. (Facts ¶9). Transparency in disclosures made to all employees on monthly, quarterly, and annual bases of actual financial and operating statistics, and as compared to budget, through written reports, quarterly employee meetings with management, open, public board meetings to which all employees were invited to attend and ask questions of the directors, and CEO Lee Morgan's monthly "narratives." (Facts ¶¶9-13, 65).

The transparency hallmark of Antioch's corporate culture drove the extensive disclosures about the Transaction made to all Antioch employees in 2003. (Facts ¶¶37-38). This includes

disclosures to the Plaintiffs, as they admitted in their depositions, who received the disclosures prior to being called upon to cast a vote in favor of or against the Transaction. (Facts ¶37).

On November 14, 2003, one month before the employee-owner vote on the Transaction, the Company distributed to all employees an extensive disclosure called The Antioch Company Offer to Purchase and Proxy Statement (the "Proxy Materials"). (Facts ¶¶37-48). The Proxy Materials opened with a 12-page plain language "Questions and Answers about the Transaction" section. This covered multiple topics such as: the tax-driven and other advantages of the Transaction to the Company (at 5-6); the engagement of a nationally recognized independent ESOP trustee and the trustee's role in determining whether to veto the Transaction by tendering the ESOP's shares if it felt that the deal was unfair to the ESOP (at 2); the $850 negotiated price per share that the Company will offer to all selling shareholders and the alternative to cash of a package including warrants, cash and notes (at 2-3); the parties who negotiated the $850 price (at 7-8); the secured financing required to fund the tender offer (at 7); the employee-owner vote in favor or against the Transaction through the independent ESOP trustee, GreatBanc (at 4); the ability of GreatBanc, on behalf of the employee-owners, to veto the Transaction through an independent right and decision to tender the shares because "a condition to the closing of the Tender Offer is that the Trustee elect not to tender any shares owned by the ESOP" (at 2); the fairness opinion that GreatBanc received from its independent financial advisor (at 6-7); and an explanation of the warrants, subordinated notes and their effect on the Company (at 10-11).

The balance of the Proxy Materials addressed each of these matters in more detail, and provided additional disclosures. For instance, the Proxy Materials described the nature and the background of the Transaction (at 19-20); the opinion of GreatBanc's financial advisor that the Transaction was fair to the ESOP (at 26-27); the specific terms of the so-called Put Price

Protection Agreement (at 27-28); the amount of the Company's secured borrowing (up to $170 million) and the precise terms of the secured loans (at 31-34); the new distribution rules driven by the Put Price Protection provisions that GreatBanc negotiated (at 43-44); the precise terms of the subordinated notes and warrants that would be part of the package some shareholders were eligible to choose instead of cash in exchange for their non-ESOP shares (at 45-50); risks to the ESOP and the Company related to the Transaction (at 69-72, including the risk of unanticipated redemptions causing the company to become insolvent, declining sales, and the pressure from digital photography and brick and mortar competition); the number of beneficially owned non-ESOP shares held by Lee Morgan, Asha Moran, and other Morgan family members and related entities (at 66); the post-Transaction governance structure (at 7, 63-65, 70); and a "conflicts of interest" section showing the number of outside shares that each director held individually and the aggregate amount of cash that each director would receive if each share was tendered to the Company at the $850 Transaction price (at 83).

The Proxy Materials were provided to all employees, including the Plaintiffs, along with a cover letter identifying additional sources of information about the Transaction available to ESOP participants. Some of those informational resources were a toll-free "hotline," a dedicated email address to send questions, specially trained employee-owner representatives at each of the four Antioch locations, and an email address, contact and phone number of a GreatBanc representative. (Facts ¶49). Each of the Plaintiffs admitted to receiving these materials in their depositions. (*Id*.).

But the disclosure did not end with the Proxy Materials and resources made available to the employee-owners. Distribution of the Proxy Materials was followed up by a "Frequently

11

Asked Questions" document (the "FAQ") geared towards ESOP participants. The FAQ was given to all employees, including the Plaintiffs. (Facts ¶¶37-38).

These disclosures were followed by in-person informational/question-answer meetings for employee-owners at all Antioch locations that included an extensive Power Point presentation lead by the company CEO, the ESOP's independent trustee who supported the Transaction as fair to the ESOP, and members of the Antioch "deal team." (Facts ¶50). The Plaintiffs were invited to attend these informational meetings, and testified that they did so. (*Id.*).

