IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BONNIE FISH, et al., )
)
          Plaintiffs, )
)
  v. ) Case No. 09 C 1668
)
GREATBANC TRUST COMPANY, et al., )
)
          Defendants. )

## MEMORANDUM OPINION

Both counsel for the plaintiffs and the two sets of defense counsel have deluged this Court with submissions and cross-submissions on the remaining issue in this case: the potential award of attorneys' fees and expenses to defendants (1) GreatBanc Trust Company ("GreatBanc") and (2) the individuals targeted in this action ("Individual Defendants"). Although the piling of the legal equivalent of Pelion upon Ossa had already reached an eight-inch-high level of arguments and counterarguments,[1] the most recent (and unanticipated) input from plaintiffs' counsel was their September 26 filing of Plaintiffs' Objections to Order of Reference to Master (Dkt. 343). It makes sense to provide the equivalent of LIFO accounting by dealing with that subject first, just as this Court did in its oral treatment of the issues during the previously-set October 3 status hearing.

---

[1] That does not include the foot-thick bankers box containing the billing records that would have to have been reviewed by a master if this Court's earlier anticipation of the evaluation procedure had been implemented.

This Court continues to believe that the fine tuning that a reference to a master would have provided would likely have generated some revision in calculating a possible award--indeed, most likely cutting the figures back somewhat. But the position advanced by plaintiffs' counsel that the work should be done instead by the assigned Magistrate Judge (who, despite very substantial abilities in other areas, would have brought no meaningful experience to the task as this Court had defined its complexities) or by this Court itself[2] was totally unpersuasive.

At the same time, the ready availability of another well-established alternative (one that will involve less time and less expense) has led this Court to accede to the objection interposed by plaintiffs' counsel to a reference to a master.[3] It moves instead to a form of evaluation that follows the basic principle

---

[2] Despite this Court's ability to draw on its years of experience as a (or as the) principal billing partner in the law firm with which it was associated for three decades before coming to the bench, that task would represent a totally unwise use of what this Court has accurately described as the commodity in shortest supply in federal litigation--the assigned judge's time. Quite apart from the volume of work involved and the violation of the well-known "Peter Principle," such a massive assignment would be totally unfair to the litigants in the couple of hundred other cases on this Court's calendar.

[3] Such accession to the wishes of plaintiff's counsel may well turn out to be a confirmation of Oscar Wilde's sardonic aphorism in <u>Lady Windermere's Fan</u>, act III:

> In this world there are only two tragedies. One is not getting what one wants, and the other is getting it.

If so, so be it.

regularly articulated by our Court of Appeals in such cases as Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp., 73 F.3d 150, 153 (7th Cir. 1996):

> Courts award fees at the market rate, and the best evidence of the market value of legal services is what people pay for it. Indeed this is not "evidence" about market value; it is market value. Although courts interpolate the word "reasonable" into clauses of this kind, the best guarantee of reasonableness is willingness to pay.

That principle has been echoed in such recent cases as Matthews v. Wis. Energy Corp., 642 F.3d 565, 572 (7th Cir. 2011) and Broaddus v. Shields, 665 F.3d 846, 859 (7th Cir. 2011), which cases have also noted the added factor that underscores the reasonableness of an award based on fees paid (as they were here) by clients without any guaranty of reimbursement.

From that perspective this Court has found the recasting set out in the August 13 Defendants' Supplemental Memorandum in Support of Motion for Attorneys' Fees, which reduced defendants' original global demand dramatically by weeding out all but the most likely compensable components, to be both thoughtful and persuasive as to five of the six categories of services described there. Although a colorable argument might be made for including the Category 5 services as well, in this Court's view the more reasonable ruling is to exclude that category because it stemmed from defendants' felt need to counter, through opinion witnesses, the evidence that had been supplied by an opinion witness on whom

plaintiffs had relied in opposing defendants' ill-considered initial motion for summary judgment.[4]

It is unnecessary for purposes of this opinion to repeat the description or the components of the five categories set out at pages 3 through 7 of defendants' Dkt. 330. Instead these are the aggregate amounts presumptively reimbursable to GreatBanc and the Individual Defendants:

<u>GreatBanc</u>
Attorneys' Fees   $1,308,193
Expenses              69,630.61

<u>Individual Defendants</u>
Attorneys' Fees   $1,836,921.75
Expenses             136,367.70

But as this Court's earlier oral expressions of its views have telegraphed, that is not the end of the story. In that regard this Court has rejected the position advanced by defendants that any reduction in the award to account for the extra burden thrust on plaintiffs' counsel in having to respond to defendants' initial groundless motion for summary judgment is the equivalent of making a fees and expenses award to plaintiffs, in contravention of the principle that an ultimately unsuccessful litigant is not entitled to the benefit of fee-shifting. Instead

---

[4] Because it cannot now be known whether, if it had not been for that initial motion and plaintiffs' resort to an opinion witness to counter it, defendants would later have come up with their own opinion witnesses' reports and testimony, it would be unfairly speculative to include that component of the services provided by defense counsel as part of a fee-shifting award.

the basic concept of reasonableness, informed by equitable considerations, teaches that it would be unfair to thrust on plaintiffs the added cost of having been led down the garden path by having to counter (successfully, it will be remembered) defendants' legally frivolous position, thus adding substantially to the proper shifting of the fees and expenses attributable to defendants' successful efforts in the case.

In that regard plaintiffs' August 21 filing of their Supplemental Memorandum in Opposition to Defendants' Joint Motion for an Award of Attorney Fees (Dkt. 335) quantifies plaintiffs' expenditures in successfully opposing defendants' initial bootless summary judgment effort as $212,602.50 in fees and $27,147.59 in expenses, and defense counsel have not quarreled with those numbers or with the idea that the reduction in the potential award to reflect those numbers is to be borne equally (rather than ratably, for example).  That brings the ultimate potential awards of fees and expenses to these amounts:

    <u>GreatBanc</u>
    Attorneys' Fees    $1,201,891.75
    Expenses           56,056.81

    <u>Individual Defendants</u>
    Attorneys' Fees    $1,730,620.50
    Expenses          122,793.90

After this Court had concluded its oral announcement during the October 3 status hearing as to the quantification of the potential awards (though without stating the bottom line, for it

had not yet built in the amount of the final deductions just recounted), its discussion with the litigants turned to the ultimate substantive questions as to whether and to what extent that calculated award was to be levied on either or both of Evolve Bank & Trust and the individual plaintiffs. It is clear that discovery is needed for the parties to be able to address those questions. Hence this Court will await input by the litigants' counsel as to the nature and timing of the procedures that remain so that a final decision can be reached as to the amount of any award and as to the party or parties plaintiff to be held responsible for payment of that award.

_____
  Milton I. Shadur
  Senior United States District Judge

Date: October 4, 2013