**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BONNIE FISH, *et al.*,<br><br>　　　　　　Plaintiffs,<br>　　v.<br><br>GREATBANC TRUST COMPANY, *et al.*,<br><br>　　　　　　Defendants. | Case No. 09 cv 1668<br><br>Judge Thomas M. Durkin |

**DEFENDANT MORGAN FAMILY FOUNDATION'S REPLY IN
SUPPORT OF ITS MOTION TO DISMISS THE FOURTH CLAIM
FOR RELIEF IN PLAINTIFFS' SECOND AMENDED COMPLAINT**

Defendant The Morgan Family Foundation (the "Foundation") files this Reply in support of its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion").[1]

**I.　INTRODUCTION**

Not a single decision nor statutory language extend the equitable scope of ERISA § 502(a)(3) to reach non-plan assets in the hands of a non-fiduciary like the Foundation who is not alleged to have participated in the underlying prohibited transaction or other alleged fiduciary breaches, or where, as here, Plaintiffs do not allege that (i) the plan has a contractual subrogation right to the non-plan assets or (ii) the non-plan assets were consideration paid in an underlying prohibited transaction where plan assets were used to secure the financing that enabled the prohibited transaction to close. As a result, Plaintiffs' Fourth Claim for relief against the Foundation should be dismissed.

---

[1] Capitalized terms not otherwise defined will have the same meaning as they did in the Motion.

## II. ARGUMENT

### A. Plaintiffs Fail To Distinguish *Neil v. Zell*, And This Court Should Follow The Reasoning And Holding Of That Case

The only haven protecting Plaintiffs from a Rule 12(b)(6) dismissal is to demonstrate that the facts they plead in the Second Amended Complaint ("SAC") were materially distinguishable from the facts as pled in the complaint that was before Judge Pallmeyer in *Neil v. Zell*. But just like the allegations that failed to state an ERISA § 502(a)(3) claim against non-fiduciaries in *Neil*, the allegations against the Morgan Family Foundation fail to state a claim. In both this case and in *Neil*, the plaintiffs seek to extend section 502(a)(3) to reach assets in a non-fiduciary's possession that are not and never were assets that belonged to an ERISA plan or transferred out of an ERISA plan.

In *Neil*, defendant Zell and defendant EGI-TRB were non-fiduciaries in possession of assets that the complaint alleged came from the Tribune corporate treasury and borrowings. *Neil v. Zell*, No. 08-cv-6833, 2010 U.S. Dist. LEXIS 80744, **5-6 (N.D. Ill. Aug. 9, 2010). In the SAC, the Foundation is a non-fiduciary defendant purportedly in possession of assets that are alleged to have come from the Antioch corporate treasury and borrowings. (SAC at ¶¶ 46, 89.) In *Neil*, the complaint contained no allegation that Tribune ESOP assets were used in the supposed prohibited transaction to secure transaction-related loans. The SAC likewise contains no allegations that Antioch ESOP assets were used to secure any of the financing that was a necessary component of that Transaction. There is no material distinction between the facts pertinent to the Rule 12 motion in *Neil* that failed to state a claim under section 502(a)(3) and the facts alleged in the SAC pertinent to the Rule 12 motion. In fact, the allegations in Plaintiffs' SAC establish an even more compelling case for dismissal on the pleadings than the allegations in *Neil*. Unlike non-fiduciary defendants Zell and EGI-TRB, the Foundation is not alleged to

2

have participated in the underlying prohibited transaction or other alleged fiduciary breaches in the Transaction. (SAC at ¶¶ 141-151.)

