IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BONNIE FISH; CHRISTOPHER MINO; MONICA LEE WOOSLEY; LYNDA D. HARDMAN; and EVOLVE BANK & TRUST, an Arkansas bank and trust company, <br><br> Plaintiffs, <br><br> v. <br><br> GREATBANC TRUST COMPANY, an Illinois corporation; LEE MORGAN; ASHA MORGAN MORAN; and CHANDRA AITKEN, <br><br> Defendants. | No. 09 C 1668 <br><br> Magistrate Judge Maria Valdez |

# ORDER

This matter is before the Court on the Defendants' Motion to Compel Mark Mizen, Richard Wiser, and Rhonda Anderson to Comply with Subpoenas [Doc. No. 412]. Defendants seek to compel Mark Mizen, Richard Wiser, and Rhonda Anderson (hereinafter "Non-Party Witnesses") to produce certain documents responsive to subpoenas issued to them, namely declarations, draft declarations, and/or related documents. Plaintiffs respond that the materials are protected by the attorney-

client privilege and the work product doctrine. The motion is fully briefed, and oral argument was held. For the reasons that follow, the motion is denied.[1]

## BACKGROUND

Non-Party Witness Anderson first spoke with attorneys from Plaintiffs' firm[2] on July 21, 2011. She was told about the firm's services, including representation in connection with subpoenas, depositions, and trial testimony, and she expressly asked that the firm serve as her counsel with respect to the present litigation. After that time, Plaintiffs' counsel treated all communications with Anderson as privileged and confidential. (Greenwald Decl., Pls.' Resp. Ex. A, ¶¶ 4-7; Mack Decl., Pls.'s Resp. Ex. B, ¶¶ 4-6.)

On January 6, 2012, Non-Party Witness Wiser responded to Plaintiffs' counsel's request for a witness interview. During that conversation, Wiser stated that he would also like Plaintiffs' counsel to represent him for no cost, and counsel agreed to the same arrangement previously made with Anderson. After that time, Plaintiffs' counsel treated all communications with Wiser as privileged and confidential. (Greenwald Decl. ¶¶ 9-13.) Around January 31, 2012, Mizen also agreed to be represented by Plaintiffs' counsel, on the same basis as the firm was representing Anderson and Wiser. After that time, Plaintiffs' counsel treated all

---

[1] The motion also sought counsel's fee agreements with the Non-Party Witnesses. Those agreements were voluntarily produced after the motion was filed.

[2] Although two separate firms have appeared in the case and have primarily represented different Non-Party Witnesses, the Court refers to them collectively by the terms "Plaintiffs' firm" and "Plaintiffs' counsel." For purposes of this discussion, the identity of the firm representing the particular client or matter is irrelevant.

communications with Wiser as privileged and confidential. (*Id.* ¶¶ 15-18.) At the request of all three Non-Party Witnesses, Plaintiffs' counsel represented them with respect to their subpoenas, including the document requests and depositions. (*Id.* ¶¶ 19-22.)

Formal agreements with the Non-Party Witnesses were not executed by them prior to the original dismissal of the action in September 2012. After the dismissal was reversed on appeal, the Non-Party Witnesses all confirmed their desire for continued representation, and Plaintiffs' counsel prepared subpoena responses and prepared them for their depositions, which took place in January through March 2015. (*Id.* ¶¶ 22-27; Mack Decl. ¶¶ 10-13.) Formal Legal Representation Agreements were executed by the Non-Party Witnesses in January 2015. (Greenwald Decl. ¶¶ 29-30.)

Counsel for Plaintiffs intended to conduct evidentiary depositions of the Non-Fact Witnesses, but due to time constraints occasioned by Defendants' intention to depose each of them for six hours, they were unable to do so. Plaintiffs' counsel chose instead to prepare declarations in advance of calling the witnesses at trial. (*Id.* ¶¶ 32-36; Mack Decl. ¶¶ 18-20.) The declarations and/or draft declarations for each of the Non-Party Witnesses were prepared by Plaintiffs' counsel after reviewing thousands of pages of relevant documents and extensively interviewing the witnesses. (Greenwald Decl. ¶¶ 31-40, 50; Mack Decl. ¶¶ 17-23.)

Mizen executed a declaration on November 26, 2014. The subject matter of his declaration related to matters involving his services as Director of Technology

3

for Antioch. (Greenwald Decl. ¶¶ 39, 44.) Prior to Mizen's deposition on January 28, 2015, all of the documents referenced in the declaration were produced and all of the general subject matters covered in the declaration were known to Defendants. (*Id.* ¶¶ 43-45.)

