## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **BONNIE FISH, CHRISTOPHER MINO, MONICA LEE WOOSLEY, LYNDA D. HARDMAN, EVOLVE BANK AND TRUST,** | ) ) ) ) ) | |
| **Plaintiff,** | ) ) | **No. 09 C 1668** |
| **v.** | ) ) | **Judge Jorge L. Alonso** |
| **GREATBANC TRUST COMPANY, LEE MORGAN, ASHA MORGAN MORAN, CHANDRA ATTIKEN, MORGAN FAMILY FOUNDATION,** | ) ) ) ) ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Bonnie Fish, Christopher Mino, Monica Lee Woosley, Lynda Hardman and Evolve Bank & Trust, have brought this action against defendants, GreatBanc Trust Company ("Greatbanc"), Lee Morgan, Asha Morgan Moran, Chandra Attiken and the Morgan Family Foundation ("MFF"), for allegedly violating their fiduciary duties under several provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1104, 1106, 1108, 1109, and 1132. The Morgan Family Foundation has moved to dismiss on the ground that it cannot be liable because it is not a fiduciary and it did not participate in the transaction. For the reasons set forth below, the motion is denied.

### I.      BACKGROUND

The facts and procedural history of this case have been set out more fully elsewhere, *see Fish v. GreatBanc Trust Co.*, 749 F.3d 671 (7th Cir. 2014), and the Court will provide only a brief summary of the facts that form the background for the instant motion to dismiss. Plaintiffs

Bonnie Fish, Christopher Mino, Monica Lee Woosley and Lynda Hardman are former employees of the Antioch Company ("Antioch") and participants in its Employee Stock Ownership Plan ("ESOP"), a retirement plan subject to ERISA. (Second Am. Compl. ¶¶ 1-4.) Plaintiff Evolve Bank & Trust ("Evolve") is the current trustee for the ESOP. (*Id.* ¶ 5.) Defendants Lee Morgan, Asha Morgan Moran and Chandra Attiken were officers, directors and shareholders of Antioch, members of the ESOP committee, and fiduciaries of the ESOP under ERISA. (*Id.* ¶¶ 7-9.) In 2003, seeking a way to avoid making huge annual distributions to shareholders to cover their tax liability, Antioch began to explore a proposed transaction that would make the company 100-percent ESOP-owned, although it would still be controlled and managed by the Morgan family. (*Id.* ¶¶ 44-46.)

The proposed transaction required Antioch to merge with a new company, formed for the purpose of the transaction, and make a tender offer in which the ESOP would agree not to participate. (*Id.* ¶ 46.) All non-ESOP shares would be redeemed for cash or a combination of cash, notes and warrants, but the Morgan family would maintain control of Antioch, its board of directors, and the ESOP committee. (*Id.* ¶¶ 46-47.) In or about August 2003, the Antioch Board of Directors formally resolved to pursue the transaction. (*Id.* ¶ 49.)

Antioch engaged defendant Greatbanc to serve as trustee for the ESOP with respect to the proposed transaction. (*Id.* ¶ 50.) Greatbanc's duty was to examine the transaction from the standpoint of the ESOP and determine whether it was financially fair to the ESOP. (*Id.* ¶ 51.) With the assistance of Duff & Phelps, a financial advisory firm, Greatbanc determined that the transaction was unfair and sought modifications. (*Id.* ¶ 58.) Greatbanc negotiated "Put Price Protection" for the ESOP, which set a floor on the per-share amount Antioch could pay an ESOP member who wanted to terminate her employment and sell back her shares (*id.* ¶¶ 59, 62), as

every ESOP member had the right to do under ERISA (*id.* ¶ 31). Antioch and the individual defendants allegedly worried that these terms were too generous to the ESOP and that, in the wake of the transaction, employees would rush to quit their jobs and sell back their stock in exchange for huge payouts (*id.* ¶ 65), but they did not disclose their concerns to Greatbanc or Duff & Phelps (*id.* ¶ 77), nor, it is alleged, did Greatbanc or Duff & Phelps sufficiently consider this possibility (*id.* ¶ 78).

