UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BONNIE FISH, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> GREATBANC TRUST COMPANY, *et al.*, <br><br> Defendants. | Case No. 1:09-cv-1668 <br><br> Honorable Jorge L. Alonso <br><br> Magistrate Judge Maria Valdez |

**MEMORANDUM OF DEFENDANT MORGAN FAMILY FOUNDATION
IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**I.  Introduction**

This Court should deny Plaintiffs' preliminary injunction motion,[1] which asks this Court *inter alia* to effect a prejudgment attachment by restricting the charitable operations of Defendant Morgan Family Foundation (the "Foundation")[2] and, as written, preventing the Foundation from incurring defense costs. Plaintiffs fail to demonstrate any of the conditions for issuance of a preliminary injunction. Accordingly, this Court should deny the motion in light of the irreparable harm that the Foundation would suffer if the requested relief is granted. *See*, *e.g.*, *Goodman v. Ill. Dep't of Fin. & Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir. 2005).

---

[1] Plaintiffs delayed filing their motion for more than ten years after the Foundation was created in 2003 [Second Amended Complaint ¶ 10, Doc. 380], more than six years after this lawsuit was filed [Complaint, Doc. #1], more than five years after first seeking to add the Foundation as a Defendant [Motion for Leave, Doc. #120], and more than one year after the Foundation was added as a party. [Second Amended Complaint, Doc. #380].

[2] At the July 28, 2015 hearing, Plaintiffs' counsel acknowledged both that a side letter, such as that proposed by the Foundation, would be acceptable and that the Foundation has committed no wrong and is a party solely because, after the 2003 Transaction in which the ESOP became the sole shareholder of The Antioch Company, Lee Morgan transferred funds to the Foundation. July 28, 2015 transcript at 9-11 [Exhibit 1]. A copy of the Side Letter offered to Plaintiffs' counsel is attached. [Exhibit 2]. Plaintiffs' counsel now demands an agreed preliminary injunction that ignores market fluctuations and limits the Foundation's operations, rather than a side letter. [Exhibit 3]. Although Plaintiffs since have proposed increasing expenses to $1,000,000 per year, the approach is not acceptable.

## II. **Applicable Standard**

The following standard applies to Plaintiffs' preliminary injunction motion:

> As the Supreme Court has observed, "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997) (*quoting* 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2948, pp. 129-30 (2d ed. 1995)). To justify this relief, movants must show that (1) they have a reasonable likelihood of success on the merits; (2) no adequate remedy at law exists; (3) they will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest. *Joelner v. Vill. of Washington Park*, 378 F.3d 613, 620 (7th Cir. 2004) (*citing Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1067 (7th Cir. 1994)).

*Goodman*, 430 F.3d at 437 (italics in original). The Seventh Circuit explained this standard:

> In our circuit, a district court engages in a two-step analysis to decide whether such relief is warranted. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of USA, Inc*., 549 F.3d 1079, 1085-86 (7th Cir. 2008). In the first phase, the party seeking a preliminary injunction must make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits. *Id*. at 1086; *see also Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999).
>
> If the movant makes the required threshold showing, then the court proceeds to the second phase, in which it considers: (4) the irreparable harm the moving party will endure if the preliminary injunction is wrongfully denied versus the irreparable harm to the nonmoving party if it is wrongfully granted; and (5) the effects, if any, that the grant or denial of the preliminary injunction would have on nonparties (the "public interest"). *Girl Scouts*, 549 F.3d at 1086; *Cooper*, 196 F.3d at 813; *Roland Mach. Co. v. Dresser Indus., Inc*., 749 F.2d 380, 386-88 (7th Cir. 1984). The court weighs the balance of potential harms on a "sliding scale" against the movant's likelihood of success: the more likely he is to win, the less the balance of harms must weigh in his favor; the less likely he is to win, the more it must weigh in his favor. *Girl Scouts*, 549 F.3d at 1086; *Roland*, 749 F.2d at 387-88.

