UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BONNIE FISH, CHRISTOPHER MINO, MONICA LEE WOOSLEY, LINDA D. HARDMAN and EVOLVE BANK & TRUST,<br><br>Plaintiffs,<br><br>vs.<br><br>GREATBANC TRUST COMPANY, LEE MORGAN, ASHA MORAN, CHANDRA ATTIKEN and MORGAN FAMILY FOUNDATION,<br><br>Defendants. | Case No. 1:09-cv-01668<br><br>Honorable Jorge L. Alonso<br><br>Honorable Magistrate Maria Valdez |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION IN LIMINE TO EXCLUDE THE FOURTH AFFIRMATIVE
OPINION OF RICHARD C. MAY AND THE FIRST AFFIRMATIVE OPINION OF
GREGORY K. BROWN**

Plaintiffs respectfully request that the Court exclude the fourth affirmative opinion Defendants' Expert, Richard C. May (the "May Report"), and the first affirmative opinion of Defendants' Expert, Gregory K. Brown (the "Brown Report"). In his "Opinion 4," May claims that: "The 2003 transaction was not a transaction between the ESOP and the Non-ESOP selling shareholders, in economic substance or otherwise." May Report at 32 (the "Fourth Opinion").[1] Brown's first affirmative opinion similarly and redundantly claims that "[t]he ESOP did not purchase any shares from the selling shareholders in the Transaction. The ESOP was not a party to the Transaction." Brown Report at 9-10 (the "First Opinion").[2]

---

[1] *See* Doc. No. 480-9, Ex. I (the "May Report").
[2] *See* Doc. No. 480-12, Ex. L (the "Brown Report").

1

As set forth below, May's Fourth Opinion is inadmissible for at least three reasons. First, May's Fourth Opinion constitutes an improper legal opinion regarding the meaning of the term "transaction" under the Employee Retirement Income Security Act of 1974 ("ERISA"). Second, May's analysis does not purport to support this Fourth Opinion, but rather relates to a different question that has no relevancy to any issue in this case. Third, May does not provide any evidence or analysis that actually supports his Fourth Opinion.

With respect to Brown's First Opinion, it likewise constitutes an improper legal opinion regarding whether a prohibited transaction occurred under ERISA § 406. Alternatively, it is needlessly cumulative under Federal Rule of Evidence 403.

As such, May's Fourth Opinion and Brown's First Opinion, and their corresponding analyses, are inadmissible pursuant to Federal Rule of Evidence 702, as interpreted by this court and the United States Supreme Court, in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

## BACKGROUND

May's Fourth Opinion and Brown's First Opinion relate to the transaction at issue in this case that occurred in 2003 (the "2003 Transaction") which left the pre-existing Antioch Company ("Antioch") employee stock ownership plan (the "ESOP") owning 100 percent of all Antioch stock.[3] Prior to the 2003 Transaction, the ESOP owned 205,330 shares of Antioch common stock, which represented 42.6 percent of the outstanding Antioch common stock. The 2003 Transaction was designed to repurchase the remaining 57.1 percent of outstanding Antioch shares—which were held by the Morgan family (including Defendants Lee Morgan and Asha Morgan Moran,

---

[3] May has been paid at least $350,000 in connection with his report as of June 2014, and admits to charging more but cannot recall how much more he has billed. May Dep. 97:2-99:6. Brown has been paid approximately $76,000 in connection with his report, and has acknowledged he has charged more, though he too does not recall how much more has charged. Brown Dep. 20:25-21:5, attached as Exhibit A.

individually and as Trustee for certain Morgan Family Trusts) and other shareholders—thus leaving the ESOP as the sole shareholder of Antioch stock.

The 2003 Transaction was financed by the use of the Antioch's cash and borrowings, and shares of stock were exchanged for cash or a combination of cash, notes and warrants. Defendant GreatBanc Trust Company ("GreatBanc") was engaged to serve as Trustee for the ESOP with respect to the 2003 Transaction, and had discretionary authority on behalf of the ESOP. Defendants Lee Morgan, Asha Morgan Moran, and Chandra Attiken remained on the ESOP Advisory Committee. Pursuant to the Plan documents, they were "named fiduciaries with authority to control and manage the operation and administration of the Plan."[4] A condition to closing the 2003 Transaction was that the ESOP Trustee had to decline to sell Antioch shares, which the GreatBanc did on December 15, 2003. On December 15, 2003, each of the non-ESOP shareholders tendered their shares to the Company. The total number of shares held by the ESOP remained unchanged from the pre-transaction number of 205,330.

