**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BONNIE FISH, et al., | Case No. 09 cv 1668 |
| Plaintiffs, | |
| | Judge Jorge L. Alonso |
| v. | |
| | Magistrate Judge Maria Valdez |
| GREATBANC TRUST COMPANY, et al., | |
| Defendants. | |

**DEFENDANTS LEE MORGAN'S, ASHA
MORAN'S, AND CHANDRA ATTIKEN'S RESPONSE
IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO
EXCLUDE THE FOURTH AFFIRMATIVE OPINION OF RICHARD C.
MAY AND THE FIRST AFFIRMATIVE OPINION OF GREGORY K. BROWN**

Defendants Lee Morgan, Asha Moran, and Chandra Attiken (the "Individual Defendants") submit this Response in Opposition to Plaintiffs' Motion *In Limine* to Exclude The Fourth Affirmative Opinion of Richard C. May And The First Affirmative Opinion of Gregory K. Brown (the "Motion"). In their Motion, Plaintiffs manufacture "improper legal opinions" from May and Brown regarding ERISA § 406 that they do not actually offer, and then ask this Court to exclude the concocted "opinion" from trial. May's actual Fourth Affirmative Opinion and Brown's actual First Affirmative Opinion, however, are appropriate expert opinions that do not constitute ultimate legal conclusions as to whether the 2003 Transaction does or does not violate ERISA § 406. These opinions also satisfy the "sufficient facts or data" requirement of Federal Rule of Evidence 702, and the "low threshold" that Rule 401 sets for establishing relevance. Plaintiffs' Motion should be denied. [1]

---

[1] In the "Background" section of their Motion, even although it is unrelated to the relief they seek, Plaintiffs make a misleading statement about the purported fiduciary roles and responsibilities of the Individual Defendants, necessitating this lengthy footnote to keep the record straight. Plaintiffs allege that at the time of the 2003 Transaction the Individual Defendants "remained on the ESOP Advisory

# I.    ARGUMENT

## A.    May's Fourth Affirmative Opinion Is Admissible Expert Testimony

Plaintiffs argue that May's Fourth Affirmative Opinion should be excluded because purportedly: "(i) it is an improper legal opinion; (ii) the analysis provided in support thereof is not relevant to the Fourth Opinion . . . ; and (iii) it is unsupported by any evidence or analysis." (Motion, at 5). These arguments misconstrue May's Fourth Affirmative Opinion, and fail to provide any basis for excluding it from evidence at trial.

---

Committee" and were "named fiduciaries with the authority to control and manage the operation of the Plan," suggesting that the Individual Defendants had some fiduciary role or responsibility to the ESOP related to the 2003 Transaction. (Motion, at 3). Plaintiffs also state that "[r]elevant portions of the Plan documents are attached," *Id.* at n.4, and go on to allege that "the ESOP fiduciaries caused the ESOP to engage in the 2003 Transaction." (Motion, at 6). These allegations, and the representation that even a single relevant Plan document is attached to the Motion, are demonstrably false. Plaintiffs attach only one incomplete excerpt from a single section (Section 18) of the Plan document effective January 1, 2002, which was *before* the Board of Directors expressly amended the Plan to strip the ESOP Advisory Committee of any and all fiduciary responsibilities related to the 2003 Transaction and place the sole responsibility and discretion with the independent Trustee GreatBanc. *See* The Antioch Company Employee Stock Ownership Plan as Amended and Restated as of January 1, 2002 (Jt. Trial Ex. 3), attached as Exhibit A.

As will be demonstrated at trial, the provisions of the Plan and the related Trust documents irrefutably establish the Advisory Committee had no fiduciary role or responsibility to the ESOP related to the 2003 Transaction, and neither it nor its members could (nor did they) "cause" the ESOP to take any action related to the 2003 Transaction. *See* Amendment No. 1 to the Amended and Restated Plan (Jt. Trial Ex. 39), attached as Exhibit B, at ¶ 1 (". . . the decision whether or not to tender shares of Company Stock to the Company in December 2003 shall be effected by the Trustee [GreatBanc] (without directions from the Committee) based on the Trustee's determination (in the exercise of its reasonable judgment) that such decision is in the best interest of the Plan and the Participants and is in compliance with all applicable requirements of the Code and ERISA);  GreatBanc Trustee Engagement Agreement (Jt. Trial Ex. 14), attached as Exhibit C, at ¶ 3 (noting in relevant part that as Trustee, GreatBanc will: "3. . . . exercise its independent discretionary judgment in connection with the acquisition and custody of Trust assets"); The Antioch Company Employee Stock Ownership Trust Agreement as Amended and Restated as of August 20, 2003 (Jt. Trial Ex. 18), attached as Exhibit D, at Section B (6)(". . . the decision whether or not to tender shares of Company Stock to the Company in December 2003 shall be effected by the Trustee (without directions from the Committee) based on the Trustee's determination (in the exercise of its reasonable judgment) that such decision is in the best interests of the Plan and the Participants and is in compliance with all applicable requirements of the Code and ERISA.")

