UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BONNIE FISH, CHRISTOPHER MINO, MONICA LEE WOOSLEY, LINDA D. HARDMAN and EVOLVE BANK & TRUST,<br><br>          Plaintiffs,<br><br>    vs.<br><br>GREATBANC TRUST COMPANY, LEE MORGAN, ASHA MORAN, CHANDRA ATTIKEN and MORGAN FAMILY FOUNDATION,<br><br>          Defendants. | Case No. 1:09-cv-01668<br><br>Honorable Jorge L. Alonso<br><br>Honorable Magistrate Maria Valdez |

## [PROPOSED] FINAL PRETRIAL ORDER

This matter having come before the Court at a pretrial conference held pursuant to Fed. R. Civ. P. ("Rule") 16 on October 28, 2015, and counsel listed below having appeared as counsel for the parties, the following actions were taken:

(1) This is an action under §§ 404, 405, and 406 of the Employee Retirement Income Security Act of 1974 ("ERISA"). Jurisdiction of the court is proper under 28 U.S.C. § 1331 and § 502 of ERISA, 29 U.S.C. § 1132. Jurisdiction is not disputed.

(2) The following stipulations and statements were submitted and are listed below or attached hereto and made a part of this Order:

    (a) A statement of all uncontested facts, which will become a part of the evidentiary record in the case, is attached as Exhibit A[1];

---

[1] On October 12, 2015, Plaintiffs originally proposed a statement of uncontested facts to Defendants that were based on admissions in Defendants' answer to Plaintiffs' Second Amended Complaint (Doc. No. 384), statements Defendants identified as undisputed in their

(b) [inapplicable]

(c) All exhibits, marked for identification prior to trial (except for rebuttal exhibits) are attached as follows[2]:

1.     Exhibits offered by both parties are attached as Exhibit B and will be marked as indicated;

2.     Exhibits offered by Plaintiffs are are attached as Exhibit C (Defendants object to their receipt in evidence):

3.     Exhibits offered by Defendants are attached as Exhibit D (Plaintiffs object to their receipt in evidence):

4.     Non-objected-to exhibits are received in evidence by operation of this Order.

(d) a list or lists of names and addresses of the potential witnesses to be called by each party, with a statement of any objections to calling, or to the qualifications of, any witness identified on the list, are set forth below:[3]

**Plaintiffs' Will Call Witness List[4]:**

Peter Abrahamson
c/o Stuart G. Parsell

---

[2] The parties conferred regarding their objections to each other's exhibits. Other than the joint exhibits that appear in Exhibit B, the parties at this point object to the remaining exhibits that appear in their respective exhibits lists, given that they do not know in what context they will be used at trial. To the extent the Court prefers an alternative approach, the parties are prepared to discuss with the Court during the final pretrial conference on October 28, 2015.

summary judgment motion (Doc. No. 135), and language that appeared from exhibits in the parties' joint exhibit list. Individual Defendants disagree with this characterization.

[3] The parties have agreed to provide their anticipated live witnesses for the first week of their case in chief to one another by or before noon, prevailing local time, on the Thursday before they begin their case in chief. As to all other trial days, the parties have agreed to provide each other 48 hours notice of live witnesses that they intend to call (i.e., by or before 9 AM prevailing local time 2 days before calling the witness).

[4] In addition to these live witnesses, Plaintiffs will submit the testimony of the witnesses listed in Section 2(f) through deposition designations.

Zeiger, Tigges & Little
41 South High Street, Suite 3500
Columbus, Ohio 43215

Rhonda Anderson
5245 Rockingham Court
Windsor, Colorado 80550

Michael J. Buchanan
FTI Consulting
2001 Ross Avenue, Suite 400
Dallas, Texas 75201

Samuel Halpern
Prudent Expert, LLC
P.O. Box 306
Luray, Virginia 22835

Suzanne Johnson Harris
1492 Aberdeen Court
Naperville, Illinois 60564

Kenneth Lenoir
Evolve Bank & Trust
c/o Keller Rohrback LLP
2101 North Central Avenue, Suite 1400
Phoenix, AZ 85012

Marilyn Marchetti
c/o Drinker Biddle & Reath
191 N. Wacker Dr., Suite 3700
Chicago, IL 60606

Mark Mizen
7552 Mariner Drive
Maple Grove, Minnesota 55311

Asha Morgan Moran
c/o Keating Muething & Klekamp
One East Fourth Street, Suite 1400
Cincinnati, OH 45202

Lee Morgan
c/o Keating Muething & Klekamp
One East Fourth Street, Suite 1400
Cincinnati, OH 45202

Michael New
Evolve Bank & Trust
c/o Keller Rohrback LLP
2101 North Central Avenue, Suite 1400
Phoenix, AZ 85012