_Post-Transaction Actual Knowledge:_  The undisputed evidence is that the Plaintiffs were aware of the three material post-Transaction facts that form the basis of their Amended Complaint, and had actual knowledge of these facts more than three years before the suit was filed. First, Plaintiffs had actual knowledge that the Antioch Board of Directors amended the ESOP plan to broaden the number of employees who were eligible to terminate employment and redeem their shares for an immediate partial cash payment. Plaintiffs gained this knowledge in 2004, within a year of the closing of the Transaction. (Facts ¶¶30, 61).

Second, Plaintiffs had actual knowledge that in the two years post-Transaction, 2004 and 2005, the amount of post-Transaction redemptions far exceeded historical experience, and likewise exceeded the repurchase obligation estimates that the Antioch Board used for purposes of analyzing the propriety of the Transaction prior to closing. (Facts ¶¶72-80).

And third, Plaintiffs had actual knowledge that Antioch's sales, and therefore the revenues necessary to fund the higher than anticipated repurchase obligations and secured debt

incurred in the Transaction, had begun to decline in 2004, and further declined in 2005. (Facts ¶¶65, 67, 69-71).[5]

The Plaintiffs obtained actual knowledge of the foregoing pre- and post-Transaction undisputed facts between the date that the Proxy Materials were distributed on November 14, 2003, and December 31, 2005, more than three years before filing this suit on March 17, 2009. And because the next section establishes that it is these very same facts that underlie Plaintiffs' claims, their action is barred by ERISA's three year limitations period.

*The Amended Complaint*: The Plaintiffs' actual knowledge of the foregoing facts dooms the viability of their Amended Complaint because they are the very same facts that give rise to the Individual Defendants' alleged liability. For example, the Plaintiffs complain that the negotiated Transaction price of $850 per share exceeded fair value. (Am. Comp. at ¶3; response to Interrogatory No. 1, Second Set of Interrogatories (measuring damages by difference between Transaction price and a fair price)). But Plaintiffs had actual knowledge of this price, and that it was a negotiated price, as early as November 14, 2003 when they received the Proxy Materials. Similarly, the Plaintiffs now assert that the Transaction was a mere "tax avoidance scheme." (Am. Comp. at ¶ 38). But this too was known to the Plaintiffs as a goal of the Transaction as early as November 14, 2003.

The Plaintiffs assert that GreatBanc should not have "approved" the Transaction, and that doing so was a breach of its fiduciary duty. (Am. Comp. at ¶78 and subparts). But they had actual knowledge as early as November 14, 2003 that GreatBanc had the ability to veto the deal if it or its advisors deemed the terms unfair to the ESOP, or for any other reason, and that

---

[5] It is undisputed that the post-Transaction trustee, Mr. Hoskins, and the ESOP's independent lawyer, Karen Ng, had the same actual knowledge as the plaintiffs. (Facts ¶¶30, 61, 65, 67-80).

GreatBanc in fact voluntarily chose not to tender the shares after due diligence and analysis, thereby allowing the Transaction to proceed.

The Plaintiffs also allege that the Put Price Protection Agreement – and the implementation of "special distribution rules applicable to all ESOP participants who terminated their employment" during the three year post-Transaction Put Price Protection period – exacerbated the Company's repurchase obligation, causing the Company's ultimate reorganization through bankruptcy. (Am. Comp. at ¶¶55-56, 59-61, 75, 78). The Company, however, disclosed the terms of the Put Price Protection provisions to the Plaintiffs and to all other employee-owners and Plan participants as early as November 14, 2003, disclosed that it was difficult to predict the future repurchase obligation with any certainty, and also disclosed the risk that increased employee terminations and redemptions post-Transaction could cause a drastic increase in Antioch's post-Transaction repurchase obligation which could render the Company "insolvent" and unable to meet its financial obligations. (Facts ¶¶37, 38-46). Moreover, the Plaintiffs were aware, even prior to November 14, 2003, that the Company's repurchase obligation was the "biggest cloud" hanging over the organization, always endangering the Company's financial well-being. (Facts ¶72).