Not only have Plaintiffs failed to distinguish *Neil,* they offer arguments that were explicitly rejected in *Neil* as insufficient to defeat dismissal. This Court should likewise reject them. First, as the Plaintiffs in *Neil* argued to Judge Pallmeyer, Plaintiffs here argue that § 502(a)(3) should extend its equitable reach to corporate cash that Antioch transferred as consideration in the alleged prohibited transaction because the money belongs "in good conscience" to the ESOP even though it was indisputably never an asset of the Antioch ESOP. (Memo. Opp., Dkt 390, at 6-8). The *Neil* plaintiffs similarly argued that § 502(a)(3) should be available to reach non-ESOP corporate assets transferred to the Defendants because the assets equitably belonged to the Tribune ESOP which, like the Antioch ESOP, came to own all post-transaction shares in the company as a result of the challenged business deal. *Neil,* 2010 U.S. Dist. LEXIS 80744 at **7-8. Keying off the Supreme Court's plain language limiting the scope of § 502(a)(3) as it applies to a non-fiduciary to "restitution against a transferee of tainted *plan* assets" this Court should find, as Judge Pallmeyer reasoned in *Neil,* that the Foundation may not be ordered under § 502(a)(3) to return "plan" assets when it only received *corporate* assets, and the entity to whom those *corporate* assets belong is not a party to this case. *Id.* at *8; *Neil v. Zell*, 677 F.Supp. 2d 1010, 1022. As a result, and as in *Neil*, Plaintiffs' § 502(a)(3) claim against the Foundation seeking the return of "property that originated with [The Antioch Company] must be dismissed." *Neil,* 2010 U.S. Dist. LEXIS 80744 at *8. (*See also* Memo in Supp., Dkt 387, at 5-7 (describing Judge Pallmeyer's application of *Harris Trust* principles in more detail.) [2]

---

[2] The *Perez* case cited by Plaintiffs appears to have misinterpreted the holding of Judge Pallmeyer in *Neil* by conflating the necessity of the party claiming a right to recover assets under § 502(a)(3) (the ESOP) with the necessity of the party from whom such assets actually originated and belonged (Tribune). The *Perez* court found that because the ESOP who was merely claiming a right to recover the assets "was made a party to the case" the

3

Plaintiffs' additional effort to divert this Court from *Neil* fails because they badly misread the case and the facts that Judge Pallmeyer considered, citing irrelevant briefs from the *Neil* docket. (*See* Memo. In Opp., Dkt 390, at 11-12, Exhibits A-B.) Judge Pallmeyer explicitly refused to consider the precise arguments and the exact pages of the reply brief that Plaintiffs cite. In dismissing the non-fiduciary defendants, Judge Pallmeyer ignored their defense set out in a reply brief that they did not profit from the transaction and that there was therefore no gain to claw back under § 502(a)(3). Instead, she accepted as true for purposes of the Rule 12 motion the *Neil* plaintiff's allegations that the non-fiduciary defendants profited from the non-ESOP assets, just like Plaintiffs in this case allege in the SAC. *Compare* Memo In Opp., Dkt 390, at 12 (citing pages 4-6 of the non-fiduciary *Neil* defendants' reply brief for the proposition that other than expenses and interest, they "never personally received a dollar from any of the relevant transactions") *with Neil,* 2010 U.S. Dist. LEXIS 80744 at *6, n.1 (noting the Court would not accept the factual representations in pages 4-6 of the reply brief because "[f]or purposes of this order, the court assumes Plaintiffs' allegations to be true").

Plaintiffs have failed to distinguish *Neil* and their claim for relief against the Foundation in Count Four should be dismissed.

### B. In Each of the Cases Cited by Plaintiffs, The Plan Was Involved In The Challenged Transaction or the Defendant was a Fiduciary

The Plaintiffs cite to several cases that do not support extending the reach of ERISA § 502(a)(3) to non-plan assets in the hands of non-fiduciaries. In each case, the ESOP and plan assets were involved in the underlying transaction in one of four ways, making those cases inapposite to deciding the Foundation's Motion.