Drafts of a declaration for Wiser were exchanged between him and Plaintiffs' counsel in October and November 2014, but the drafts were never finalized or executed. (*Id.* ¶¶ 48-49.) Co-counsel never received a copy of Wiser's draft declaration. (*Id.* ¶ 52.) Prior to Wiser's deposition on March 9, 2015, all of the documents referenced in the declaration were produced and all of the general subject matters covered in the declaration were or should have been known to Defendants. (*Id.* ¶ 51.) A draft declaration was prepared for Anderson, but it was never shared with the witness. (Mack Decl. ¶ 23.) During their depositions, Plaintiffs' counsel instructed the Non-Party Witnesses not to respond to questioning related to the declarations at issue.

## DISCUSSION

I. **Attorney-Client Privilege**

Plaintiffs argue that the content of their communications with the Non-Party Witnesses contained in the declarations and drafts is protected by the attorney-client privilege. Federal common law governs the application of the attorney-client privilege in this case, which arises under federal statute. *See* Fed. R. Evid. 501. "[I]n order for the attorney-client privilege to attach, the communication in question must be made: (1) in confidence; (2) in connection with the provision of legal

4

services; (3) to an attorney; and (4) in the context of an attorney-client relationship." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007) (noting that "[t]he purpose of the privilege is to 'encourage full disclosure and to facilitate open communication between attorneys and their clients'") (citation omitted).

Defendants offer no response to Plaintiffs' assertion of privilege in either their motion or reply brief. The Court finds that Plaintiffs have sufficiently established that the Non-Party Witnesses' communications with counsel were made in confidence, in connection with the provision of legal services, to an attorney in the context of an attorney-client relationship. Plaintiffs have further demonstrated that the communications remained in confidence, and the privilege was not otherwise waived. Therefore, to the extent that the declaration and/or draft declarations reflect attorney-client communications, they are privileged and need not be disclosed.

## II. Work Product Doctrine

Plaintiffs also assert that the declarations contain material protected by the work product doctrine. Defendants respond that the declarations contain merely factual statements by non-parties and therefore must be disclosed.

The application of the work product doctrine is governed by federal law *See Slaven v. Great Am. Ins. Co.*, — F. Supp. 3d —, No. 13 C 1370, 2015 WL 1247431, at * 3 (N.D. Ill. Mar. 18, 2015). The doctrine "is distinct from and broader than the attorney-client privilege." *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1024 (7th Cir. 2012) (citation and internal quotation omitted). The work product doctrine

5

protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). Disclosure may be ordered, however, if the materials are otherwise discoverable and "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(i)-(ii). But even if discovery is ordered, the court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B); *see Hickman v. Taylor*, 329 U.S. 495, 511 (1947) ("Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.").

There is a dearth of case law from the Seventh Circuit or this district that is directly relevant to the issues raised in the motion. Thus, the parties and the Court must rely primarily on other federal cases for guidance. Defendants urge the Court to follow a line of cases holding that an affidavit or declaration is not work product because it "purports to be a statement of facts within the personal knowledge of the *witness*, and not an expression of the opinion of counsel." *Infosystems, Inc. v. Ceridian Corp.*, 197 F.R.D. 303, 306 (E.D. Mich. 2000) (emphasis in original); *see*

*Milwaukee Concrete Studios, Ltd. v. Prange Way, Inc.*, 140 F.R.D. 373, 378 (E.D. Wis. 1991).

The Court, however, is persuaded by the weight of more recent authority holding that draft affidavits or declarations are protected opinion work product.[3] *See Randleman v. Fidelity Nat'l Title Ins. Co.*, 251 F.R.D. 281, 285 (N.D. Ohio 2008) (noting that the recent trend "is to consider draft affidavits and communications with counsel relating to affidavits as covered by the attorney work product doctrine"); *accord Innovation Ventures, L.L.C. v. Aspen Fitness Prods., Inc.*, No. 11-13537, 2014 WL 2763645, at \*3 (E.D. Mich. June 18, 2014); *Lavatec Laundry Tech. GmbH v. Lavatec, Inc.*, No. 3:13cv56, 2014 WL 1665018, at \*3 (D. Conn. Apr. 25, 2014); *Schoenmann v. FDIC*, 7 F. Supp. 3d 1009, 1014 (N.D. Cal. 2014); *Bobryk v. Durand Glass Mfg. Co., Inc.*, No. 12-cv- 5360, 2013 WL 5574504, at \*9 n.10 (D.N.J. Oct. 9, 2013); *Clemmons v. Academy for Educ. Dev't*, 300 F.R.D. 6, 8 (D.D.C. 2013); *ePlus Inc. v. Lawson Software, Inc.*, No. 3:09cv620, 2012 WL 6562735, at \*6-7 (E.D. Va. Dec. 14, 2012); *Bell v. Lackawanna County,* 892 F. Supp. 2d 647, 660-61 (M.D. Pa. 2012); *Inst. for Dev't of Earth Awareness v. People for Ethical Treatment of*

---

[3] One court has questioned whether a declaration should even be considered a document at all:

> In form, a declaration resembles a "document." In substance, however, it is testimony. To be precise, it is a convenient proffer, in written form, of anticipated oral trial testimony. . . . An affidavit may be a "document" within the meaning of the rule in some unusual instances, but the classic declaration gathered in anticipation of a summary-judgment motion is not within the purview of the "document" concept.