Antioch used $46 million of its own cash and $109 million in loans to complete the transaction, which closed in December 2003. (*Id.* ¶¶ 86, 89). Just as Antioch and the individual defendants allegedly feared, the transaction resulted in a stampede of ESOP member resignations, triggering Antioch's repurchase obligations. (*Id.* ¶¶ 101, 107.) Sales declined at the same time (*id.* ¶ 104), and Antioch could no longer service its debt and meet its repurchase obligations to ESOP participants (*id.* ¶ 108). In 2008, Antioch declared bankruptcy. (*Id.*) The ESOP is now worthless, and plaintiffs seek to recover the losses they have sustained due to the defendants' alleged breaches of fiduciary duty and participation in a prohibited transaction under ERISA. (*Id.* ¶ 109.)

Reviewing an earlier order in this case, the Seventh Circuit summarized the transaction by explaining that "[t]he economic substance of the transaction was that the [ESOP] would buy Antioch stock (indirectly) from the Morgan family and other shareholders." *Fish*, 749 F.3d at 675. The Court summarized plaintiffs' causes of action against Greatbanc and the individual defendants as follows:

> ERISA imposes general standards of loyalty and prudence that require fiduciaries to act solely in the interest of plan participants and to exercise their duties with the "care, skill, prudence, and diligence" of an objectively prudent person. 29 U.S.C. § 1104(a)(1); *Eyler v. Comm'r of Internal Revenue*, 88 F.3d 445, 454 (7th Cir.1996). In addition, § 1106 supplements the general fiduciary duty provisions by prohibiting ERISA fiduciaries from causing a plan to enter into a variety of

> transactions with a "party in interest." *See Keach v. U.S. Trust Co.,* 419 F.3d 626, 635 (7th Cir. 2005). As a general rule, a fiduciary may not engage in a direct or indirect transaction constituting a "sale or exchange, or leasing, of any property between the plan and a party in interest." 29 U.S.C. § 1106(a)(1)(A). A plan fiduciary is a party in interest, as are officers, directors, and major shareholders of a plan sponsor like Antioch. 29 U.S.C. § 1002(14)(A) & (H). Section 1106 begins, though, by saying "Except as provided in section 1108," which provides numerous exceptions to the prohibited transaction rule. The most relevant exception for this case is for plan purchases of employer securities. Section 1106(a) does not apply to such purchases if, among other conditions, the transaction "is for adequate consideration." § 1108(e). ERISA defines adequate consideration as "the fair market value of the asset as determined in good faith by the trustee . . . ." § 1002(18)(B). . . . Plaintiffs contend that by carrying out the Antioch buy-out transaction in 2003, all the defendants violated the general duty of prudence under § 1104 and engaged in a transaction prohibited by § 1106(a).

*Fish*, 749 F.3d at 679-80 (reversing and remanding this Court's earlier ruling that plaintiffs' claims were barred by the statute of limitations). After the Seventh Circuit remanded the case, the plaintiffs filed a Second Amended Complaint, which makes similar claims under § 1104 and § 1106(a) as well as a claim for co-fiduciary liability pursuant to § 29 U.S.C. § 1105. Plaintiffs also add a claim for equitable remedies pursuant to 29 U.S.C. § 1109(a) and 29 U.S.C. § 1132(a)(3); this is the only claim seeking relief against MFF.

Among the equitable remedies plaintiffs request are a constructive trust on the assets Lee Morgan, Asha Morgan Moran and Chandra Attiken received in payment for the sale of their stock in the 2003 buyout transaction. (*Id.* ¶ 151; Prayer for Relief ¶ 3.) Further, Lee Morgan and Asha Morgan Moran ("the Morgan defendants") allegedly donated to MFF more than $40 million of the proceeds of the 2003 buyout, and plaintiffs seek to impose a constructive trust on the funds transferred to MFF from the Morgan defendants. (*Id.* ¶¶ 144-45; Prayer for Relief ¶ 3.) MFF now moves to dismiss.

## II.    LEGAL STANDARDS

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a

4

complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted).

Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

## III. ANALYSIS

Defendant MFF argues that it should be dismissed from this lawsuit because the relief plaintiffs are seeking against it is unavailable. Plaintiffs seek to impose a constructive trust on the proceeds of the 2003 buyout transaction, including the funds MFF allegedly received from the Morgan defendants, but MFF argues that plaintiffs are entitled to no such relief because MFF is not a fiduciary and it received no plan assets.