*Turnell v. Centimark Corp.*, 2015 U.S. App. LEXIS 13230, *9-10 (7th Cir. 2015). Each element to be considered mandates denial of Plaintiffs' preliminary injunction motion. Indeed, each case

Plaintiffs cite involves recovery of plan assets overpaid to a plan participant[3] or recovery of a litigation settlement in which the plan had an interest pursuant to an "equitable lien by agreement."[4] [Motion at 6 & n.3, Doc. #462, PageID #16454]. This Court should not halt the Foundation's charitable work on a novel prejudgment attachment theory for which Plaintiffs have not proven the elements.

## II. Analysis

### A. Plaintiffs Fail to Demonstrate a Reasonable Likelihood of Success on the Merits

#### 1. Plaintiffs Make No Showing That Lee Morgan Breached a Fiduciary Duty to the ESOP, Which Is a Precondition to an Award of Any Relief Against the Foundation

Plaintiffs, who do not seek a preliminary injunction as to the individual defendants, make no showing that Lee Morgan, the sole defendant who contributed funds to the Foundation, breached a fiduciary duty to the ESOP. Plaintiffs' constructive trust claim is predicated on Plaintiffs' success on the merits as to Lee Morgan. Plaintiffs made no attempt to prove Lee Morgan's liability. Therefore, Plaintiffs fail to prove a reasonable likelihood of success on the merits. On this ground alone, this Court should deny Plaintiffs' preliminary injunction motion.

---

[3] *Trustees for Iron Workers St. Louis Dist. Council Pension Trust v. Edwards*, 2010 WL 1418566 (S.D. Ill. Apr. 7, 2010) (recovery of overpaid benefits from pension plan).

[4] *Cent. States, S. & SW. Areas Health & Welfare Fund ex rel. McDougall v. Lewis*, 871 F. Supp. 2d 771, 775 (N.D. Ill. 2012) (recovery "where an ERISA plan creates an 'equitable lien by agreement'"); *Crawford & Co. Med. Ben. Trust v. Repp*, 2011 WL 2531844 (N.D. Ill. June 24, 2011) (applying *Sereboff v. Mid Atlantic Med. Servs., Inc.*, 547 U.S. 356, 365 (2006), which recognized that a plan's reimbursement provision "may create an equitable lien by agreement"); *Diamond Crystal Brands, Inc. v. Wallace*, 531 F. Supp. 2d 1366 (N.D. Ga.) *on reconsideration*, 563 F. Supp. 2d 1349 (N.D. Ga. 2008) (equitable lien by agreement); *Brown v. Assocs. Health & Welfare Plan*, 2007 U.S. Dist. LEXIS 59062 (W.D. Ark. Aug. 13, 2007) (equitable lien by agreement); *Mank ex rel. Hannaford Health Plan v. Green*, 297 F. Supp. 2d 297 (D. Me. 2003) (equitable lien by agreement).

### 2. Plaintiffs' Failure to Join the Ohio Attorney General in This Action Renders Any Judgment Void

Plaintiffs do not address their failure, in violation of Ohio Revised Code § 109.25, to join the Ohio Attorney General once they asserted a claim against the assets of the Foundation, an Ohio nonprofit that operates as a charitable foundation. Affidavit of Lori Kuhn ("Kuhn Aff.") ¶ 2 & Exhibit A. Not only is the Ohio Attorney General responsible for ensuring that the Foundation acts in the public interest, but Plaintiffs' failure to join the Ohio Attorney General precludes their demonstration of a reasonable likelihood of success on the merits inasmuch as any judgment will be void under Ohio Revised Code § 109.25, which provides in relevant part:

> **A judgment rendered** in such proceedings [as to distribution of assets from a charitable trust] **without service of process or summons upon the attorney general is void, unenforceable**, and shall be set aside upon the attorney general's motion seeking such relief. The attorney general shall intervene in any judicial proceeding affecting a charitable trust when requested to do so by the court having jurisdiction of the proceeding, and may intervene in any judicial proceeding affecting a charitable trust when he determines that the public interest should be protected in such proceeding.

Ohio Rev. Code § 109.25 (emphasis added).[5] Given their failure to join the Ohio Attorney General, Plaintiffs fail to demonstrate a reasonable likelihood of success on the merits. On this ground alone, this Court should deny the motion.