## ARGUMENT

"[J]udges have broad discretion in ruling on evidentiary questions during trial or before on motions *in limine*." *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). "The power to exclude evidence *in limine* derives from this Court's authority to manage trials." *Mintel Int'l Grp., Ltd. v. Neergheen*, 636 F. Supp. 2d 677, 682 n.1 (N.D. Ill. 2009) (citing *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984)). Evidence, including expert reports and the opinions they plan on offering at trial, may be excluded *in limine* if they are "clearly inadmissible." *Id.* and 682-83.

Parties may only introduce relevant evidence at trial. Fed. R. Evid. 402. The Federal Rules define relevant evidence as "having any tendency to make the existence of any fact that is

---

[4] Relevant portions of the Plan documents are attached hereto as Exhibit B.

3

of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.*

> With respect to expert testimony, Federal Rule of Evidence 702 provides:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), the Supreme Court established a framework for determining whether proffered expert testimony meets the standard established by Rule 702. "*Daubert*, as extended to all expert testimony including non-scientific expert testimony, requires the district court to perform the role of gatekeeper and to 'ensure the reliability and relevancy of expert testimony.'" *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 607 (7th Cir. 2006) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)). As interpreted by the Seventh Circuit, *Daubert* requires a two-step analysis: *first,* the District Court must determine whether the expert testimony is reliable, and *second,* the Court must determine whether the expert testimony would be "helpful" to the trier of fact in understanding the evidence or in determining a fact in issue. *Cummins v. Lyle Industries,* 93 F.3d 362, 367–68 (7th Cir. 1996); *see also Chapman v. Maytag Corp.*, 297 F.3d 682, 686 (7th Cir. 2002) (recognizing this two-step analysis must be performed before admitting expert testimony under Rule 702); *Ervin v. Johnson & Johnson, Inc.,* 492 F.3d 901, 904 (7th Cir. 2007) ("[T]he expert's reasoning or methodology underlying the testimony must be scientifically reliable . . . and the testimony must assist the trier of fact to understand the evidence or to determine a fact in issue.").

### A. May's Fourth Opinion is inadmissible expert testimony.

May's Fourth Opinion asserts that the 2003 Transaction "was not a transaction between the ESOP and the Non-ESOP selling shareholders, in economic substance or otherwise." May Report at 32. This opinion is improper for at least three reasons: (i) it is an improper legal opinion; (ii) the analysis provided in support thereof is not relevant to the Fourth Opinion or any other issue in this case; and (iii) it is unsupported by any evidence or analysis.

#### 1. May's Fourth Opinion is an improper legal opinion.

"[E]xpert testimony as to legal conclusions that will determine the outcome of the case is inadmissible." *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) (citing *United States v. Sinclair*, 74 F.3d 753, 757 n. 1 (7th Cir. 1996)). By opining as to whether the 2003 Transaction constitutes a "transaction" between the ESOP and the Non-ESOP shareholders, May offered an improper opinion on a key *legal* question that will determine, in part, the outcome of this case: whether the 2003 Transaction constitutes a prohibited transaction in violation of ERISA § 406. Specifically, Plaintiffs maintain that the 2003 Transaction was a prohibited transaction, in violation of ERISA § 406(a), 29 U.S.C. § 1106(a), because it was a "transaction" between an employee benefit plan (the ESOP) and parties in interest (including individual Defendants Lee Morgan, Asha Morgan Moran, and Chandra Attiken, who were fiduciaries to the ESOP, and thus, parties in interest under ERISA § 3(14)). *See*, *e.g.*, Plaintiffs' Second Amended Complaint, ¶¶ 126-135 (Doc. No. 380).

Although the ESOP did not directly purchase Antioch shares from these parties in interest, ERISA recognizes that prohibited transactions may occur *indirectly* between a plan and a party in interest. *See* 29 U.S.C. § 1106(a)(1)(A) ("A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct *or indirect* … sale or exchange, or leasing, of any property between the plan and a party in interest.")