1.      **May's Fourth Affirmative Opinion Is An Economic and Valuation Opinion, Not A Legal Opinion**

Plaintiffs' first argument for exclusion is that "May offered an improper opinion on a key *legal* question . . . whether the 2003 transaction constitutes a prohibited transaction in violation of ERISA § 406." (Motion, at 5) (emphasis in original). But as clearly evidenced by his written report, May offers no such opinion, whether it is labeled "legal" or otherwise. Rather, May offers an economic opinion comparing the differences of: (1) the 2003 Transaction (which was a Company redemption of all outstanding non-ESOP stock), and (2) a hypothetical transaction that mirrors the structure of the 2003 Transaction in every material way except that the ESOP (instead of the Company) is the entity that purchases all of the non-ESOP shares tendered for cash. *See* May's Fourth Affirmative Opinion, attached as Exhibit E; May Expert Report [Doc. No. 438-5]. In other words, May changes one fact of the 2003 Transaction, and analyzes the resulting economic and valuation differences.[2]

In general, May's opinion is that if the ESOP purchased all of the tendered non-ESOP shares for cash (rather than the Company) – and keeping all other aspects of the 2003 Transaction the same – there would be "significant economic difference[s]" from the 2003 Transaction: (1) dilution for existing participants in the value of the allocated shares of December 31, 2004; (2) loss of approximately $32 million dollars to the total account values of

---

[2] Plaintiffs' misleading characterizations do not stop with the language and substance of May's Fourth Affirmative Opinion. Plaintiffs contend that objections made by Defendants' counsel during May's deposition show the opinion "appears to have actually been drafted by counsel, and not May." (Motion, at 7). This specious assertion is not only wrong, it is disproved by the cited passages – counsel objected to the extent testimony would reveal discussions about trial strategy or how the defense plans to use May's opinion – and the unambiguous sworn testimony from May just a few pages later, which Plaintiffs attach to but fail to cite in their Motion. *See*, May Deposition Transcript ("May Depo."), excerpts attached as Exhibit F, at 86:8-18 (Q. I'm asking you whether or not you intend – you're the one that authored this opinion, correct? A. Correct. Q. So I'm assuming you understand why you've drafted this opinion? A. Yes. I was asked by counsel to look at the economic substance of this transaction, the hypothetical versus the actual transaction. Q. Okay. A. That's what I've done.).

existing participants; (3) loss of $54 dollars per share for participants that left the Company in 2004, and an even greater per-share loss for participants that left the Company in 2005 and 2006; and (4) a debt of $104.6 million owed by the ESOP. *See* May's Fourth Affirmative Opinion, Exhibit E. May offers no "improper legal opinion," but draws solely upon his economic and valuation expertise and his thirty years of experience with ESOP transactions.

During his deposition – including in many of the passages cited by Plaintiffs – May repeatedly corrects Plaintiffs' counsel's attempts to misconstrue his economic/financial opinion as a "legal" one, emphasizing that he is in no way attempting to offer an opinion as to whether the 2003 Transaction does or does not violate ERISA § 406. *See* May Depo., Exhibit F, at 58:15-21 (clarifying his economic analysis that assumed "[i]nstead of the company repurchasing all the non-ESOP shares . . . a portion of those shares are purchased in a leveraged transaction by the trust [ESOP]. And then if just a portion of those shares are purchased by the trust, is it in economic substance different?"); *Id.* at 69:24-70:5 ("I'm not saying there was no transaction. My comparison is there was a 2003 transaction between the non-ESOP selling shareholders and the company. My opinion is that that is a different -- in terms of economic substance, it's a very different transaction than a transaction between the trust [ESOP] and the non-ESOP selling shareholders."); *Id.* at 88:10-15 ("I have the competency to determine whether there's a difference in the underlying economic substance, not whether it applies to ERISA . . . I stand on my analysis. The economics of the two forms of the transaction are materially different"); Motion, at 7 (summarizing how "May testified that (1) he was not a lawyer, May Dep. 72:24-25, (2) he is not familiar with ERISA § 406, *id.* 72:13, (3) he could not answer whether ERISA prohibits both indirect and direct transactions, *id.* at 81:10-82:1, and (4) to the extent he was aware that ERISA prohibited certain transaction [sic], it was from a 'layman's standpoint.' *Id.* at

73:2-7."). Mr. May's Fourth Affirmative Opinion will assist the Court in determining the validity of the defense view that the 2003 Transaction was not a prohibited transaction under ERISA § 406 by providing the Court with evidence of the different economic impact that a direct or indirect transaction with the ESOP would have on the economic value of the ESOP and participant accounts. Mr. May's Fourth Affirmative Opinion draws an economic and valuation conclusion unrelated to any statute or legal analysis or training.