Robert F. Reilly
Willamette Management Associations
8600 West Bryn Mawr Avenue, Suite 950-N
Chicago, Illinois 60631

David Weinstock
Benefit Concepts Systems, Inc.
19 West 44th Street, Suite 416
New York, NY 10036

Monica Woosley
c/o Keller Rohrback LLP
2101 North Central Avenue, Suite 1400
Phoenix, AZ 85012

**Defendants' Anticipated Live Witness List[5]:**

Peter Abrahamson
c/o Stuart G. Parsell
Zeiger, Tigges & Little
41 South High Street, Suite 3500
Columbus, Ohio 43215

Dr. Harris Antoniades
10100 Santa Monica Blvd
Suite 975
Los Angeles, CA 90067

Chandra Attiken
c/o Michael L. Scheier
Keating Muething & Klekamp PLL
Cincinnati, OH 45202

Nancy Blair
Last known address:
Ego Zehnder Int'l, Inc.

---

[5] Defendants may also introduce the testimony through deposition designations of those individuals identified in Exhibit F.

Petro-Canada West Tower
Suite 3320
150 6th Ave. S.W.
Calgary, Alberta T2P 3Y7

<u>Lee Bloom</u>
c/o Michael S. Pullos
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

<u>Gregory K. Brown</u>
Holland & Knight
131 South Dearborn Street
30th Floor
Chicago, IL 60603

<u>Judy Cordell</u>
288 Allen St.
Yellow Springs, OH 45387

<u>Robert Hill</u>
2184 Wedgewood Dr.
Beavercreek, OH 45434

<u>Barry Hoskins</u>
31732 222nd Ct. SE
Black Diamond, WA 98010

<u>Kreg Jackson</u>
c/o Richard Chesley
DLA Piper LLP (US)
203 North LaSalle Street
Suite 1900
Chicago, Illinois 60601-1293

<u>Marilyn Marchetti</u>
c/o Theodore Becker
Drinker Biddle & Reath
191 N. Wacker Dr., Suite 3700
Chicago, IL 60606

<u>Peter Moscolo</u>
5 Stoneleigh Place
Brownsville, TN 38012

Marsha Matthews
c/o Jeffrey S. Sharkey
Faruki Ireland & Cox P.L.L.
500 Courthouse Plaza, SW
10 North Ludlow Street
Dayton, OH 45402

Richard May
c/o Michael L. Scheier
Keating Muething & Klekamp PLL
Cincinnati, OH 45202

Asha Moran
c/o Michael L. Scheier
Keating Muething & Klekamp PLL
Cincinnati, OH 45202

Lee Morgan
c/o Michael L. Scheier
Keating Muething & Klekamp PLL
Cincinnati, OH 45202

Jean Rudegeair
Address presently unknown

Jeffrey Risius
Stout Risius Ross
4000 Town Center, Southfield, MI 48075

Terry Treemarcki
c/o Richard Chesley
DLA Piper LLP (US)
203 North LaSalle Street
Suite 1900
Chicago, Illinois 60601-1293

Ralph Walkling
c/o Michael L. Scheier
Keating Muething & Klekamp PLL
Cincinnati, OH 45202

(e) the parties do not stipulate to any statements setting forth the qualifications of

each F.R.Evid. 702 witness in such form that the statement can be read at the time the F.R.Evid. 702 witness takes the stand;

(f) a list of all depositions, and designated page and line numbers to be read into evidence and statements of any objections, is attached as Exhibit E and Exhibit F[6];

---

[6] The parties have agreed to provide 48 hours notice to an opposing party of an intention to use deposition designations and that any objections will be provided to the other side 24 hours later.

Plaintiffs oppose Defendants' proposal to play all designated passages of videotaped testimony in sequential order when the videotaped testimony is first played in open Court for the reasons outlined in the argument at the conference with the Court on October 21. Neither the Rules of Evidence (106) nor the Rule of Civil Procedure (Rule 32(a)(6)), cited by Defendants, sanction this unusual effort to hijack Plaintiffs' case-in-chief under the guise of "fairness". To the contrary, playing all designated video testimony in this manner violates the intent and spirit of fairness set out in those rules. Of course, Plaintiffs do not oppose playing Defendants' counter-designations which are appropriate under Fed. R. Civ. P. Rule 32 (a)(6) in their case in chief; however, playing all designated passages in sequential order when the videotaped deposition would be grossly prejudicial and far exceeds the boundaries of the rule of completeness underlying the purpose of counter-designations. In short, Defendants ignore the distinction between counter-designations and their own designations - - both of which have been separately made by Defendants in this case.