Much the same in regard to the Plaintiffs' allegation that the financing necessary to fund the tender offer was imprudent, and their allegation that "self-dealing" by the Individual Defendants clouded their judgment and was a breach of fiduciary duty. (Am. Comp. at ¶47, 51 (financing) and 72, 77 (alleged self dealing)). As early as November 14, 2003 the Plaintiffs had actual knowledge that the Company would borrow up to $170 million to fund the tender offer,

and that Mr. Morgan and Ms. Moran had the right to tender their substantial number of non-ESOP shares for a very substantial amount of cash.  (Facts ¶¶37, 42, 47).[6]

The Plaintiffs' actual knowledge of the foregoing facts should trigger the three-year statute of limitations for Plaintiffs' section 406 claim – which merely requires knowledge of the alleged illegal Transaction – and also the Plaintiffs' section 404 claim.  Moreover, Plaintiffs' knowledge after the Transaction closed of the increased number of terminations, of the increased expense of the repurchase obligation with new distribution rules, and of the Company's declining financial performance, is sufficient to trigger the three year statute of limitations for Plaintiffs' section 404 claims.  Accordingly, Plaintiffs' section 404 and section 406 claims should be dismissed as a matter of law because they are time-barred.

C.     **Plaintiffs Claims For Failure To Monitor And Failure to Sue Liability Fail As A Matter Of Law**

Plaintiffs' claims for failure to monitor and failure to sue are derivative of Plaintiffs' other theories of liability.  *Brieger*, 629 F. Supp. 2d at 867; *In re Harley-Davidson, Inc., Securities Litigation*, 660 F. Supp. 2d 953, 968 & n.10 (E.D. Wis. 2009).  As a result, those tag-along claims should be dismissed as a matter of law because the underlying claims are subject to dismissal.  *In re Harley-Davidson*, 660 F. Supp. 2d at 968.

IV.   **Conclusion**

For all of the reasons discussed above, Defendants Lee Morgan, Asha Moran, and Chandra Attiken respectfully request that this Court grant summary judgment in their favor on all counts of Plaintiffs' Amended Complaint.

---

[6] The fact is that Mr. Morgan and Ms. Moran, to stay invested in the Company and its future financial success, chose to exchange as many of their non-ESOP shares as they were permitted to do for the package of warrants, promissory notes, and cash (to fund the income tax liability).  This limit on the number of packages they could elect to take was a condition imposed by GreatBanc to ensure the financial fairness of the Transaction to the ESOP.

LEE MORGAN, ASHA MORAN
AND CHANDRA ATTIKEN


/s/ Michael L. Scheier
One of Their Attorneys

Michael L. Scheier
Danielle M. D'Addesa
Brian P. Muething
David T. Bules
Thomas F. Hankinson
Keating Muething & Klekamp PLL
One East Fourth Street, Suite 1400
Cincinnati, OH  45202
(513) 579-6545
mscheier@kmklaw.com
ddaddesa@kmklaw.com
bmuething@kmklaw.com
thankinson@kmklaw.com
dbules@kmklaw.com

– and –

John P. Morrison
K&L GATES LLP
70 W. Madison, Suite 3100
Chicago, Illinois  60602
(312) 372-1121
pete.morrison@klgates.com

Counsel for Defendants Lee Morgan,
Asha Moran and Chandra Attiken

16

## <u>CERTIFICATE OF SERVICE</u>

I, Michael L. Scheier, hereby certify that I electronically filed the Defendants Lee Morgan's, Asha Moran's and Chandra Attiken's Memorandum of Law in Support of their Motion for Summary Judgment using the CM/ECF system which will send notification of such filing(s) to the following:

> Charles R. Watkins at charlesw@dglawfirm.com
> Gary D. Greenwald at ggreenwald@krplc.com
> Gary A. Gotto at ggotto@krplc.com
> James Dyer at jdyer@ssdlaw.com
> Jon M. Sebaly at jsebaly@ssdlaw.com
> David C. Ahlstrom at dahlstrom@ssdlaw.com
> Theodore M. Becker at tbecker$morganlewis.com
> Julie A. Govreau at jgovreau@ morganlewis.com
> Michael F. Derksen at mderksen@morganlewis.com

on this 14th day of May, 2012.

> /s/ Michael L. Scheier
> Michael L. Scheier

4278444.6