---

§ 502(a)(3) claim could be maintained. *Perez v. Mueller*, No. 13-cv-1302, 2014 U.S. Dist. LEXIS 68302, **10-11 (E.D. Wis. May 19, 2014). Judge Pallmeyer concluded that the appropriate missing party was not the ESOP, but rather the entity from whom the assets originated and belonged and therefore could be returned. *Neil,* 2010 U.S. Dist. LEXIS 80744 at *8.

4

First are cases where the § 502(a)(3) defendants were fiduciaries who were alleged to have breached fiduciary duties. *Rogers v. Baxter Int'l Inc.*, 417 F. Supp. 2d 974 (N.D. Ill. 2006); *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96 (2d Cir. 2005); *Chesemore v. Alliance Holdings, Inc.*, 770 F. Supp. 2d at 960 (W.D. Wis. 2011) (referred to as *Chesemore* I in Plaintiffs' Opposition). [3]

Second are cases where the ESOP had a contractual subrogation right to the non-plan asset. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) and *Sereboff v. Mid Atl. Med. Servs.*, 547 U.S. 356 (2006) (section 502(a)(3) may be used to claw back a personal injury settlement from a non-fiduciary plan beneficiary where ESOP had a contractual subrogation right to that non-plan asset).

Third are cases where plan assets were used to secure financing necessary to enable a transaction that generated the payment of non-plan assets that a fiduciary transferred to a non-fiduciary. *Chesemore v. Alliance Holdings, Inc.*, No. 09-cv-413, 2013 U.S. Dist. LEXIS 148651 (W.D. Wis. October 15, 2013) (referred to as *Chesemore* III in Plaintiffs' Opposition); *Chesemore v. Alliance Holdings, Inc.*, 886 F. Supp. 2d 1007 (W.D. Wis. 2012) (referred to as *Chesemore* II in Plaintiffs' Opposition).

Fourth are cases where a non-fiduciary entity defendant in possession of non-plan assets is alleged to have participated in the underlying prohibited transaction and breaches of fiduciary duty by the fiduciary defendants. *Perez v. Mueller*, No. 13-cv-1302, 2014 U.S. Dist. LEXIS 68302 (E.D. Wis. May 19, 2014).

---

[3] For purposes of Rule 12(b)(6) only, neither the Foundation nor any of the other Defendants argue that Plaintiffs have failed to state a claim for other "equitable relief" under ERISA sections 409(a) or 502(a)(3) against the fiduciary Defendants for their purported breaches of fiduciary duties. *See* SAC at ¶¶ 140, 151.

Contrast these cases with Plaintiffs' allegations in the SAC. The SAC does not allege that the Foundation is or was a fiduciary as in *Rogers, Chesemore* I and *Nechis*. The SAC does not allege that the Antioch Plan had a contractual subrogation or other contractual right to the non-ESOP assets as in *Knudsen* and *Sereboff*. The SAC does not allege that Antioch ESOP assets were pledged to secure the loans Antioch took to finance the Transaction as in *Chesemore* II and *Chesemore* III. The SAC does not allege that the Foundation participated in the alleged prohibited transaction or fiduciary breaches of duty as in *Perez*.

The cases cited in Plaintiffs' Opposition Brief do not support their position that ERISA § 502(a)(3) provides a remedy against a party like the Foundation that is not an ERISA fiduciary, is not in possession of plan assets, did not participate in the prohibited transaction, and where no ESOP assets were pledged as security to effectuate the transaction.

### C. The Assets Alleged To Be In The Foundation's Possession Do Not "In Good Conscience" Belong To The Antioch ESOP

Despite conceding that the funds transferred to the Foundation consisted "entirely [] of the Company's cash and the Company's borrowings" (SAC at ¶ 46), Plaintiffs argue that this asset "in good conscience" is an ESOP asset that may be subject to a § 502(a)(3) claim, citing the Supreme Court's *Harris Trust* decision. But *Harris Trust* does not support Plaintiffs' proposition that "money from a prohibited transaction" transferred to a non-fiduciary can be subject to a § 502(a)(3) claim by plan participants." (Memo. In Opp., Dkt 390, at 5.) This is because *Harris Trust* indisputably involved only the transfer of plan assets that could be returned to the plan, not separate corporate cash and other borrowings. *Harris Trust*, 530 U.S. at 253 (holding § 502(a)(3) is appropriate to seek "restitution against a [non-fiduciary] transferee of tainted plan assets"). Plaintiffs themselves allege in the SAC that a § 502(a)(3) claim is proper