*Intel Corp. v. VIA Techs., Inc.*, 204 F.R.D. 450, 451 (N.D. Cal. 2001).

7

*Animals*, 272 F.R.D. 124, 125 (S.D.N.Y. 2011); *McKinley v. FDIC*, 744 F. Supp. 2d 128, 141-42 (D.D.C. 2010); *Boyer v. Gildea*, 257 F.R.D. 488, 492-93 (N.D. Ind. 2009); *cf. Makowski v. SmithAmundsen LLC*, No. 08 C 6912, 2010 WL 3184483, at *3-4 (N.D. Ill. Aug. 11, 2010) (holding that a draft affidavit must be disclosed where the party that obtained the affidavit made testimonial use of it during the affiant's deposition).

A declaration or affidavit can be an expression of counsel's opinions and mental processes. In draft form, it is a statement of what the attorney believes a witness will testify to; it does not represent that any facts contained therein are accurate or otherwise have been adopted by the witness. *See Innovation Ventures*, 2014 WL 2763645, at *3 (holding that unsigned drafts do not reflect statements made by the witness, but instead were prepared by counsel and thus "constitute the attorney's trial preparation materials");[4] *Clemmons*, 300 F.R.D. at 8 ("'A draft of a declaration to be executed by a party or witness denotes what a lawyer thinks that party or witness should say and thereby exposes that lawyer's mental processes.'") (citation omitted); *Randleman*, 251 F.R.D. at 287 (holding that draft affidavits are opinion work product, because they "could reveal the attorneys' thought processes about the case"). Defense counsel acknowledged at oral argument that an attorney's memorandum of a witness interview taken with an eye toward litigation qualifies as work product. *See Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622

---

[4] Notably, *Innovation Ventures* was issued from the same district as *Infosystems* but reached the opposite conclusion, instead relying on the more recent line of cases.

(7th Cir. 2010); *Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487, 492 (7th Cir. 1970). A draft declaration is the functional equivalent of such a memorandum, and finding that it is not work product puts form over substance.

The Anderson declaration, which was not even shown to the witness, obviously reflects only the attorney's mental processes, not facts adopted by Anderson.[5] And while Wizen testified at his deposition that he recalled agreeing with the statements made in the declaration, he never executed the document, and that testimony was given without the benefit of the document being before him.

Even assuming that the Wizen declaration was fully adopted by him, as was the Mizen declaration, the document would nevertheless be protected attorney work product because it discloses trial strategy. The declarations focus on the particular facts and documents that counsel believes will support Plaintiffs' claims and/or can meet their opponents' defenses. Counsel's choice to include certain facts, from the sea of facts available in numerous documents and prior interviews, reflects the attorney's opinions, mental processes, and strategies, which are protected until they are voluntarily disclosed.[6] *See Inst. for Dev't of Earth Awareness*, 272 F.R.D. at 125 (holding that executed affidavits of non-party witnesses that "were drafted for

---

[5] At oral argument, defense counsel suggested that Anderson's inability to recall receiving a draft puts the issue of whether she actually did see a draft in play. Even if the Court were to agree with this puzzling argument, it is undisputed that she never signed a declaration.

[6] Defendants argue that the declarations are not work product because Plaintiffs do not intend to use them in support of their summary judgment brief. The Court is unaware of any reason why Plaintiffs' intended use of the declarations as witness roadmaps during trial would make them any less worthy of work product protection.

possible use on a summary judgment motion . . . remained work product until the lawyer elected to serve and file them"); *Intel Corp.*, 204 F.R.D. at 452 (refusing to strike a non-party witness declaration that was never disclosed before being filed in support of summary judgment because "the declaration at issue was clearly work product right up until the moment it was filed"). Forcing a party to disclose declarations and affidavits as they are procured and before a final strategy is determined is not only contrary the purpose of the work product doctrine, but it is unnecessarily burdensome. *Intel Corp.*, 204 F.R.D. at 452 (finding that "it would be unreasonable and burdensome (and rarely, if ever, done in practice) to require all sides to augment any privilege logs or disclosure lists each and every time they obtain a declaration for potential use on summary judgment").