Plaintiffs' claim against MFF is based on 29 U.S.C. § 1132(a)(3). Section 1132(a) provides that a civil action may be brought by ESOP participants to obtain "appropriate equitable relief" to "redress . . . violations" of ERISA or the terms of the ESOP. The Supreme Court

explained in *Harris Trust & Savings Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 246 (2000), that § 1132(a)(3)[1] "admits of no limit (aside from the 'appropriate equitable relief' caveat . . . ) on the universe of possible defendants" and may be used to sue a non-fiduciary to redress violations of ERISA. Because MFF was not a fiduciary, it appears that MFF's only possible ERISA liability is under § 1132(a)(3).

MFF claims that *Harris* held that non-fiduciaries may be held liable under § 1132(a)(3) only where they "are or were in possession of *plan assets*" (Mem. Supp. Mot. Dismiss at 4) (emphasis added), and in this case MFF received no assets that belonged strictly to the ESOP; it received only corporate cash and borrowings via the Morgan defendants. In support of its position, MFF cites *Neil v. Zell*, No. 08 C 6833, 2010 WL 3167293 (N.D. Ill. Aug. 9, 2010). In *Neil*, Sam Zell and his business entity EGI-TRB sold stock to the Tribune Company ("Tribune") after Tribune made a tender offer as part of a leveraged ESOP buyout transaction similar to the one in this case.[2] The court held that Zell and EGI-TRB could not be held liable under § 1132(a)(3) because they received payments only from Tribune, not the ESOP plan. Tribune was not a party to the litigation, as it was mired in bankruptcy at the time, and the court refused to order the return of property that originated with Tribune in Tribune's absence. *Id.* at *2.

*Neil* is distinguishable from this case. In *Neil*, the ESOP plan did not exist before the transaction was commenced and Zell and EGI-TRB were not fiduciaries at the time of the transaction. The court compared the case to a shareholder derivative action, which cannot proceed in the absence of the corporation, *id.*, and the comparison may have been apt in that

---

[1] In *Harris*, the Supreme Court cited to the sections in the ERISA legislation as enacted; thus, it referred to § "502(a)(3)" rather than 1132(a)(3). In its earlier opinion in this case, however, the Seventh Circuit cited to the sections of ERISA as codified in Title 29 of the United States Code. For consistency with that opinion, this Court will also cite to the sections of ERISA as codified.
[2] The details of the transaction can be found in an earlier opinion in the case, reported at 677 F. Supp. 2d 1010 (N.D. Ill. 2010).

case, but this case is different. Here, at the time of the transaction in 2003, the Morgan defendants owed fiduciary duties to an ESOP that was established in 1979 (Second Am. Compl. ¶ 19), and they initiated a transaction that enriched themselves while making the ESOP worthless. They allegedly transferred at least a certain amount of the proceeds of that transaction to MFF, and these funds are the subject of plaintiffs' claim against MFF.[3] Thus, the funds that plaintiffs seek are allegedly traceable to the Morgans' alleged breach of fiduciary duty to the plaintiffs and the ESOP in which the plaintiffs are participants. Certainly MFF cannot claim to be ignorant of the provenance of these funds, if, as alleged, it is and was controlled by the Morgan defendants themselves. (Second Am. Compl. ¶ 145.) *See Harris*, 530 U.S. at 251. Neither *Neil* nor any other case MFF has cited supports the contention that imposing a constructive trust on any funds in MFF's possession that are directly traceable to the 2003 buyout transaction via the Morgan defendants is not "appropriate equitable relief" for the alleged breach of fiduciary duty and knowing participation in a prohibited transaction.[4]

Although the factual context of *Harris* is not identical to that of the instant case, the decision supports the plaintiffs' position that the viability of their claim against MFF does not depend strictly on whether MFF received plan assets. The Supreme Court explained that "the focus [of § 1132(a)(3)] is on redressing the '*act or practice* which violates any provision of [ERISA Title I].'" *Harris*, 530 U.S. at 246 (emphasis in original). Certain statements of the Court, taken out of context, may seem to require that an 1132(a)(3) defendant have acquired plan

---

[3] Because plaintiffs seek to recover specific funds that were transferred to MFF by the Morgan defendants, this is not a case in which the plaintiffs seek essentially legal relief that is merely cloaked in terms in equity in order to trigger the applicability of § 1132(a)(3). *See Perez v. Mueller*, No. 13-C-1302, 2014 WL 2050606, at *4 (E.D. Wis. May 19, 2014); *see generally Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 361-63 (2006).