### 3. Although Plaintiffs May Obtain Only Equitable Relief Against the Foundation, Plaintiffs' Relief Is Legal in Nature

Plaintiffs' sole basis for recovery from the Foundation is in equity under 29 U.S.C. § 1132(a)(3). *Fish v. Greatbanc Trust Co.*, 2015 U.S. Dist. LEXIS 76187, *10 (N.D. Ill. June 12, 2015) (Alonso, J.). While Plaintiffs allege that their claim lies in equity, "plaintiff[s'] decision to

---

[5] The absence of the Ohio Attorney General precludes the Foundation from considering settlement because "[p]ursuant to R.C. 109.25, the attorney general is a necessary party in proceedings concerning charitable trusts and represents the interests of trust beneficiaries. *See State ex rel. Lee v. Montgomery* (2000), 88 Ohio St. 3d 233, 236, 724 N.E.2d 1148, 1151." *Dater v. Charles H. Dater Found.*, 2000 Ohio App. LEXIS 5572, *5 (Ohio App. Dec. 1, 2000) (footnote omitted).

4

label [their] claim as one seeking traditional forms of equitable relief is not dispositive." *Local 109 Ret. Fund v. First Union Nat'l Bank*, 57 Fed. Appx. 139, 140 (4th Cir. 2003). Plaintiffs provide no evidence that entitles them to the equitable relief of constructive trust as to the Foundation, while the Foundation's evidence precludes that conclusion.

Plaintiffs advance a damages claim under 29 U.S.C. § 1109 against Lee Morgan. [Second Amended Complaint ¶¶ 14, 122 & 140 Doc. #380]. Equity does not permit an unjust enrichment recovery from the Foundation through Lee Morgan inasmuch as he suffered damages greater than the sums transferred to the Foundation in 2003. *See* Order Fixing Allowed Class 5 Claim Amounts, *In re The Antioch Co.*, No. 3:08-bk-35741, slip op. at 9 (Bktcy. S.D. Ohio Aug. 12, 2009) [Exhibit 5] (listing Lee Morgan losses in excess of $48,000,000). Plaintiffs make no showing that the 2003 Transaction unjustly enriched Lee Morgan so that no constructive trust claim lies against him or the Foundation even though "[a] constructive trust is imposed upon a person in order to prevent his unjust enrichment." Restatement 1st of Restitution, § 160, comment c. Given Lee Morgan's 2003 Transaction losses, Plaintiffs have failed to prove a likelihood of success on their constructive trust claim to redress the alleged unjust enrichment of Lee Morgan. [Second Amended Complaint ¶¶ 147-48, Doc. #380]. On this ground alone, this Court should deny Plaintiffs' motion.

Second, the damages analysis advanced by Plaintiffs' experts is predicated on models that reflect that the ESOP suffered no damage as a result of the 2003 Transaction so that no remedy exists. *Tussey v. ABB Inc.*, 2015 U.S. Dist. LEXIS 89068 (W.D. Mo. July 9, 2015). At $500 per Antioch Company share prior to the 2003 Transaction, which is the value placed by Plaintiffs' expert, Robert F. Reilly, the ESOP had a value of $171,533,470 (205,330 ESOP shares times $500, plus $68,868,470 in non-employer stock ESOP assets). Plaintiff Evolve Bank

5

& Trust's Second Supplemental Responses to Defendants Lee Morgan, Asha Morgan Moran and Chandra Attiken's Second Set of Interrogatories [Exhibit 5]. This sum is less than the ESOP's post-2003 cash distributions of $188,374,868. *Id.* The ESOP was not damaged by the 2003 Transaction. On this ground alone, this Court should deny Plaintiffs' motion.