5

(emphasis added). In this instance, by agreeing that the 2003 Transaction was fair and by agreeing not to tender the ESOP shares as part of the 2003 Transaction, the ESOP fiduciaries caused the ESOP to engage in the 2003 Transaction, which constituted an indirect sale of control of Antioch stock from parties in interest (who previously were the beneficial owners of 46.5% of all Antioch shares) to the Plan (which previously held 42.8% of all Antioch shares and subsequently held 100% of all Antioch shares). Indeed, the Seventh Circuit has already recognized the legitimacy of Plaintiffs' prohibited transaction claims in this case, when it found that "[t]he economic substance of the transaction was that the Plan would buy Antioch stock (indirectly) from the Morgan family and other shareholders." *Fish v. GreatBanc Trust Co.*, 749 F. 3d 671, 675 (7th Cir. 2014).[5]

By offering an opinion that the 2003 Transaction "was not a transaction between the ESOP and the Non-ESOP selling shareholders" (May Report at 32), May improperly construed the meaning of "transaction" under ERISA, including by implicitly (and improperly) concluding that an "indirect" transaction cannot qualify as a "transaction." Because the question of whether the 2003 Transaction qualifies as an "indirect" transaction between the ESOP and parties in interest is a question of law that will determine the outcome of Plaintiffs' prohibited transaction claim, May's Fourth Opinion is improper under clear Seventh Circuit precedent. *See, e.g.*, *Sinclair*, 74 F.3d at 757 n.1; *Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 900 (7th Cir. 1994) ("The meaning of federal regulations is not a question of fact, to be resolved by the jury after a battle of experts. It is a question of law, to be resolved by the court").

---

[5] Courts recognize this sort of *indirect* transaction qualifies as a prohibited transaction. *See, e.g.*, *Chesemore v. Alliance Holdings, Inc.*, 886 F. Supp. 2d 1007, 1047 (W.D. Wisc. 2012) (finding an indirect prohibited transaction where trustees knew that an ESOP acquired shares from a party-in-interest in two steps); *Neil v. Zell*, 677 F. Supp. 2d 1010, 1027-28 (N.D. Ill. 2009) (finding an indirect prohibited transaction where an employer purchased shares from inside shareholders that were later redeemed along with the shares of public shareholders in a merger leaving the ESOP as the sole shareholder); *Sandoval v. Simmons*, 622 F. Supp. 1174, 1213 (C.D. Ill. 1985) (finding an indirect prohibited transaction where a fiduciary voted not to tender ESOP shares in response to a stock purchase offer).

May's deposition testimony further demonstrates that May is not qualified to opinion on the meaning of the term "transaction" under ERISA. *See Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 901 (7th Cir. 1994) ("A district judge should assure himself, before admitting expert testimony, that the expert knows whereof he speaks."). May testified that (1) he was not a lawyer, May Dep. 72:24-25, (2) he is not familiar with ERISA § 406, *id.* at 72:13, (3) he could not answer whether ERISA prohibits both indirect and direct transactions, *id.* at 81:10-82:1, and (4) to the extent he was aware that ERISA prohibited certain transaction, it was "from a layman's standpoint." *Id.* at 73:2-7; *see also id.* at 85:6-17; 88:5-13 (Q. Does any part of that response or did you intend for any part of that response from Dick May's perspective to deal with the prohibited transaction statute of ERISA? A. I'm not qualified to see how it would. I mean, I have the competency to determine whether there's a different in the underlying economic substance, not whether it applies to ERISA, what have you.").[6] In addition, the affirmative opinion appears to have actually been drafted by counsel, and not May, as reflected by the objections lodged during this line of inquiry at May's deposition. *See*, *e.g.* May Dep. 63:24-65:20; 75:14. Accordingly, May's opinion that the 2003 Transaction was not a "transaction" should be excluded.

### 2. The analysis underlying May's Fourth Opinion is irrelevant.

The analysis underlying May's Fourth Opinion also fails to satisfy *Daubert*'s relevancy requirement because it would not "assist[] the [fact-finder] in determining any fact at issue in the case." *Stuhlmacher v. Home Depot U.S.A., Inc.*, 774 F.3d 405, 409 (7th Cir. 2014); *accord, Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) (district court correctly excluded expert testimony which, "on top of consisting of legal conclusions, would have been irrelevant since the issue was not being tried."). Even if May's Fourth Opinion—that "the

---

[6] Relevant portions of the May Deposition are attached hereto as Exhibit C.