The cases cited by Plaintiffs do not change this conclusion, and are readily distinguishable from the facts of the 2003 Transaction. In *Chesemore v. Alliance Holdings, Inc,* 886 F. Supp. 2d 1007, (W.D. Wis. 2012), the ESOP directly purchased shares at several stages of a transaction, which indisputably did not happen in the 2003 Transaction. *See id.* at 1037-1039, 1047 (holding that § 406 was implicated because "[t]he Trachte ESOP exchanged shares" and "a promissory note").

In *Neil v. Zell,* 677 F. Supp. 2d 1010, 1027-28 (N.D. Ill. 2010), the Court denied a Rule 12(b)(6) motion but did not decide the merits of plaintiffs' alleged "indirect" prohibited transaction, noting in relevant part that in the Tribune transaction – unlike this case – defendants could not be heard to argue "the ESOP was not in fact an indirect purchaser" because it was undisputed the very first step of the transaction was a "\$250 million payment the ESOP made."

In *Sandoval v. Simmons*, 622 F. Supp. 1174 (C.D. Ill. 1985), as succinctly explained by *Wright v. Or. Metallurgical Corp.,* 222 F. Supp. 2d 1224 (D. Or. 2002), the court's holding was only "that when a specific transaction between a third party and a plan fund is proposed to a fund fiduciary and the fiduciary declines to enter into the transaction for self-interested reasons, that decision can trigger liability under § 1106." *Wright*, 222 F. Supp. 2d at 1236, *aff'd*, 360 F.3d 1090 (9th Cir. 2004). Here, there is no allegation and no evidence that the independent Trustee

GreatBanc, as the appropriate plan fiduciary, made the decision to decline the Tender Offer for solely self-interested reasons.

May's Fourth Affirmative Opinion is appropriate expert testimony and does not constitute an improper legal conclusion. Plaintiffs' Motion to exclude this opinion should be denied.

> ### 2. May's Fourth Affirmative Opinion Is Supported By Relevant Analysis and Based On Sufficient Facts and Data

Plaintiffs' second and third arguments for exclusion of May's Fourth Affirmative Opinion also fail. In their second argument, Plaintiffs assert that "nothing in May's analysis relates to [his] opinion" that the "2003 Transaction was not a transaction between the ESOP and the Non-ESOP selling shareholders." (Motion, at 8) (internal quotations omitted). This, of course, is because as explained above, May does not offer that purported legal opinion. Rather, as May explains in the deposition passages that immediately follow those cited by Plaintiffs:

> . . . I would think from my competency standpoint, which is valuation and corporate finance, what I can say is that if somebody purports to me that a transaction, the elements of a transaction can be reshuffled [i.e., making the ESOP the purchaser rather than the Company] but end up with the same economic substance, then I contest that. And that's what I've done . . . from my competency standpoint the 2003 transaction was not a transaction between the ESOP and the non-selling shareholders in an economic substance standpoint because they result in very different outcomes. They're not equivalent.

*See* May Depo., Exhibit F, at 64:22-65:9. May's analysis appropriately supports and is relevant to this economic opinion. As shown in his report, the entirety of his Fourth Affirmative Opinion analyzes the four *factual* and "significant economic difference[s]" of the 2003 Transaction assuming that the ESOP had purchased all non-ESOP shares tendered for cash, as opposed to the Company. *See* May's Fourth Affirmative Opinion, Exhibit E.