To illustrate the unfair effort to interfere with Plaintiffs' orderly presentation of evidence in its case-in-chief, and as explained to the Court at the October 21, 2015 status conference, Plaintiffs designated 15 minutes of videotaped testimony of Denis Sanan; Defendants counter-designated 40 minutes of Mr. Sanan's videotaped testimony. Plaintiffs agree to play all appropriate portions of the counter-designation of Mr. Sanan in their case in chief. Beyond the counter-designation, Defendants also designated 3 hours and 28 minutes of Denis Sanan's testimony to be played in their case-in-chief and Plaintiffs counter-designated 11 minutes of Mr. Sanan's testimony in response. Nonetheless, Defendants now insist that all of Mr. Sanan's testimony be played entirely in Plaintiffs' case. The results are the same (but not as extreme with other witnesses as well). There is no other way to describe the Defendants' request than a brazen effort to try its case in part during Plaintiffs case. That outcome is unfair and unnecessary and the Court should exercise its discretion under Federal Rule of Evidence 611(a) to deny this.

Contrary to Defendants' suggestion, the parties have already distinguished their designations – as designations and counter-designations. Accordingly, Plaintiffs propose that the Court play Plaintiffs' designated testimony, along with Defendants' counter-designated testimony in Plaintiffs' case in chief, and play Defendants' designated testimony, along with Plaintffs' counter-designated testimony in Defendants' case in chief, as allowed by Federal Rule of Evidence 611(a).

(g) Plaintiffs' itemized statement of damages is set forth below:

Plaintiffs seek a rescission of all cash and cash equivalents paid to the Selling Shareholders (the "Sellers") in this Prohibited Transaction under ERISA § 406 which resulted in the Antioch Employee Stock Ownership Plan (the "ESOP" or the "Plan") becoming the 100% shareholder of The Antioch Company. This amounts to $233,483,100, representing cash, notes, and warrants.

Alternatively, Plaintiffs seek to recover money damages from Defendants for breach of their fiduciary duties as ESOP trustee or fiduciary and for engaging in a prohibited transaction as trustee, fiduciary and/or as knowing parties in interest to a prohibited transaction. Plaintiffs will present evidence as to the ESOP's monetary damages under four separate damage models:

1. The difference between the amount the non-ESOP selling shareholders received in connection with the 2003 Transaction and the actual fair market value ("FMV") of the shares, plus the diminution in value of the 205,330 Plan shares resulting from the 2003 Transaction.

   As determined by Plaintiffs' Expert Robert Reilly, the FMV of the 272,826 shares tendered by the non-ESOP selling shareholders in the 2003 Transaction was $500 per share, rather than the $850 per share they received in the 2003 Transaction. This overvaluation of $350 per share damaged the ESOP in the amount of $95,490,000 (Mr. Reilly identified a range of damages of $70.94 million to $145.97 million in connection with this analysis, and Plaintiffs will offer each of these separate indications of damages at trial).

   Mr. Reilly also concluded that the FMV of the shares held by the ESOP immediately *after* the 2003 Transaction was $468 per share. The difference between the $850 per share used in the 2003 Transaction and the $468 per share value determined by Mr. Reilly damaged the ESOP in the amount of approximately $102.1 million. These are additional damages that Plaintiffs will offer at trial.

2. Plaintiffs will seek damages equal to the ESOP cash of $60 million to $65 million (held by the ESOP prior to the 2003 Transaction) which Defendants Lee Morgan, Asha Morgan Moran and Chandra Attiken permitted to be misappropriated by the Antioch Company to partially cover its Repurchase Obligations to the Plan in 2004.

3. Difference between the FMV of Net Assets Available for Plan Benefits as of December 31, 2003 ($252,433,490), and the FMV of such Net Assets today ($0),

---

The Individual Defendants disagree as described in FN 10.

less all cash distributions of Plan Benefits of approximately $167 million[7] paid to the ESOP participants after December 31, 2003.

4.   Recovery of the value of the ESOP shares (205,330 shares times $850 per share = $174,530,500) related to the failure to tender the ESOP shares on December 15, 2003, plus the value of all ESOP Net Assets Available for Plan Benefits excluding employer securities ($68,868,470) less all cash distributions of Plan Benefits of approximately $167 million[8] paid to ESOP participants after December 31, 2003.

(i) The parties have completed discovery, including the depositions of expert witnesses.[9] Absent good cause shown, no further discovery shall be permitted;

(j) the parties filed motions in limine in accordance with the schedule adopted by the Court in its Pretrial Scheduling Order on August 17, 2015 (Doc. No. 435). As of the date of this Order, all motions in limine and responses thereto have been filed.