6

against a non-fiduciary to remedy the "misappropriation of *plan* assets." (SAC at ¶ 149) (emphasis added.)[4]

Plaintiffs' unsupported fiction that "company assets are plan assets" not only contradicts *Neil*, it contradicts Department of Labor regulations. The Department of Labor ("DOL") has issued regulations regarding "plan assets" providing that even when an ESOP has invested in an entity, the separate assets of the entity do not constitute assets of the ESOP. 29 CFR § 2510.3-101(a)(2).[5] This Court has given deference to this exact regulation. *See*, *e.g.*, *Associates in Adolescent Psychiatry, S.C. v. Home Life. Ins. Co. of N.Y.*, 729 F. Supp. 1162, 1185 (N.D. Ill. 1989) ("Therefore, even though the parties (particularly plaintiffs) have essentially ignored the import of this regulation, the Court concludes that Reg. § 2510.3-101 is a persuasive explanation of the statute's meaning"), *aff'd.*, 941 F.2d 561 (7th Cir. 1991).

And as explained in the Foundation's Memorandum In Support, courts outside of this District have repeatedly held that separate corporate assets transferred to a non-fiduciary cannot be pursued by ESOP participants through § 502(a)(3), even when transferred from an entity in which the ESOP allegedly had an investment interest. (*See* Memo In Support, Dkt. 387, at 7-9.) Plaintiffs ask this Court to adopt a fiction, not embraced by any other court or the DOL, that the nature of assets magically transform from corporate assets to ESOP assets under ERISA. Their claim against the Foundation should be dismissed.

---

[4] Moreover, as noted above, in *Neil* Judge Pallmeyer rejected the same type of argument made by Plaintiffs, holding that separate corporate assets could not be recovered by ESOP participants from a non-fiduciary transferee under § 502(a)(3) – even when transferred from an entity that became 100% ESOP-owned immediately after or contemporaneous with the transfers. *Neil,* 2010 U.S. Dist. LEXIS 80744 at *8.

[5] It is undisputed that Antioch was an "operating company" as defined in 29 CFR § 2510.3-101(c), so there can be no argument that a potential exception to this general rule applies. (See SAC ¶ 17.)

### III. CONCLUSION

For all of the reasons discussed above and in the Motion to Dismiss and Memorandum In Support, the Foundation requests that the Court dismiss the Plaintiffs' sole claim against the Foundation asserted in Plaintiffs' Second Amended Complaint.

Dated: October 24, 2014

Respectfully submitted,

/s/ Michael L. Scheier
Michael L. Scheier
Benjamin G. Stewart
Keating Muething & Klekamp PLL
One East Fourth Street, Suite 1400
Cincinnati, OH 45202
Telephone: (513) 579-6952
Facsimile: (513) 579-6457
mscheier@kmklaw.com
bgstewart@kmklaw.com

Counsel for Defendant Morgan Family Foundation

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 24, 2014, I caused true and correct copies of the foregoing Defendant Morgan Family Foundation's Reply In Support Of Its Motion To Dismiss The Fourth Claim For Relief In Plaintiffs' Second Amended Complaint to be filed electronically using the Court's CM/ECF system and to thereby be served upon all registered participants identified in the Notice of Electronic Filing in this matter on this date. This document is available for viewing and downloading on the CM/ECF system.

Dated: October 24, 2014 /s/ Michael L. Scheier
Counsel for Defendant Morgan Family Foundation

5730854