Having determined that all of the requested materials are protected work product, the Court now turns to the issue of whether Defendants have shown they have a substantial need for the documents. Merely factual information contained within the declarations "may not be withheld under the umbrella of work product but must be available, if not through the production of otherwise protectible documents, then through interrogatories or depositions." *Allen v. Chi. Transit Auth.*, 198 F.R.D. 495, 500 (N.D. Ill. 2001).

Defendants' argument that they need the materials because they were unable to question the witnesses about the factual statements in the declarations misunderstands the issue. Defendants appear to believe that they could not obtain the substantial equivalent of the factual information contained in the declarations

unless the witnesses read the documents into the record verbatim. If that were the case, Rule 26's use of the term "substantial equivalent" would be meaningless. Defendants did obtain the substantial equivalent of the underlying factual information through other means, namely a full and fair opportunity to depose the witnesses about the knowledge of the claims and defenses at issue, as well as access to all of the documents referenced in the declarations. *See Chan v. City of Chi.*, 162 F.R.D. 344, 346 (N.D. Ill. 1995) (finding no substantial need of draft affidavits protected by work product where the affiant could have been deposed).

For example, Mizen testified that in his declaration, he offered interpretations of certain documents. Defendants complain that they were not allowed the opportunity to question Mizen about the documents and his interpretations, but that is not true. Defendants could have (and possibly did) question Mizen about the same documents that were referenced in his declaration. The only thing Defendants did not have access to was the particular listing of documents that Plaintiffs' counsel felt were significant and supported their trial strategy. The fact that Mizen testified that not all of the exhibits to his declaration were deposition exhibits does not change the analysis. Defendants had access to the same documents and could have used them as deposition exhibits.

Thus, the only reason Defendants could conceivably need access to the text of the declarations is the hope of finding impeaching statements, which is not a

11

sufficient basis to order the disclosure of protected materials.[7] *See Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010) ("[W]e have been extremely reluctant to allow discovery of attorney work product simply as impeachment evidence."); *see also Hauger v. Chi., Rock Island & Pac. R.R. Co.*, 216 F.2d 501, 508 (7th Cir. 1954) ("A court is not justified in ordering a litigant to permit his adversary to inspect witness statements, which he has procured in preparing for trial, upon the adversary's mere surmise or suspicion that he might find impeaching material in the statements. In such a situation, the rights of a litigant in the work-product of his lawyers and agents are not required to give way to an adversary's right of discovery."); *Charvat v. Valente*, No. 12 C 5746, 2015 WL 993389, at *5 (N.D. Ill. Mar. 3, 2015) (finding that possible impeachment did not establish a substantial need for a transcript of a witness interview conducted under oath).

Moreover, as explained above, the Wiser and Anderson draft declarations could not be a source of impeachment, because they were not executed by the witnesses. *See Hickman*, 329 U.S. at 512-13 (holding that an attorney's account of a witness interview "could not qualify as evidence; and to use it for impeachment or corroborative purposes would make the attorney must less an officer of the court

---

[7] Defendants pointedly did not argue in their motion that they need the materials for impeachment purposes. But at oral argument, defense counsel acknowledged that one reason he wanted the statements to determine whether they were consistent or inconsistent. The only other explanation given as to why the statements were needed was that they were admissible factual statements, which addresses the issue of work product protection, not substantial need.

and much more an ordinary witness"); *see also Randleman*, 251 F.R.D. at 286 (noting that if "drafts initially said something an affiant removed, that hardly undercuts either the reliability of the final statements or the affiant's credibility").

Finally, even if the Court were to find that Defendants had shown substantial need for the documents, they could not be disclosed. This is not a case in which the declaration lists all of the relevant facts within the witness's knowledge. The declarations reveal litigation strategy by reflecting the attorneys' process of culling all of the potentially relevant facts to which the witnesses could have testified, including only those facts and documents that counsel believes will promote Plaintiffs' theory of the case. Therefore, the facts and the attorneys' opinions are so inextricably intertwined that purely factual information could not be disclosed without also disclosing the attorneys' mental processes. *See Medicines Co. v. Mylan Inc.*, No. 11 C 1285, 2013 WL 2926944, at *3 (N.D. Ill. June 13, 2013) (explaining that even when there is a showing of substantial need, "'the court must protect against disclosure of the attorney's mental impressions, conclusions, opinions, or legal theories under Rule 26(b)(3)(B)'") (quoting Fed. R. Civ. P. 26(b)(3)(B) advisory committee's note (2010)).

13

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Compel Mark Mizen, Richard Wiser, and Rhonda Anderson to Comply with Subpoenas [Doc. No. 412] is denied.

**SO ORDERED.**     **ENTERED:**

**DATE:   May 6, 2015**     _____
                            **HON. MARIA VALDEZ**
                            **United States Magistrate Judge**