[4] In support of its position, MFF has cited a number of cases in addition to *Neil*, but the Court agrees with plaintiffs that these cases are distinguishable, for the reasons stated by plaintiffs. (Opp'n Br. at 15.)

assets,[5] but these statements owe their provenance to the peculiar facts of *Harris* itself, and the holding of the case is not limited to those facts. The thrust of *Harris* is simply that a court may fashion "appropriate equitable relief" to redress ERISA violations, regardless of whether the defendant is a fiduciary. MFF has not demonstrated why requiring MFF to disgorge the proceeds of the 2003 transaction received from the Morgan defendants, who are alleged to have initiated the transaction in violation of their fiduciary duties to the ESOP, and render the disgorged proceeds to the ESOP that was harmed by the transaction is not "appropriate equitable relief."

Plaintiffs have cited a case in which similar relief was granted in a similar context, *Chesemore v. Alliance Holdings, Inc.*, 948 F. Supp. 2d 928 (W.D. Wis. 2013), and the Court agrees with plaintiffs that *Chesemore* is more similar to this case than is *Neil*. *See Chesemore*, 948 F. Supp. 2d at 947 n. 20 (fiduciary can be ordered to disgorge funds he received by breaching his fiduciary duty, regardless of whether the direct source of the funds was the ESOP or the sponsor corporation) (citing *Leigh v. Engle*, 727 F.2d 113, 122 n.17 (7th Cir. 1984)); *Chesemore v. Alliance Holdings, Inc.*, No. 09-CV-413-WMC, 2013 WL 6989526, at *1-2 (W.D. Wis. Oct. 16, 2013) (fiduciary's wife can be ordered to disgorge funds she is alleged to have received from the breaching fiduciary as a gratuitous transferee).[6]

MFF also argues that it cannot properly be sued in this case because it did not participate in the transaction. It claims that it was "nothing other than a passive non-fiduciary and complete stranger" to the Antioch ESOP and the alleged breaches of fiduciary duty that occurred with respect to the 2003 leveraged ESOP buyout. This argument is unavailing. The fact that MFF

---

[5] For example, in its brief MFF quotes the Supreme Court's statements that "[o]nly a transferee of ill-gotten trust assets may be held liable" and "appropriate equitable relief . . . is an action for restitution against a transferee of tainted plan assets." (Mem. Supp. Mot. Dismiss at 5 (citing *Harris*, 530 U.S. at 251-252).)

[6] MFF attempts to distinguish *Chesemore* because, in that case, plan assets were used as collateral to secure financing for the underlying transaction, but that is a distinction without a difference.

was a stranger to the deal does not prevent plaintiff from seeking equitable relief against MFF. As the Supreme Court explained in *Harris*, "that a transferee was not 'the original wrongdoer' does not insulate him from liability for restitution." 530 U.S. at 250 (citing 1 Dan Dobbs, Law of Remedies § 4.3(2), at 597 (2d ed. 1993) ("The constructive trust is based on property, not wrongs.")). If MFF received the claimed assets from fiduciaries who acquired them by breaching their fiduciary duties, MFF can equitably be required to render them to the victim of the breach. *See Perez v. Mueller*, No. 13-C-1302, 2014 WL 2050606, at *4 (E.D. Wis. May 19, 2014); *Chesemore*, 948 F. Supp. 2d at 947, 947 n. 20.

Put another way, to whatever extent the Morgan defendants can be required to disgorge the proceeds of the 2003 buyout transaction, MFF, as a knowing, gratuitous transferee, can be required to do the same. MFF admits that it does not contend that the Second Amended Complaint fails to state a claim against the Morgan defendants (Reply at 5), nor have the Morgan defendants moved to dismiss; on the contrary, they have answered the Second Amended Complaint. The Court therefore denies MFF's motion to dismiss.

## CONCLUSION

For the reasons set forth above, the Court denies defendant Morgan Family Foundation's motion to dismiss [386].

**SO ORDERED.**

**ENTERED: June 12, 2015**

**HON. JORGE L. ALONSO**
**United States District Judge**

9