### 4. Plaintiffs Have Not Demonstrated the Elements of Constructive Trust As to the Foundation

Plaintiffs seek recovery from the Foundation under 29 U.S.C. § 1132(a)(3), which authorizes only "those categories of relief that were typically available in equity," *Sereboff v. Mid Atlantic Med. Servs., Inc.*, 547 U.S. 356, 361 (2006), in "the days of the divided bench." *Great-West Life & Ann. Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002). *Accord US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1544 (2013); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256-57 (1993). In *Knudson*, the Supreme Court held that, at the divided bar, "where the property sought to be recovered or its proceeds have been dissipated so that no product remains, the plaintiff's claim is only that of a general creditor," recoverable at law so that no constructive trust can be imposed in situations such as this. *See Great-West*, 534 U.S. at 213.[6] Plaintiffs pled a constructive trust claim as to the Foundation, but they fail to provide evidence of the claim's elements: (1) "the action generally must seek not to impose personal liability on the defendant, but to **restore** to the [ESOP] **particular funds** or property in the [Foundation's] possession"; (2) an identifiable *res* exists to which Plaintiffs "could claim a legally recognized right;" (3) the ESOP can "**trace its funds** to a specific fund of money;" and, (4) "the funds at issue have not been dissipated" or commingled. *Admin. Comm. of the Wal-Mart Stores, Inc. v. Varco*, 338 F.3d

---

[6] *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000), is not to the contrary. While *Harris Trust* makes clear that a nonfiduciary, such as the Foundation, can be an appropriate ERISA § 502(a)(3) defendant if the nonfiduciary "'knowingly participates' in a fiduciary's violation," *id.* at 248, the Supreme Court in *Harris Trust* did not evaluate whether a constructive trust's strict tracing requirements applied, as it did two years later in *Great-West*.

680, 687-88 (7th Cir. 2003) (emphasis added), *cert. denied*, 542 U.S. 945 (2004). In light of Plaintiffs' failure to provide evidence supporting a reasonable likelihood of success as to these elements, this Court should deny Plaintiffs' motion.

### a. Plaintiffs Seek Money for the ESOP Rather Than Restoration of Plan Assets

Plaintiffs do not seek to restore to the ESOP any plan assets, but rather to use the equitable remedy of constructive trust as a collection device to recover from the Foundation on their hoped-for 29 U.S.C. § 1109 personal damages judgment against Lee Morgan, even though Plaintiffs cannot maintain a §1109 claim against the Foundation. Because the ESOP's damage claim is not subject to imposition of a constructive trust, Plaintiffs fail to demonstrate a likelihood of success on the merits.[7] On this ground, this Court should deny Plaintiffs' motion.

### b. Plaintiffs Provide No Evidence of an Identifiable *Res*

Plaintiffs provide no evidence of an identifiable *res* of $44.6 million as to which the ESOP is entitled to recovery. Since the initial 2003 contributions, the Foundation has donated more than $23.5 million and incurred necessary operating expenses for a total of more than $30 million. Kuhn Aff. ¶¶ 3-15 & Exhibits B-N.[8] As a result of investment returns, and additional contributions by Lee and Vicki Morgan in 2007, *id.* ¶¶ 7 & 16 & Exhibits F & O, the Foundation's trust corpus now approximates $46 million. *Id.* ¶ 15 & Exhibit N.

Assuming *arguendo* both that Plaintiffs prevail against Lee Morgan and that they could prevail on a constructive trust theory against the Foundation (despite the commingling of assets by Lee and Vicki Morgan prior to their joint December 2003 contribution and by the Foundation

---

[7] The Bankruptcy Litigation Counsel in the Antioch Company bankruptcy seeks damages on behalf of the individual Plaintiffs. *See*, *e.g.*, Antioch Company Litigation Trust Agreement [Exhibit 6]. As a result, individual claims of loss are not at issue in this litigation. Additionally, the ESOP claims were retained by the Antioch Company bankruptcy trustee. Notice, *In re The Antioch Co.*, No. 3:08-bk-35741 (Bktcy. S.D. Ohio Feb. 4, 2009) [Exhibit 7].

[8] Morgan family members have received only a *de minimis* stipend. Kuhn Aff. ¶¶ 3-15 & Exhibits B-N.

7

since the 2003 and 2007 contributions), Plaintiffs identify no *res* on which a constructive trust could be imposed so that this Court should deny Plaintiffs' motion on this ground alone.