2003 Transaction was not a transaction between the ESOP and the Non-ESOP selling shareholders," (May Report at 32)—was not an improper legal opinion and even if that opinion, on its face, was relevant to this case, nothing in May's analysis relates to that opinion.

May's report immediately rephrased his opinion in a manner that makes clear that May was considering a very different—and much more narrow—question: "whether Antioch's Transaction structure … was in economic substance akin to a direct purchase by the ESOP of the same shares." May Report at 32. To answer this question, he poses two additional questions, none of which relate to whether a transaction actually occurred or not. *Id.*[7] The remainder of the analysis in support of May's Fourth Opinion is limited to addressing this narrow question. *See also*, May Report at 32-36 (comparing the "Actual Transaction" to a "Hypothetical Direct ESOP Purchase").

May's focus on the economic similarities or differences between the 2003 Transaction and a "Hypothetical Direct ESOP Purchase" is a red herring, as even if the transactions were economically dissimilar, such a conclusion would not bear on whether the economic substance of the actual 2003 Transaction nonetheless constituted a transaction, direct or indirect, between the ESOP and parties in interest. Notably, May never states that a company repurchase cannot constitute an indirect transaction between an ESOP and non-ESOP shareholders. Indeed, May concedes that both types of transaction result in "a 100 percent ESOP owned company," (May Report at 32), which is the material economic substance of the transactions that renders this an

---

[7] May claims the two questions he is actually answering are (1) "if the ESOP had borrowed the required proceeds from the Company and then purchased the non-ESOP shares directly from the selling shareholders, would the economics for the ESOP or its participants have been substantially similar to Actual Transaction?"; and (2) "Because the ESOP ultimately ended up owning 100 percent of the Company, was the Transaction effectively an 'indirect transaction' between the ESOP and sellers with the same economic consequences as if the ESOP itself had purchased the shares from the sellers in a hypothetical transaction that in all other material ways mirrored the Actual Transaction …?" (May Report at 32) As is plainly evident from the face of these questions, neither of them have any relevancy as to whether a transaction between the ESOP and the selling shareholders actually occurred.

"*indirect* … sale or exchange … of any property between the plan and a party in interest." ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A). Further, when confronted about the disconnect between his analysis and his opinion, May admitted the questions he was attempting to answer as part of his analysis had nothing to do with his opinion. *See* May Dep. 62:15-63:5 (Q. Do you see where you say "The economic substance of the 2003 actual or redemption transaction was materially different than if the ESOP had borrowed money and purchased the shares directly from the selling shareholders"? Did I read that correctly? A. You read that correctly but that's not my opinion. My opinion is Opinion 4."). On this basis alone, May's Fourth Opinion is a sham.

Moreover, although May purports to compare his "Hypothetical Direct ESOP Purchase" to the "actual" 2003 Transaction, *e.g.* May Report at 32, in reality, he compares his "Hypothetical Direct ESOP Purchase" to another *hypothetical*. Specifically, he considers a generic company redemption of all outstanding non-ESOP shares that ignores many of the key characteristics that make the *actual* 2003 Transaction an indirect prohibited transaction, including the fact that GreatBanc, as ESOP Trustee, and the other fiduciaries named as Defendants in this case facilitated the 2003 Transaction by opining that the transaction was fair and by agreeing not to tender the ESOP's shares.

Because the economic similarities between two hypothetical transactions have nothing to do with whether the actual 2003 Transaction constituted an indirect transaction between the ESOP and parties in interest, this testimony should be excluded as irrelevant.

       3.       **May's Fourth Opinion is inadmissible because it is unsupported by fact.**

An expert must "substantiate his opinion" with sufficient facts. *Huey v. United Parcel Serv., Inc.*, 165 F.3d 1084, 1087 (7th Cir. 1999) (citing *Minasian v. Standard Chartered Bank, plc*, 109 F.3d 1212, 1216 (7th Cir. 1997)). Should the expert fail to meet this requirement, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion

proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). As explained in Section B, *supra*, May fails to provide any facts, evidence, or analysis in support of his Fourth Opinion. Indeed, the "evidence" he cites in support of the Fourth Opinion is nothing more than graphs, charts, and explanatory footnotes he creates on his own. For this additional reasons, the Fourth Opinion should be excluded. *See Huey*, 165 F.3d at 1087 ("an expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.") (citing *Mid–State Fertilizer Co. v. Exchange National Bank*, 877 F.2d 1333, 1339 (7th Cir.1989)).