Contrary to Plaintiffs' additional and conclusory contention that the economic analysis of May's Fourth Affirmative Opinion "fails to satisfy *Daubert's* relevancy requirement" (Motion, at

7), it not only satisfies the "low threshold that Rule 401 comprehends for establishing that evidence is relevant," but is actually probative of the defense that the record does not support Plaintiffs' prohibited transaction claim. *U.S. v. Boswell*, 772 F.3d 469, 475 (7th Cir. 2014) (internal quotations and citation omitted). His analysis of the substantial economic differences between the 2003 Transaction as it actually occurred and the 2003 Transaction had the ESOP instead of the Company purchased the non-ESOP shares tendered for cash will assist this Court in making its ultimate legal determination whether, pursuant to ERISA § 406, the 2003 Transaction was or was not a "sale, exchange, or leasing of property between the plan and a party in interest." May's Fourth Affirmative Opinion also highlights how the structure of the 2003 Transaction (Company redemption) was more favorable to the ESOP from an economic and financial perspective than the most common alternative structure that could have been chosen (ESOP redemption), which is directly relevant to Plaintiffs' claims that the Defendants violated ERISA § 404 by purportedly failing to exercise "the care, skill, prudence, and diligence under the circumstances then that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

Plaintiffs' third and final argument that May "fails to provide any facts, evidence, or analysis" in support of his Fourth Opinion" lacks credibility. (Motion, at 10). Plaintiffs state that May's Fourth Affirmative Opinion is "nothing more than graphs, charts, and explanatory footnotes." (*Id.*). A review of these graphs, charts, and explanatory footnotes (including Attachment E), shows that May's Fourth Opinion is supported by a multitude of citations to facts and data, which he then analyzes with the reliable principles and methods of an economic and valuation expert. *See* May's Fourth Affirmative Opinion, Exhibit E. May's Fourth

Affirmative Opinion is supported by precisely the type of "sufficient facts or data" required by Federal Rule of Evidence 702.

May's Fourth Affirmative Opinion is supported by relevant analysis and based upon sufficient facts and data. Plaintiffs' Motion to exclude this opinion should be denied.

### B. Brown's First Affirmative Opinion Is Admissible Expert Testimony

Similar to their argument regarding May's Fourth Affirmative Opinion, Plaintiffs fabricate a purported "legal opinion" offered by Greg Brown regarding ERISA § 406 that he does not actually offer, and then ask this Court to exclude it from trial. Plaintiffs inevitably concede as much in their Motion, arguing only that "*to the extent Brown is suggesting* that a prohibited transaction did not take place, it is plainly a legal conclusion that must be excluded from trial," and that "Brown's first affirmative opinion *is designed to suggest* that such a [prohibited] transaction did not occur, and thus, should be stricken at trial." (Motion, at 10-11) (emphasis added). But in his First Affirmative Opinion Brown does nothing more than outline the undisputed structure and facts of the 2003 Transaction, and then opine that according to his vast experience and expertise with ESOP transactions, the purpose, structure, and terms and provisions of the 2003 Transaction were "not uncommon or extraordinary." *See* Brown's First Affirmative Opinion, attached as Exhibit G. Plaintiffs do not contest that *this* opinion (i.e., the one he actually offers) is improper and should be excluded from trial.

Moreover, the First Affirmative Opinion that Brown actually offers is directly relevant to the claims that Plaintiffs will present at trial, and is not cumulative of evidence that will be offered by fact witnesses. For example, as noted above, Plaintiffs allege that the Defendants in this case violated ERISA § 404 by purportedly failing to exercise "the care, skill, prudence, and diligence under the circumstances then that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like

aims." 29 U.S.C. § 1104(a)(1)(B). Brown's experience, expertise, and opinions as to the common purpose, structure, and terms and provisions of ESOP transactions like the one at issue here will assist the Court in determining whether this standard of "care, skill, prudence, and diligence under the circumstances" was or was not satisfied in this case.

Brown's First Affirmative Opinion is appropriate expert testimony that is directly relevant to Plaintiffs' claims and does constitute an improper legal conclusion. Plaintiffs' Motion to exclude this opinion should be denied.

## II.    <u>CONCLUSION</u>

For the reasons stated above, this Court should deny Plaintiffs' Motion *In Limine* To Exclude The Fourth Affirmative Opinion Of Richard C. May And The First Affirmative Opinion Of Gregory K. Brown.

Respectfully submitted,

*/s/Michael L. Scheier*
Michael L. Scheier
Brian P. Muething
Anthony M. Verticchio
Jacob D. Rhode
Keating Muething & Klekamp PLL
One East Fourth Street, Suite 1400
Cincinnati, OH 45202
Phone: (513) 579-6400
Fax: (513) 579-6457
*Counsel for Defendants Lee Morgan, Asha Moran, and Chandra Attiken*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 22, 2015, I caused true and correct copies of the foregoing to be filed electronically using the Court's CM/ECF system and to thereby be served upon all registered participants identified in the Notice of Electronic Filing in this matter on this date. This document is available for viewing and downloading on the CM/ECF system.

*/s/ Michael L. Scheier*

Michael L. Scheier

6395419.1