(k) the contested issues of fact and law are as follows:

**Plaintiffs' Issues of Fact:**

1.   What actions Defendants Lee Morgan, Asha Morgan Moran, and/or Chandra Attiken, either as members of the ESOP Advisory Committee and named fiduciaries to the Antioch Employee Stock Ownership Plan (the "ESOP" or the "Plan"), or members of Antioch's Board of Directors with discretionary authority with respect to the Plan or its assets, took as fiduciaries regarding the transaction that purported to make the ESOP a 100% owner of The Antioch Company in 2003 ("2003 Transaction");

---

[7] Plaintiffs believe that as a legal matter, the approximately $60 million in Plan assets that were misappropriated in 2004 to pay Plan benefits should not be included in the calculation of cash distributions of Plan Benefits for purposes of this specific calculation of damages. After excluding the $60 million, the cash distributions of Plan Benefits would be reduced to approximately $107 million. Individual Defendants dispute this contention.

[8] Plaintiffs believe that as a legal matter, the approximately $60 million in Plan assets that were misappropriated in 2004 to pay Plan benefits should not be included in the calculation of cash distributions of Plan Benefits for purposes of this specific calculation of damages. After excluding the $60 million, the cash distributions of Plan Benefits would be reduced to approximately $107 million. Individual Defendants dispute this contention.

[9] The only exception is the trial deposition of Richard Wiser. The parties have notified the Court regarding the issues surrounding Mr. Wiser's testimony, and expect a trial deposition to occur at some point during the trial.

2.    What actions or omissions of Defendants Lee Morgan, Asha Morgan Moran, and/or Chandra Attiken enabled one or more fiduciary breaches of each other and/or GreatBanc Trust Co. ("GreatBanc") in connection with the 100% ESOP Transaction;

3.    Whether Defendants Lee Morgan, Asha Morgan Moran, and/or Chandra Attiken participated in one or more breaches of fiduciary duty of each other and/or GreatBanc in connection with the 2003 Transaction;

4.    Whether and to what extent Defendants Lee Morgan, Asha Morgan Moran, and/or Chandra Attiken had knowledge of one or more breach of fiduciary duty of each other and/or GreatBanc in connection with the 2003 Transaction, and if so, what if any steps any such Defendant took to remedy any such breach;

5.    What actions Defendants Lee Morgan, Asha Morgan Moran, and/or Chandra Attiken took to determine the fair market value of Antioch common stock held by the ESOP;

6.    Whether Defendants Lee Morgan, Asha Morgan Moran, and/or Chandra Attiken acted in good faith after a prudent process to assure that the selling shareholders received no more than adequate consideration for the sale of their shares in connection with the 2003 Transaction;

7.    Whether Defendants Lee Morgan, Asha Morgan Moran, and/or Chandra Attiken failed to act solely and exclusively for the best interest of the ESOP in performing their ERISA fiduciary duties as members of the ESOP Advisory Committee and/or Antioch's Board of Directors;

8.    Whether Defendants Lee Morgan, Asha Morgan Moran, and/or Chandra Attiken acted prudently in approving the 2003 Transaction, including but not limited to appropriately determining whether the 2003 Transaction was fair to the ESOP;

9.    Whether Defendants Lee Morgan, Asha Morgan Moran, and/or Chandra Attiken engaged in a prudent, careful and independent investigation of the circumstances prevailing at the time of the 2003 Transaction;

10.   Whether Defendants Lee Morgan, Asha Morgan Moran, and/or Chandra Attiken provided GreatBanc and all advisors in connection with the 2003 Transaction with complete, accurate, current, and up to date information;

11.   Whether GreatBanc and all advisors in connection with the 2003 Transaction were provided with all information material to their evaluation of the 2003 Transaction, including *inter alia*: all sales projections and cash flows; forecasts showing downturns in financial results; all sensitivity analyses; concerns regarding industry, market and consumer trends; the threat of digital photography to the Company's business model; all revised repurchase obligation projections;

any planned or contemplated use of Plan assets to satisfy repurchase obligations; all changes and amendments to the distribution policies for the ESOP, all concerns regarding the consequences of the 2003 Transaction, and all documentation regarding the Company's IRC 409(p) issues;

12.   Whether Defendants Lee Morgan, Asha Morgan Moran, and/or Chandra Attiken reliance on their advisors in connection with the 2003 Transaction was reasonably justified under the circumstances;

13.   Whether Defendants Lee Morgan, Asha Morgan Moran, and/or Chandra Attiken acted imprudently in permitting GreatBanc to approve the 2003 Transaction based upon the financial and other information in the possession of these Defendants;

14.   Whether Defendants Lee Morgan, Asha Morgan Moran, and/or Chandra Attiken failed to provide or purposely withheld from the GreatBanc material information necessary for GreatBanc to perform its fiduciary duty;

15.   Whether Defendants Lee Morgan, Asha Morgan Moran, and/or Chandra Attiken knew or should have known that the management projections provided to and relied upon by GreatBanc and its advisor Duff & Phelps were unrealistic and overstated the most likely future performance of the company based upon conditions and circumstances then prevailing;