In the alternative, to the extent that Plaintiffs may assert that a *res* can be identified based on the remainder of funds contributed that have not been distributed to charities, spent to date and earned by the Foundation's investment acumen, a constructive trust could apply only to approximately $14.6 million. Illuminating is an illustration to Restatement (Third) of Restitution & Unjust Enrichment § 65 ("Restatement"):

> By means of a one-time "earmark," the U.S. Congress appropriates $500,000 to University. The funds are disbursed accordingly by the U.S. Treasury. Taxpayers commence a lawsuit to challenge the constitutionality of the appropriation, arguing that the funds are being spent to support religious education. If the appropriation is in fact unconstitutional, University is under a prima facie obligation to restore $ 500,000 to the U.S. Treasury. (Restitution in favor of the United States is authorized by analogy to the rules of § 6 and §§ 17--19.) Before Taxpayers' suit is filed, however, University spends the funds in question by making a series of grants to other nonprofit institutions--expenditures that it would not have made without the funding in question. If University acted in the reasonable belief that the federal appropriation and its own subsequent application of the funds were legally authorized, University has a defense to liability by the rule of this section. (Whether Taxpayers have standing to sue is a question outside the scope of this Restatement.)

Restatement § 65, Comment c, Illus. 10. This Restatement illustration is based on *Laskowski v. Spellings*, 443 F.3d 930 (7th Cir. 2006), *rev. on other grounds sub nom. Univ. of Notre Dame v. Laskowski*, 551 U.S. 1160 (2007), in which Judge Posner reasoned:

> The recipient of the money sought to be recovered may not have known or have had reason to know that it was receiving money by mistake, and may have relied to its detriment on its honest and reasonable belief that it was legally entitled to the money. Notre Dame did rely to its detriment--it gave the money away. Whether it relied reasonably is a separate question. If it was merely an innocent conduit, neither knowing nor having reason to know that it was receiving an unlawful grant, it would not have to make restitution.

*Id.* at 936. In addition to reduction of Plaintiffs' claims by the Foundation's historic contributions and expenses, the profit earned by the Foundation is not subject to a constructive trust because

"[a] constructive trustee who has improved the constructive trust property or defrayed necessary expenses in good faith has a claim in unjust enrichment against the equitable owner by the rule of § 27, remediable where appropriate via equitable lien (§ 56)." Restatement § 55, Comment l. *See also Namow Corp. v. Eggar*, 99 Nev. 590, 593 (Nev. 1983); *Johnson v. Stull*, 303 S.W.2d 110, 120 (Mo. 1957). As a result, a constructive trust can apply to no more than $14.6 million of the Foundation's assets. On this ground, this Court should deny Plaintiffs' motion as drafted.

### c. Plaintiffs Cannot Trace the ESOP's Funds to the Foundation's Assets

Plaintiffs do not seek to trace the ESOP's funds to the Foundation, but rather purport to trace funds paid by The Antioch Company in redeeming Lee Morgan's stock to the Foundation. While this Court held that "the funds that plaintiffs seek are allegedly traceable to the Morgans' alleged breach of fiduciary duty to the plaintiffs and the ESOP in which the plaintiffs are participants," *Fish*, 2015 U.S. Dist. LEXIS 76187, at *11-12, this Court was not required to address the Seventh Circuit's holding in *Varco* that the ESOP must be able to "**trace its funds** to a specific fund of money" held by the Foundation. *Varco*, 338 F.3d at 688 (emphasis added). Because Plaintiffs do not seek to trace the ESOP's funds to the Foundation, this Court should deny Plaintiffs' motion.

### d. No Constructive Trust Can Be Imposed on the Foundation's Assets Due to Commingling of Funds

Plaintiffs recognize that if funds are commingled, they do not "remain[] equitably traceable." [Plaintiffs' Memorandum at 6, Doc. #461, PageID #16439]. *See also id.* at 2 [*id.*, PageID #16435]. Plaintiffs recognize controlling law. *Gutta v. Std. Select Trust Ins. Plans*, 530 F.3d 614, 620 (7th Cir. 2008) (where restitution is not based on equitable lien by agreement, strict tracing rules apply); *Strauss v. Milwaukee Cheese Wis.*, 112 F.3d 845, 846 (7th Cir. 1997)