**B.     Brown's First Opinion is inadmissible expert testimony.**

In his First Opinion, Brown concludes that "[t]he ESOP did not purchase any shares from the selling shareholders in the Transaction. The ESOP was not a party to the Transaction." Brown Report at 10. This opinion is inadmissible because (1) it is an improper legal opinion, and (2) even if relevant, it is needlessly cumulative of the evidence in this case.

**1.     Brown's First Opinion constitutes an improper legal opinion.**

As set forth above, ERISA recognizes that prohibited transactions may occur *indirectly* between a plan and a party in interest. *See* 29 U.S.C. § 1106(a)(1)(A) ("A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct *or indirect* … sale or exchange, or leasing, of any property between the plan and a party in interest.") (emphasis added). Case law recognizes various examples of indirect prohibited transactions, including when, similar to the case at bar, fiduciaries decline to tender ESOP shares in connection with a transaction that benefits non-ESOP selling shareholders. *See*, *e.g.*, *Sandoval*, 622 F. Supp. at 1213 (finding an indirect prohibited transaction where a fiduciary voted not to tender ESOP shares in response to a stock purchase offer). Thus, to the extent Brown is suggesting that a prohibited transaction did not take place, it is plainly a legal conclusion that must be excluded from trial. Whether a prohibited transaction occurred under

10

ERISA § 406 is a pure legal question for the Court. Brown's first affirmative opinion is designed to suggest that such a transaction did not occur, and thus, should be stricken at trial.

### 2. Brown's First Opinion is inadmissible under Rule 403.

The court must bar evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; *see also, LaSalle Nat. Bank v. Massachusetts Bay Ins. Co.*, 1997 WL 211231, at *2 (N.D. Ill. Apr. 23, 1997) ("Rule 403 of the Federal Rules of Evidence provides that '[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed ... by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.' … '[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to ... avoid needless consumption of time.'") (citing *United States v. Kizeart,* 102 F.3d 320, 325 (7th Cir. 1996)).

Here, the only potential relevance of Brown's testimony is that it is based on facts or evidence that purportedly show the ESOP was not a direct party to the 2003 Transaction. If that is the case, his purported expertise is of no value to the Court; it is needlessly cumulative of evidence in this case that speaks for itself. It is the Court's role, and not a purported expert, to interpret this evidence.

### II. CONCLUSION

For the reasons stated here, Plaintiffs respectfully request the Court enter an order excluding from trial the Fourth Opinion in the Report submitted by Defendants' expert, Robert C. May, and the First Opinion in the Report submitted by Defendants' expert, Gregory K. Brown.

DATED this 15th day of October, 2015.

By /s/ David J. Ko
Keller Rohrback L.L.P.
David J. Ko
1201 Third Avenue, Suite 3200
Seattle, Washington 98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384
dko@kellerrohrback.com

Gary A. Gotto
Gary D. Greenwald
James A. Bloom
3101 North Central Avenue, Suite 1400
Phoenix, Arizona 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822
ggotto@kellerrohrback.com
ggreenwald@kellerrohrback.com
jbloom@kellerrohrback.com

GUIN STOKES & EVANS, LLC
Charles R. Watkins
321 South Plymouth Court, Suite 1250
Chicago, Illinois 60604
Telephone: (312) 878-8391
Facsimile: (312) 263-2942
charlesw@gseattorneys.com

SEBALY SHILLITO + DYER
James Dyer
Jon M. Sebaly
Kathryn M. Mack
40 North Main Street
1900 Kettering Tower
Dayton, Ohio 45402
Telephone: (937) 222-2500
Facsimile: (937) 222-6554
jdyer@ssdlaw.com
jsebaly@ssdlaw.com
kmack@ssdlaw.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 15, 2015, I caused true and correct copies of the foregoing to be filed electronically using the Court's CM/ECF system and to thereby be served upon all registered participants identified in the Notice of Electronic Filing in this matter on this date.  This document is available for viewing and downloading on the CM/ECF system.

                    By:   /s/ David J. Ko