16.   Whether Defendants Lee Morgan, Asha Morgan Moran, and/or Chandra Attiken acted prudently in approving the 2003 Transaction in light of the risks to the Plan if the transaction was executed;

17.   Whether Defendants Lee Morgan, Asha Morgan Moran, and/or Chandra Attiken placed their interests ahead of the ESOP in approving the 2003 Transaction;

18.   Whether Defendants Lee Morgan, Asha Morgan Moran, and/or Chandra Attiken, as members of the ESOP Advisory Committee and named fiduciaries to the Plan, violated provisions of the Plan in connection with the 2003 Transaction;

19.   What actions Defendants Lee Morgan, Asha Morgan Moran, and Chandra Attiken took to monitor GreatBanc in connection with the 2003 Transaction;

20.   What actions Defendants Lee Morgan, Asha Morgan Moran, and Chandra Attiken took to monitor Duff & Phelps in connection with the 2003 Transaction;

21.   What benefits Defendants Lee Morgan, Asha Morgan Moran, and Chandra Attiken obtained as a result of the 2003 Transaction at the expense of the Plan;

22.   Whether Defendants Lee Morgan, Asha Morgan Moran, and Chandra Attiken engaged in a reasonable process to ensure that valuations performed in connection with the 2003 Transaction complied with Plan documents and ERISA;

23.    Whether Antioch's Board of Directors monitored the members of the ESOP Advisory Committee in connection with the 2003 Transaction;

24.    What the actual fair market value of Antioch common stock was at the time of the Transaction;

25.    Whether Defendants Lee Morgan, Asha Morgan Moran, and Chandra Attiken engaged in the appropriate process in connection with the approval of the use of ESOP assets to satisfy the Company's repurchase obligation following the 2003 Transaction;

26.    Whether Defendants Lee Morgan, Asha Morgan Moran, and Chandra Attiken approved the use of ESOP assets to satisfy the Company's repurchase obligation following the 2003 Transaction;

27.    Whether Defendants Lee Morgan, Asha Morgan Moran, and Chandra Attiken acted prudently in using ESOP assets to satisfy the Company's repurchase obligation following the 2003 Transaction;

28.    Whether Defendants Lee Morgan, Asha Morgan Moran, and Chandra Attiken placed their own interests ahead of the ESOP in using ESOP assets to satisfy the Company's repurchase obligation following the 2003 Transaction;

29.    Whether Defendants Lee Morgan, Asha Morgan Moran, and Chandra Attiken materially modified the 2003 Transaction approved by the trustee to the detriment of the ESOP when they caused or failed to object to the use of ESOP assets to pay for the Company's repurchase obligation following the 2003 Transaction;

30.    Whether Defendants Lee Morgan, Asha Morgan Moran, and Chandra Attiken engaged in a prudent process to determine whether it was in the best interest of the ESOP and its participants to partially satisfy the Company's repurchase obligation, by spending $60 million of ESOP assets to repurchase shares put to the Company for $890 per share;

31.    Whether Defendants Lee Morgan and Asha Morgan Moran exercised discretionary authority over the Plan or its assets as board members;

32.    Whether Defendants Lee Morgan and Asha Morgan Moran, as board members, failed to monitor themselves and Defendant Chandra Attiken, who collectively were members of the ESOP Advisory Committee;

33.    Whether Defendants Lee Morgan, Asha Morgan Moran, and Chandra Attiken participated in the breaches of fiduciary duty by GreatBanc in connection with the 2003 Transaction;

34. Whether Defendants Lee Morgan, Asha Morgan Moran, and Chandra Attiken acquired knowledge of any breaches of fiduciary duty by GreatBanc in connection with the 2003 Transaction;

35. Whether Defendants Lee Morgan, Asha Morgan Moran, and Chandra Attiken took any action to cure any breaches of fiduciary duty or correct any prohibited transaction engaged in by GreatBanc in connection with the 2003 Transaction;

36. Whether Defendants Lee Morgan, Asha Morgan Moran, and Chandra Attiken prevented the correction of any breach of fiduciary duty and prohibited transaction by terminating GreatBanc in December 2003 before the trustee was able to acquire knowledge of material facts withheld from the trustee in 2003;

37. Whether Defendant Morgan Family Foundation received any money or other assets that were proceeds of the 2003 Transaction;

38. Whether Defendant Morgan Family Foundation holds any money or assets that are proceeds of the 2003 Transaction or the traceable product of those proceeds;

39. Whether Defendant Morgan Family Foundation gave any value in exchange for any proceeds of the 2003 Transaction that it received; and

40. Whether Defendant Morgan Family Foundation had actual or constructive knowledge of the facts and circumstances rendering the 2003 Transaction a breach of fiduciary duty and/or prohibited transaction under ERISA.