("inability to trace the commingled proceeds, coupled with the fact that other creditors could have levied on the money while it was in the firm's hands, dooms such a contention."); *Local 109 Ret. Fund v. First Union Nat'l Bank*, 57 Fed. Appx. 139, 140-41 (4th Cir. 2003) (pension trustees' claim against bank sought legal remedy where funds were commingled). The evidence demonstrates that the funds contributed to initially fund the Foundation were commingled by Lee Morgan and non-party Vicki Morgan after the 2003 Transaction, but prior to the Foundation's initial funding. Holthaus Dep. Ex. 552, at TAC-CC-0234190 [Exhibit 4]. The evidence further demonstrates that a 2007 contribution was commingled with the Foundation's funds. Kuhn Aff. ¶¶ 7 & 16 & Exhibits F & O. As Plaintiffs recognized in their motion, Vicki and Lee Morgan's commingling of the funds contributed in 2003 to the Foundation and the Foundation's commingling of the 2007 contribution with its other assets "thwart[] Plaintiffs' ability to recover" on a constructive trust claim against the Foundation. [Plaintiffs' Memorandum at 2, Doc. #462, PageId #16450]. On this ground alone, this Court must deny Plaintiffs' motion.

### B. Plaintiffs Have an Adequate Remedy at Law in This Action

Plaintiffs fail to inform this Court that the ESOP has an adequate remedy at law, *viz.*, damages to the ESOP under ERISA § 409, *codified at* 29 U.S.C. § 1109, payable by the alleged fiduciary defendants, including Lee Morgan, who can (if culpable) be required to pay any sums awarded. *Joseph v. Carnes*, 566 Fed. Appx. 530, 534-35 (7th Cir. 2014). Inasmuch as Plaintiffs treat their 29 U.S.C. § 1132(a)(3) claim against the Foundation as derivative of the putative liability of Lee Morgan, Plaintiffs have an adequate remedy at law by a recovery from him. This Court should deny Plaintiffs' preliminary injunction motion on this ground alone.

Further, Plaintiffs neither allege nor provide evidence that any of the individual defendants lack the financial resources to pay any judgment that might be awarded against them

10

in favor of the ESOP under any theory. In light of the absence of "allegations that [Lee Morgan] or any of the parties . . . are insolvent. . . ., there is an adequate remedy at law." *Sotheby's Int'l Realty Affiliates LLC v. Mlj Holdings, LLC*, 2012 U.S. Dist. LEXIS 96560, *10 (N.D. Ill. July 12, 2012). On this ground, this Court should deny Plaintiffs' motion.

    **C.    Plaintiffs Will Suffer No Irreparable Harm by Denial of Their Preliminary Injunction Motion**

Inasmuch as the Foundation has not materially changed its charitable conduct over the past ten years, Plaintiffs will suffer no irreparable harm by this Court's denial of Plaintiffs' preliminary injunction motion. While Plaintiffs assert that they "present sworn testimony from Lee Morgan . . . that $45.6 million [sic][9] of the proceeds he received from the Transaction was used to gratuitously fund the Foundation," Motion at 10 [Doc. #462], the evidence demonstrates (1) that at least one nonparty contributed to the initial $44,600,000 funding of the Foundation in December 2003, Holthaus Dep. Ex. 552, at TAC-CC-0234190 [Exhibit 4], thereby defeating Plaintiffs' constructive trust claim due to commingling,[10] as Plaintiffs acknowledge,[11] and (2) that, despite making charitable distributions of more than $23.5 million since 2003, the Foundation had net assets in excess of $44.6 million at the end of 2014, *i.e.*, more than the sum

---

[9] The original contributions in 2003 totaled $44,600,000. Kuhn Aff. ¶ 4 & Exhibit C.