**Plaintiffs' Issues of Law:**

1. Whether Defendants Lee Morgan, Asha Morgan Moran, and/or Chandra Attiken, as members of the ESOP Advisory Committee and named fiduciaries to the Plan, breached their fiduciary duties under ERISA § 404;

2. Whether Defendants Lee Morgan and/or Asha Morgan Moran, as directors of the Company with discretionary authority over the Plan, breached their fiduciary duties under ERISA § 404;

3. Whether Defendants Lee Morgan, Asha Morgan Moran, and/or Chandra Attiken are liable as co-fiduciaries under the provisions of ERISA § 405;

4. Whether the 2003 Transaction was a non-exempt prohibited transaction in violation of ERISA § 406;

5. Whether Defendants Lee Morgan, Asha Morgan Moran, and/or Chandra Attiken breached their fiduciary duties by causing or allowing the Plan to enter into prohibited transactions that were not exempt pursuant to but not limited to the adequate consideration standards set forth in ERISA § 408(e);

6.      Whether Defendants Lee Morgan, Asha Morgan Moran, and/or Chandra Attiken violated their fiduciary duties under ERISA with respect to monitoring, providing information, and/or removing the Trustee or the ESOP Advisory Committee in connection with the 2003 Transaction;

7.      Whether and to what extent the appointment of GreatBanc as a fiduciary affected the scope of the fiduciary obligations of Defendants Lee Morgan, Asha Morgan Moran, and/or Chandra Attiken during the period of GreatBanc's appointment;

8.      Whether, assuming a finding of liability, Defendant Morgan Family Foundation is required to disgorge the proceeds received by Defendants Lee Morgan and Asha Morgan Moran and any other trust or entity under their control that were subsequently transferred to the Foundation;

9.      Whether promissory notes and/or warrants constitute the payment of cash or cash equivalents for purposes of determining losses to the ESOP for ERISA §§ 404, 405, and 406 claims;

10.    Whether Plaintiffs are entitled to rescission or monetary damages under one of the models set forth herein (see Plaintiffs' itemized statement of damages);

11.    Whether Plaintiffs are entitled to legal, equitable, or other relief under ERISA §§ 409(a) and 502(a)(2);

12.    Whether Plaintiffs are entitled to other equitable relief, including but not limited to a constructive trust, under ERISA § 502(a)(3);

13.    Whether the proceeds of the 2003 Transaction, or any portion thereof, and all earnings thereon and proceeds thereof, are subject to a constructive trust under ERISA §§ 502(a)(3) and 409(a);

14.    Whether the proceeds of the 2003 Transaction received by Defendant Morgan Family Foundation were the product of a fiduciary breach and/or prohibited transaction under ERISA;

15.    Whether Defendant Morgan Family Foundation was a bona fide purchaser for value of any proceeds of the 2003 Transaction that it received;

16.    Whether Defendant Morgan Family Foundation holds any monies or other assets that belong in good conscience to the ESOP in constructive trust for the ESOP; and

17.    Whether Defendant Morgan Family Foundation should restore or disgorge to the ESOP any monies or other assets in its possession that it holds in constructive trust for the ESOP pursuant to ERISA § 502(a)(3).

**Defendants' Issues of Fact and Law:**

With respect to both issues of fact and law, Mr. Morgan, Ms. Moran, and Ms. Attiken incorporate the issues identified by Plaintiffs as well as those issues further described in their trial brief to be filed with the Court.

In addition:

When videotaped testimony is first played in open Court (whether by Plaintiffs or Defendants) all designated passages from both parties should be played in sequential order at that time.[10]

Mr. Morgan, Ms. Moran, and Ms. Attiken did not have discretionary authority with respect to the transactions at issue in this case.

---

[10] The Individual Defendants' position, as articulated to the Court during the October 21, 2015 hearing and to Plaintiffs' counsel in numerous teleconferences and email correspondence over the past month, is that Defendants believe Federal Rule of Evidence 106 and Federal Rule of Civil Procedure 32(a)(6) support this approach (which would be applied to both parties), along with all of the efficiency, fairness, and practicality considerations that were articulated to the Court (such as the difficulty of determining how to adequately break up designated passages of testimony from a witness given in one setting so it remains logical, coherent, complete, and fair when presented separately in re-ordered fragments, weeks or months apart).