[10] *See*, *e.g.*, *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1879 (2013) ("traditionally speaking, relief that sought a lien or a constructive trust was legal relief, not equitable relief, unless the funds in question were 'particular funds or property in the defendant's possession.' [*Great-West Life & Annuity Ins. Co. v. Knudson*,] 534 U.S., at 213, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002) (emphasis added)."); *Gutta v. Std. Select Trust Ins. Plans*, 530 F.3d 614, 620 (7th Cir. 2008) (where restitution is not based on equitable lien by agreement, strict tracing rules apply); *Strauss v. Milwaukee Cheese Wis.*, 112 F.3d 845, 846 (7th Cir. 1997) ("inability to trace the commingled proceeds, coupled with the fact that other creditors could have levied on the money while it was in the firm's hands, dooms such a contention."); *Local 109 Ret. Fund v. First Union Nat'l Bank*, 57 Fed. Appx. 139, 140-41 (4th Cir. 2003) (pension trustees' claim against bank sought remedy at law where funds were commingled).

[11] In the memorandum supporting their preliminary injunction motion, Plaintiffs concede that commingling of Lee Morgan's funds from the 2003 Transaction prior to funding the Foundation or commingling by the Foundation with other contributions defeats their constructive trust claim. [Plaintiffs' Memorandum at 2, Doc. #461, PageID #16435]; [*id.* at 6, Doc. #461, PageID #16439].

that Plaintiffs claim. Foundation's 2014 Form 990 [Plaintiffs' Memorandum Exhibit F, Doc. #462-6, PageID #16481].

As its 2014 Form 990 discloses, the Foundation distributed nearly $2.5 million in 2014 to numerous entities, including $1,000,000 to the Antioch College Continuation Corporation. [*Id.*, PageID ##16535-46]. The sole "factual" basis for Plaintiffs' claim of irreparable harm, *viz.*, the Foundation's $6,000,000 pledge to Antioch College that is to be paid over five years, adheres to a funding approach consistent with the Foundation's historic practice.[12] Kuhn Aff. ¶¶ 3-15 & 17 & Exhibits B-N. In sum, this Court's denial of the requested preliminary injunction motion puts Plaintiffs at no risk of harm inasmuch as no evidence exists that the Foundation has altered its historic charitable grant practices, particularly given that the Foundation's assets exceed those to which Plaintiffs can lay claim.

Plaintiffs implicitly recognize that the Foundation's conduct poses no risk of irreparable injury inasmuch as they delayed filing their motion for more than five years after first seeking to add the Foundation as a party, and for more than one year after adding the Foundation as a defendant. This Court should reject Plaintiffs' litigation ploy.

### D. Plaintiffs' Requested Preliminary Injunction Will Irreparably Injure the Foundation Whose Objective Is to Make Charitable Distributions

Plaintiffs' requested preliminary injunction will irreparably injure the Foundation in two ways: (1) the proposed preliminary injunction would preclude the Foundation from incurring defense costs to address Plaintiffs' misguided claims against the Foundation so that Plaintiffs could obtain a litigation advantage;[13] and, (2) the proposed preliminary injunction will preclude

---

[12] This Court should strike Exhibit H to the Plaintiffs' Memorandum as an unsworn hearsay Internet page. Fed. R. Evid. 802.

[13] The Foundation is no longer being defended through insurance so it necessarily must incur fees and expenses from its assets. This factor not only dictates denial of Plaintiffs' preliminary injunction motion as drafted, but also

12

the Foundation from fulfilling its charitable purpose to advance the public interest by exercising its discretion to provide support to worthy entities in St. Cloud, Minnesota, Yellow Springs, Ohio and Portland, Oregon. Each of these irreparable injuries to the Foundation (and the public interest) mandates denial of the preliminary injunction.

In asking that the Foundation not incur expenses greater than 110% of 2014 expenses, Plaintiffs ask this Court to ignore that Plaintiffs' suit requires the Foundation to incur defense costs it did not incur in 2014 when its limited litigation costs were still covered by insurance. Given Plaintiffs' expressed opposition to bifurcation, which would limit the need for the Foundation to incur defense costs, Plaintiffs seek to maximize expense to the Foundation. On this ground alone, this Court should deny Plaintiffs' motion for a preliminary injunction.

No less seriously, Plaintiffs ignore that the Foundation's purpose is to further charitable purposes. Kuhn Aff. ¶ 2 & Exhibit A. Plaintiffs ask this Court to issue a preliminary injunction to frustrate the Foundation's purpose. This Court should deny Plaintiffs' motion to preclude this irreparable harm to the Foundation.