In the event the Court rules that the Plaintiffs and Individual Defendants are limited to presenting only certain designated passages during the other parties' case, the Individual Defendants believe they should be given the opportunity to identify and distinguish between the portions of testimony from a particular witness that will be played during Plaintiffs' case and those that will not be played until the Individual Defendants' case, according to whatever guidelines or rules the Court establishes. With the exception of Nancy Blair, Barry Hoskins, and Chandra Attiken (since those witnesses are expected to appear live in the Individual Defendants' case), and consistent with their position about how the videotaped depositions should be played at trial, the Individual Defendants have ***not*** for any other witness attempted to make any distinction between designations that will be played during Plaintiffs' case and designations that won't be played until the Individual Defendants' case. The Individual Defendants have repeatedly and expressly made this clear to Plaintiffs, including in their October 9, 2015 and October 23, 2015 designations (in which they expressly incorporated and re-designated ***all*** previous designations), as well in numerous teleconferences and email correspondence.

The Antioch Company stripped the ESOP Advisory Committee of discretionary authority with respect to the transactions at issue in this case.

Mr. Morgan, Ms. Moran, and Ms. Attiken discharged their duties, if any, solely in the interest of the ESOP.

Mr. Morgan, Ms. Moran, and Ms. Attiken discharged their duties, if any, for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan.

Mr. Morgan, Ms. Moran, and Ms. Attiken discharged their duties, if any, with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

Mr. Morgan, Ms. Moran, and Ms. Attiken discharged their duties, if any, in accordance with the documents and instruments governing the plan.

GreatBanc discharged its duties solely in the interest of the ESOP.

GreatBanc discharged its duties for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan.

GreatBanc discharged its duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

GreatBanc discharged its duties in accordance with the documents and instruments governing the plan.

Ms. Attiken had no duty to monitor as she was not a member of the Company's Board of Directors.

To the extent Plaintiffs prove a breach of duty by GreatBanc, Mr. Morgan, Ms. Moran, and Ms. Attiken had no knowledge of the breach.

To the extent required to do so, Mr. Morgan, Ms. Moran, and Ms. Attiken sufficiently monitored GreatBanc.

To the extent required to do so, Mr. Morgan, Ms. Moran, and Ms. Attiken sufficiently provided information to GreatBanc.

GreatBanc and other parties were provided all the material information needed by them to discharge their duties.

The Antioch ESOP did not engage in any transaction in connection with the 2003 transaction.

The Antioch ESOP did not receive or provide any consideration in the 2003 transaction.

Mr. Morgan, Ms. Moran, and Ms. Attiken did not engage in a transaction with the Antioch ESOP, directly or indirectly.

The 2003 transaction was not a prohibited transaction.

Mr. Morgan, Ms. Moran, and Ms. Attiken did not "cause" the ESOP to enter into a prohibited transaction.

If the 2003 transaction was a prohibited transaction, then it was exempt pursuant to ERISA 408.

The consideration paid in the 2003 transaction was "adequate consideration" as determined in good faith by the trustee and in accordance with the relevant regulations.

The consideration in the transaction – cash or other assets valued at $850 – represented the fair market value for a share of stock in the Antioch Company as of December 2003.

The projections utilized by the Company in connection with the 2003 transaction were reasonable.

GreatBanc made an independent inquiry into the fairness of the 2003 transaction and determined that the transaction was fair in good faith.

To the extent GreatBanc or any co-fiduciary committed a breach of duty, Mr. Morgan, Ms. Moran, and Ms. Attiken did not participate knowingly in, or knowingly undertake to conceal, an act or omission of such other fiduciary knowing such act or omission is a breach.

To the extent GreatBanc or any co-fiduciary committed a breach of duty, Individual Mr. Morgan, Ms. Moran, and Ms. Attiken did not, by failure to comply with the prudence standard as applied and defined in ERISA section 404(a)(1) in the administration of specific responsibilities which give rise to status as a fiduciary, enable such other fiduciary to commit a breach.

To the extent Plaintiffs identify any breach of duties by Mr. Morgan, Ms. Moran, and Ms. Attiken, such breaches did not cause Plaintiffs any damages.

Plaintiffs' damages, if any, were caused by intervening, superseding factors.

Plaintiffs do not adequately establish evidence of their damages.

Mr. Weinstock's opinions, including purported calculations of repurchase obligations, are not reliable and not supported by an appropriate methodology.

Mr. Buchanan's opinions, including purported projections of the Company's sales, are not reliable and not supported by an appropriate methodology.

Mr. Reilly's opinions, including his opinions related to purported damages, are not reliable and not supported by an appropriate methodology, and are also unreliable for the additional reason in that they rely on the opinions of Mr. Weinstock and Mr. Buchanan which, as stated above, are not reliable and not supported by an appropriate methodology.

Plaintiffs are not entitled to any legal or equitable relief in connection with the transaction from Mr. Morgan, Ms. Moran, and Ms. Attiken.

Plaintiffs are unable to achieve an effective rescission because they do not possess the property the selling shareholders parted with in the transaction (shares of the Antioch Company) to return to them in a rescission.