**E.      Plaintiffs' Requested Preliminary Injunction Contravenes the Public Interest Which Is Advanced by the Foundation's Grant of Charitable Gifts**

Plaintiffs' requested preliminary injunction seeks to disrupt the operations of the recipients of the entities, generally charities, that the Foundation has funded by individual gifts and multiple-year contributions. For example, the Foundation's 2014 Form 990 identifies the entities that benefitted from the Foundation's charitable contributions. [Plaintiffs' Memorandum, Doc. #462-6, PageID ##16535-46]. The recipients of the Foundation's assets advance the public interest by providing services that otherwise might go unfulfilled. Plaintiffs' preliminary

---

supports the grant of the Foundation's motion to bifurcate. This Court should note that Plaintiffs' counsel has advised that counsel did not intend to limit the Foundation's duty to defend itself.

injunction seeks to disrupt these charitable activities in derogation of the public interest. On this ground as well, this Court should deny Plaintiffs' motion for a preliminary injunction.

## IV. Plaintiffs Must Post a Bond

Federal Rule of Civil Procedure 65 provides in relevant part:

(c) Security. **The court may issue a preliminary injunction** or a temporary restraining order **only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained**.

Fed. R. Civ. P. 65(c) (emphasis added). Plaintiffs requests this Court to issue a preliminary injunction without requiring a bond. The Seventh Circuit rejects such requests as inconsistent with the language and purpose of Rule 65(c). *See*, *e.g.*, *Habitat Educ. Ctr. v. United States Forest Serv.*, 607 F.3d 453 (7th Cir. 2006). In affirming a bond of 20% of an amount frozen, the Seventh Circuit held that "an injunction bond is intended to secure against possible as well as certain costs." *Id.* at 459. Moreover, "when setting the amount of security, district courts should err on the high side." *Mead Johnson & Co. v. Abbott Laboratories*, 201 F.3d 883, 888 (7th Cir. 2000).

Plaintiffs seek to restrain the Foundation's use of more than $44.6 million for an indeterminate term based primarily on conclusory allegations and incomplete evidence.[14] This Court, following the Seventh Circuit's guidance in *Mead Johnson*, should impose a bond of 20% of the more than $44.6 million in funds that Plaintiffs seek to attach by their prejudgment attachment, *i.e.*, $9 million, if *arguendo* the Court issues the preliminary injunction that Plaintiffs request.

---

[14] Plaintiffs' Exhibit C, Exhibit No. 381 at a March 15, 2012 Lee Morgan deposition taken more than two years before the Foundation was added as a party, is incomplete. The complete document, Holthaus Exhibit No. 552, at TAC-CC-0234190 [Exhibit 4], demonstrates the commingling of assets by Lee and Vicki Morgan prior to the initial $44,000,000 funding of the Foundation so that constructive trust is not an available remedy against the Foundation.

14

## V.     Conclusion

For the foregoing reasons, this Court should deny Plaintiffs' preliminary injunction motion. Instead, this Court should bifurcate the November 2, 2015 trial so that the trial proceeds as to Plaintiffs' claims against the individual defendants, while scheduling the trial against the Foundation, if one should prove necessary, for shortly after the Supreme Court issues its decision in *Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Benefit Plan*, 135 S. Ct. 1700 (2015), which should clarify the law as to the notion of an identifiable *res* for purposes of imposition of a constructive trust under ERISA.

Respectfully submitted,

By: s/Jack F. Fuchs/s
Thompson Hine LLP
Counsel for The Morgan Family Foundation
312 Walnut Street, Suite 1400
Cincinnati, OH 45202
(513) 352-6741
Facsimile: (513) 241-4771
*Jack.Fuchs@ThompsonHine.com*

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2015, I caused a true and correct copy of the foregoing to be filed electronically using the Court's CM/ECF system and to thereby be served upon all registered participants identified in the Notice of Electronic Filing in this matter on this date. This document is available for viewing and downloading on the CM/ECF system.

By: s/Jack F. Fuchs/s