Plaintiffs are not entitled to seek a rescission because they did not originally tender the consideration they seek to recover in the rescission (the Company did) and therefore are not entitled to receive it in a rescission.

Mr. Morgan, Ms. Moran, and Ms. Attiken are not in possession of any specifically identifiable funds received in connection with the transaction.

The Antioch Company Board of Directors had a duty to monitor GreatBanc because it had the power to appoint and remove the ESOP trustee, and prudently exercised such duty to monitor.

The ESOP Advisory Committee did not have a duty to monitor GreatBanc.

In an exercise of their function as a plan sponsor, the Antioch Board of Directors properly allocated fiduciary responsibility for the 2003 transaction to GreatBanc and stripped the ESOP Advisory Committee of any fiduciary responsibility in respect to the transaction pursuant to ERISA section 405(c)

The Antioch Company Board of Directors made a unanimous non-fiduciary business decision to enter into the 2003 transaction with Antioch's non-ESOP shareholders.

GreatBanc alone, acting on behalf of the ESOP as a named fiduciary and independent trustee, made an independent decision to refrain from tendering the ESOP's shares to the Company in the 2003 transaction.

GreatBanc and its financial advisor, Duff and Phelps, failed to ask the Antioch management team responsible for responding to their due diligence and other informational requests for specific financial information relating to the ESOP or the repurchase obligation studies after issuing a preliminary fairness opinion, though it had the responsibility to do so under prevailing standards in 2003 for fairness advisors and independent trustees.

GreatBanc and its financial advisor, Duff & Phelps, either had actual possession of or sufficient knowledge of the Antioch Board's intention to amend the ESOP in November, 2003.

Plaintiffs' claims, or some of them, are barred because they failed to name an indispensible party, the Antioch Company bankruptcy estates.

Plaintiffs' claims, or some of them, are barred because Lee Morgan, Asha Moran and Chandra Attiken are not proper defendants.

Plaintiffs' claims, or some of them, are barred because they failed to pursue them against the Antioch Company bankruptcy estate.

(l) Plaintiffs contend they have not waived or abandoned any of the claims set forth in their Second Amended Complaint (Doc. No. 380);

(m) The parties agree that they will provide proposed Findings of Fact and Conclusions of Law after closing arguments and on a schedule to be established by the Court. The Court approved the parties' agreement in this regard at the pretrial conference on October 7, 2015; and

(n) The parties agree and the Court has approved at the pretrial conference on October 7, 2015 that opening statements will not exceed two hours for each side.

(3) Trial of this case is expected to take more than eighteen (18) trial days, commencing on Monday, November 2, 2015. The parties indicated that more time would be necessary during the October 7, 2015 status conference with the Court. Additional days will be allocated based on the availability of all counsel and the Court, and will be listed on Court's trial calendar, to be tried when reached.

(4) This case is a non-jury trial.

(5) The parties agree that the issues of liability and damages as to the Individual Defendants should not be bifurcated for trial. The Court has entered an order bifurcating the claims in this matter as to the Morgan Family Foundation.

(6) The parties do not consent pursuant to 28 U.S.C. § 636(c) to the reassignment of this case or trial to a magistrate judge.

(7) This Order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

(8) Possibility of settlement of this case was considered by the parties.

_____
The Honorable Jorge L. Alonso
United States District Judge

Date: _____

Counsel for Plaintiffs:

KELLER ROHRBACK L.L.P.

By /s/ Gary A. Gotto
Gary A. Gotto
Gary D. Greenwald
3101 North Central Avenue, Suite 1400
Phoenix, Arizona 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822
ggotto@kellerrohrback.com

David J. Ko
1201 Third Avenue, Suite 3200
Seattle, Washington 98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384
dko@kellerrohrback.com

GUIN STOKES & EVANS, LLC
Charles R. Watkins
321 South Plymouth Court, Suite 1250
Chicago, Illinois 60604
Telephone: (312) 427-3600
Facsimile: (312) 427-1850
charlesw@gseattorneys.com

SEBALY SHILLITO + DYER
James Dyer
Jon M. Sebaly
Kathryn M. Mack
40 North Main Street
1900 Kettering Tower
Dayton, Ohio 45402
Telephone: (937) 222-2500
Facsimile: (937) 222-6554
jdyer@ssdlaw.com
jsebaly@ssdlaw.com
kmack@ssdlaw.com

Counsel for Defendants:

KEATING MUETHING & KLEKAMP, PLL

By: /s/ Michael L. Scheier
Michael L. Scheier
Brian P. Muething
Anthony M. Verticchio
Jacob D. Rhode
One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202
mscheier@kmklaw.com
bmuething@kmklaw.com
averticchio@kmklaw.com
jrhode@kmklaw.com
Attorneys for Defendants Lee Morgan,
Asha Morgan Moran, and Chandra Attiken