**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| BONNIE FISH, et al.,<br>　　　Plaintiffs,<br><br>　　　vs.<br><br>GREATBANC TRUST COMPANY, et al.,<br>　　　Defendants. | Case No. 1:09-cv-01668<br><br>Honorable Jorge L. Alonso<br><br>Honorable Maria Valdez |

**DEFENDANTS LEE MORGAN, ASHA MORAN AND CHANDRA ATTIKEN'S REPLY**
**IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON PARTIAL FINDINGS**

## I.　　PRELIMINARY STATEMENT

Plaintiffs' Memorandum in Opposition to Defendants' Motion for Judgment on Partial Findings is disconnected from the case that Plaintiffs tried over six weeks. Gone are references to ARIMA and two of their three experts (Mr. Weinstock and Mr. Buchanan). Absent is any focus on the closed informational loop of Mark Mizen, Suzanne Harris and Rhonda Anderson that was the keystone to all of Plaintiffs' factual and opinion evidence. Comparisons of a dozen different transaction models have vanished. Missing is talk of "kitnapping" and "hobbyists," or even "digital," whatever Plaintiffs ever really meant by that term. Plaintiffs' opposition to judgment on partial findings has disavowed the dozens of hours of evidence they developed going to the exercise of corporate officer and director business judgment. A defense case is unnecessary because Plaintiffs rested their case without putting in sufficient evidence to merit the nine-figure judgment they seek based on the direct and derivative ERISA claims they could not prove at trial based upon ERISA sections 404, 405 and 406.

## II.   ARGUMENT

### A.   Rule 52 Standard

Defendants' Motion included a fulsome discussion of the Rule 52 standard. (*See* Defs.' Mot. at PAGEID# 31957-58.) Notably, Plaintiffs did not dispute that they are not entitled to inferences in the Court's consideration of the Motion and that the Court's decision on the motion would be reviewed for clear error. All Plaintiffs say is that the Rule permits the Court to decline to rule until the close of evidence. But that approach is not advisable in this case for at least two reasons. First, Plaintiffs have provided no reason to wait—Plaintiffs have been fully heard and their evidence fell far short of the mark. Second, the potential for efficiency is so great in this case when a defense case will involve even more weeks of Court time and the parties are all committing substantial resources to the litigation. This strongly favors granting the Motion instead of deferring decision.

### B.   Plaintiffs Failed to Establish That Defendants Were Fiduciaries For Purposes of the Transaction

Plaintiffs have failed to establish that Defendants were fiduciaries for purposes of the 2003 transaction. It is well-established on this record that the plan was amended to strip the ESOP Advisory Committee ("EAC") of discretionary authority in connection with the transaction. Plaintiffs, in response, do not suggest the amendment was ineffective or otherwise challenge the amendment. Plaintiffs instead claim that the EAC remained the named fiduciary for purposes of plan administration. But that is not relevant to Plaintiffs' claim that Defendants violated their duty of prudence under section 404 in regard to the 2003 tender offer. Plaintiffs ignore that "a person can be a fiduciary for some purposes but not others." *King v. Nat'l Human Res. Comm., Inc.*, 218 F.3d 719, 723 (7th Cir. 2000) (*citing Lockheed Corp. v. Spink*, 517 U.S. 882 (1996)). This is important because as the Supreme Court has stated, ERISA liability may be

2

imposed only when the defendant "was acting as a fiduciary . . . when taking the action subject to complaint." *Peagram*, 530 U.S. at 226. The "action subject to complaint" in this case is the decision to not tender the ESOP's shares in the 2003 transaction, rather than prevent the transaction by tendering the shares.

Plaintiffs also crucially ignore that both the statute and Seventh Circuit case law clearly establish that fiduciary status flows from the ability to exercise discretionary authority. 29 U.S.C. § 1002(21)(A)(i) and (iii); *Brooks v. Pactiv Corp.*, 729 F.3d 758, 765 (7th Cir. 2013). As noted in the Motion, the "power to act for the plan is essential to status as a fiduciary under ERISA." *Klosterman v. Western Gen. Mgmt.*, 32 F.3d 1119, 1123 (7th Cir. 1994). Plaintiffs do not challenge this legal standard nor cite anything that suggests the EAC could act for the plan in connection with the 2003 transaction.

Nevertheless, Plaintiffs claim that Mr. Morgan was acting as a fiduciary and therefore directly liable under ERISA section 404 for two reasons. First is JX-45, a four-page cover letter sent to participants, authored by Nancy Blair over Mr. Morgan's signature in his capacity of TAC CEO. This cover letter enclosed several documents related to the transaction, including one from GreatBanc, and the proxy materials totaling hundreds of pages. Other than citing to two cases for the proposition that communicating with beneficiaries about plan benefits can be an ERISA fiduciary function, cases irrelevant to Plaintiffs' allegations because the letter had nothing to do with plan benefits, Plaintiffs do not explain how the cover letter sent by the company CEO is an exercise of an ERISA-based fiduciary function other than by mischaracterizing the document. The letter merely expresses Mr. Morgan's personal belief that the transaction was in all stakeholders' interests (Plaintiffs do not and cannot suggest this was not an honest statement of belief or that anything else was misstated in the document). And

3

despite Plaintiffs' contention, the letter does not solicit the vote of participants on the state law based corporate merger (and Plaintiffs cite no authority that solicitation of shareholder votes on a state law corporate merger is an ERISA fiduciary function anyway).

The only other evidence Plaintiffs cite to try to get around the fact that Defendants' liability under 404 is solely derivative of a GreatBanc breach is the virtual EAC meeting in November 2003 regarding plan administration matters. The evidence about that meeting is that the EAC effectively met via email to change the method of distribution for retiring employees from immediate, lump-sum payments to installments over five years, as it had the discretion to do under the terms of the Plan that was currently in effect. (Tr. 2033:18-25; 2180:23-2181:9; 2255:16-2256:18; JX-3, at Sections 12, 18(c)(7).) All that this evidence shows is that the EAC met to carry out its duty to administer the plan by writing distribution policies consistent with the plan's distribution rules. What Plaintiffs fail to explain, because it is inexplicable, is how the plan administration function of writing a distribution policy within the terms of the plan relates to discretionary authority with regard to the duty under Plan section 5(f) relating to the 2003 transaction.[1]

In light of the foregoing, Plaintiffs have never established Defendants were ERISA fiduciaries for purposes of Plaintiffs' allegations. A defense case is therefore unnecessary on Plaintiffs' direct (non-derivative) section 404 claim.

---

[1] Plaintiffs misrepresent the record evidence and the transcript passages they cite when they allege that this meeting was to make a distribution policy change so that "terminees would no longer need to wait six years to receive distributions." (Pls.' Memo. in Opp. at PAGEID# 32358-59, n.4.) As discussed above, the EAC's change regarding retirees was consistent with the *existing* provisions of the Plan. (JX-3, at Section 12(b).) This change did *not* provide that terminees would no longer need to wait six years to receive distributions, which was *outside* of the authority given to the EAC under the Plan and required an amendment by the Board of Directors on December 4, 2003. (JX-57.)

## C.    Plaintiffs Failed to Establish Their Derivative Claims Under Section 404

With respect to their derivative claims, Plaintiffs have conflated different parties and different duties. To clear up the confusion Plaintiffs have sewn, we will analyze them separately. Once untangled, it is clear that Plaintiffs failed to carry their burden that Defendants breached the derivative duty to monitor and the so-called duty to inform.

### 1.    The ESOP Advisory Committee Had No Duty to Monitor.

As we show in the Motion (at PAGEID# 31964), the duty to monitor arises from the power to appoint. The evidence shows—and Plaintiffs do not dispute—that the Board of Directors, not the EAC, appointed GreatBanc. In addition, Plaintiffs cite no Plan provision imposing a duty to monitor GreatBanc or the EAC. Nor do they or can they cite to any other law or document as authority for such a duty. Accordingly, the EAC had no duty to monitor.

### 2.    The Board Satisfied its Duty to Monitor GreatBanc.

The parties share common ground that the Antioch board had a duty to monitor. Nearly every other position that Plaintiffs take with respect to the Board's duty to monitor is flawed.

#### a.    A Claim For Breach of the Duty to Monitor is Derivative

To start with, Plaintiffs contend that Defendants were wrong to state that the duty to monitor is derivative of an underlying breach by the appointed fiduciary. Plaintiffs' position is untenable. In addition to those cases cited in the Motion (at PAGEID# 31963-64), the federal reporters are swollen with cases establishing that a duty to monitor claim is derivative.[2] And

---

[2] *Slaymon v. SLM Corp.*, 506 F. App'x 61, 65 (2d Cir. 2012) (dismissing duty-to-monitor claim as derivative of plaintiffs' other failed claims); *Rogers v. Baxter Int'l, Inc.*, 710 F. Supp. 2d 722, 740 (N.D. Ill. 2010) (dismissing "failure to monitor claim [that] is derivative in nature and must be premised [on] an underlying breach of fiduciary duty"); *Spear v. Fenkell*, No. 13-02391, 2015 U.S. Dist. LEXIS 76191, at *74 (E.D. Pa. June 12, 2015) (it is "unexceptionable" that "if there is no fiduciary violation, there is no failure to monitor claim"); *Ortero v. Pfizer*, No. 12 Civ. 4536, 2013 U.S. Dist. LEXIS 55875, at *25 (S.D.N.Y Apr. 17, 2013) (duty to monitor is derivative); *In re Constellation Energy Group, Inc. ERISA Litig.*, 738 F. Supp. 2d 602, 614 (D. Md. 2010) (Under a heading called "Derivative Claims" stating that claims including failure to monitor "all depend on a finding that the defendants breached the underlying duties of prudence and loyalty"); *Wilson v. Venture Fin. Group, Inc.*, No. C09-5768BHS, 2010 U.S. Dist. LEXIS 49736, at *24 (W.D. Wash. May 18, 2010) ("A claim for breach of the fiduciary duty to

Plaintiffs do not cite even one case finding duty to monitor liability where the appointed fiduciary is found *not* to have breached its duty.[3]

> ### b. Plaintiffs Failed to Establish Duty to Monitor Liability Since They Did Not Prove a Breach of Duty by GreatBanc

Having established above that any duty to monitor liability is derivative of a breach of duty by GreatBanc, Plaintiffs' duty to monitor claim against the Board fails because Plaintiffs did not establish that GreatBanc breached a duty to the Plan.

In arguing GreatBanc breached a duty, Plaintiffs focus exclusively on GreatBanc's decision to rely on Duff's fairness conclusion as the breach. They fail to respond to the overwhelming evidence cited in Defendants' Motion of the thoroughness with which GreatBanc analyzed and investigated Duff's fairness conclusion and the methodologies Duff used. For instance, Plaintiffs chose to ignore the evidence that GreatBanc's ESOP Committee met with Duff (and legal counsel) three times, all reflected in extensive minutes, to discuss Duff's fairness-related work and opinions. (Defs.' Mot. at PAGEID# 31965-76; DX-204; DX-205; DX-327.) Plaintiffs chose to ignore Ms. Marchetti's testimony that GreatBanc's Committee was

---

monitor is derivative of other claims."); *In re Harley Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 953, 968-69 (E.D. Wis. 2009) (dismissing "derivative allegations of a breach of . . . duty to monitor" based on dismissal of underlying claims); *In re Computer Scis. Corp. Erisa Litig.*, 635 F. Supp. 2d 1128, 1144 (C.D. Cal. 2009) ("Plaintiffs' duty to monitor claim is derivative of their prudence claim."); *Maxwell v. RadioShack (In re RadioShack ERISA Litig.)*, 547 F. Supp. 2d 606, 616 (N.D. Tex. 2008) ("Plaintiffs' claims for failure to monitor other fiduciaries, co-fiduciary liability, and conflict of interest are derivative of their other claims. Thus, because the fiduciary-duty and misrepresentation claims are subject to dismissal, these claims are as well."); *Bunch v. W.R. Grace & Co.*, 532 F. Supp. 2d 283, 292 (D. Mass. 2008) (dismissing "derivative" duty to monitor claims when no underlying breach was established); *Ward v. Avaya, Inc.*, 487 F. Supp. 2d 467, 481 (D.N.J. 2007) (duty to monitor claim "consequently" failed based on dismissal of underlying duty claims); *In re Syncor ERISA Litig.*, 410 F. Supp. 2d 904, 913 (C.D. Cal. 2006) ("Plaintiffs' duty to monitor claim is derivative of their prudence claim…[.]"); *In re Duke Energy ERISA Litig.*, 281 F. Supp. 2d 786, 795 (W.D.N.C. 2003) (dismissing monitoring claim that "depend[s] upon the establishment of an underlying breach of fiduciary duty cognizable under ERISA").

[3] It is hard to believe Plaintiffs are taking the position that a duty to monitor claim is not derivative. One struggles to even imagine how a non-derivative duty to monitor claim would work. Are Plaintiffs really suggesting that a court would find that an appointed fiduciary discharged its duties in accordance with ERISA and yet the appointing fiduciary somehow fell short in making sure the appointed fiduciary discharged its duties? That, respectfully, makes no sense. And what could possibly be the measure of damages since the appointed fiduciary had taken no action to harm the plan? *Of course* the duty to monitor is derivative.

carefully comprised of attorneys, financial experts, and ESOP experts to capture a multi-disciplinary perspective on the fairness opinions it was called on to review, including Duff's in this case. Plaintiffs chose to ignore the three slide decks of data that Duff presented to the GreatBanc Committee and Ms. Marchetti's testimony that the GreatBanc Committee members reviewed Duff's written materials with Duff "line by line." (Tr. 1221:12-19, 1224:1-8; *see also* Defs.' Mot. at PAGEID# 31967 & n.10 (citing additional evidence of GreatBanc's exemplary process in studying Duff's conclusions).) Plaintiffs chose to ignore the extensive memoranda presented at those meetings with Duff by Jenkens & Gilchrist concerning Antioch's business and future prospects. (DX-240; DX-326.) These materials evidence GreatBanc's conduct and Plaintiffs skip past it all.

Plaintiffs instead cite nothing more than (a) Duff's projected 10-year post-transaction annual revenue growth rates, (b) Duff's discount rate, and (c) Duff's treatment of the projected repurchase obligation. (Pls.' Memo. in Opp. at PAGEID# 32379-32380.) But Plaintiffs cite no expert or fact evidence that these three isolated aspects of Duff's analysis, even if flawed, somehow constitute evidence of a breach of duty by GreatBanc. In fact, judging from the evidence that Plaintiffs developed at trial and their opposition brief, it might appear as if they had sued Duff for negligence rather than GreatBanc for breach of its duty of prudence under section 404. The relevant evidence is evidence of GreatBanc's process in reaching its conclusion to rely on Duff, not Duff's conclusions or methodologies.[4]

---

[4] Plaintiffs suggest in their brief that they did not need expert testimony to link Duff's alleged shortcomings to a breach by GreatBanc, the appointed fiduciary. (Pls.' Memo. in Opp. at PAGEID# 32380 n.25.) We do not suggest that Plaintiffs were *required* to have such an expert but by choosing not to do so the Plaintiffs proceeded at their own peril. Without an expert to testify that GreatBanc's process for investigating and analyzing Duff's fairness conclusion was imprudent, Plaintiffs are left with nothing but attorney say-so because no fact witness testified to that point.

Addressing directly Plaintiffs' "evidence" of GreatBanc's imprudence proves the point. They simply recite the projected revenue growth rates used by Duff that range from 11.2% in 2004 decreasing annually to 4% in 2013. From this Plaintiffs' counsel argues that it was imprudent for GreatBanc to rely on Duff's numbers because GreatBanc recognized that Creative Memories' domestic market "may be reaching a saturation point." (Pls.' Memo. in Opp. at PAGEID# 32379.)[5] But not even Mr. Reilly criticized the projected growth rates on that basis. He identified several risk factors, but none were a mature or saturated market. There is absolutely no evidence, expert or fact, that Duff's projected revenue growth rates were somehow inconsistent with a mature or saturated market (and Plaintiffs do not even bother to define those terms). This is just lawyer say-so, not evidence from which the trier of fact can draw a conclusion, and an insufficient basis to establish that GreatBanc breached a duty.

And with regard to the discount rate that Duff applied, Plaintiffs ignore Mr. Reilly's unequivocal testimony that the different discount rates he and Duff used ultimately came down to a reasonable difference of business judgment between two skilled valuation experts. (Tr. 4114:1-23.) This is a telling admission from Plaintiffs' own expert and another example of the disconnect between Plaintiffs' opposition brief and the trial record.

Plaintiffs fare no better relying on an alleged GreatBanc breach of ERISA section 406(a)(1)(A). (Pls.' Memo. in Opp. at PAGEID# 32378.) As noted above, Plaintiffs have failed to prove that there was a transaction between the Antioch ESOP and parties in interest, or that GreatBanc "caused" the Plan to enter into any such transaction. And even if they could prove that the transaction fits in section 406, they cite no case law to suggest that approving a facially prohibited transaction under section 406 constitutes a per se breach of duty. Nor could they, as

---

[5] This of course ignores the fact that Antioch had experienced sales growth rates of 26% in 2002, 16% in 2001, 20% in 2000, and 22% in 1999 (the years immediately preceding the projections). (JX-64 at P-Woosley-000067.)

such a ruling would foreclose any independent trustee from ever approving a fair-value transaction involving an ESOP.

Plaintiffs have failed to prove by a preponderance of the evidence that GreatBanc breached a fiduciary duty to the plan. Since they cannot do so in the defense case, proceeding would be futile and the Court should enter judgment in Defendants' favor.

         c.     **Even if Plaintiffs Proved a Breach of Fiduciary Duty by GreatBanc, Defendants Satisfied the Duty to Monitor**

Defendants showed in their Motion that the Seventh Circuit takes a narrow view of the duty to monitor, including rejecting a plaintiff's attempt to turn the duty to monitor into a duty to broadly review decisions of the appointed party. *See* Defs.' Mot. at 31967-68; *Howell v. Motorola, Inc.*, 633 F.3d 552, 573 (7th Cir. 2011). Plaintiffs fail to distinguish *Howell*—actually, they do not even mention it in their brief even though it is the leading case in this Circuit on the duty to monitor. That fact alone should tell the Court that Plaintiffs misstate the scope of an appointing board's duty to monitor.[6] The duty to monitor requires only monitoring at "reasonable intervals" to ensure compliance with the plan and ERISA. *Lingis v. Motorola, Inc.*, 649 F. Supp. 2d 861, 881-82 (N.D. Ill. 2009). In *Lingis*, a decision affirmed by the Seventh Circuit, annual review of the appointed fiduciary satisfied the duty to monitor. *Id.*

Defendants identified evidence in the Motion that the Board engaged in monitoring in at least three board meetings in four months. (Defs.' Mot. at PAGEID# 31967-68.) Plaintiffs quibble with whether the minutes show "actual monitoring." But it is hard to imagine a more

---

[6] Instead Plaintiffs argue that the scope or extent of the duty to monitor depends on the facts of each case. But the only case they cite for support merely says that the duty to monitor is "factual" in the sense that the court could not resolve a duty to monitor claim on the pleadings pursuant to Rule 12. Nothing in the opinion relates to the scope of the duty changing with the facts of a situation. *In re Syncor ERISA Litig.*, 351 F. Supp. 2d 970, 986 (C.D. Cal. 2004). Plaintiffs have no support for their construction of the duty to monitor.

pure form of monitoring than having the appointed fiduciary attend board meetings to discuss the engagement and make presentations as in this case.[7]

Plaintiffs suggest that the Board was unable to delegate its duties to others in connection with the duty to monitor. But Plaintiffs misunderstand Defendants' position. Defendants' principal argument is that the Board satisfied its duty to monitor through GreatBanc's attendance and presentations to the Board, consistent with *Lingis* and *Howell*. But Defendants also identified evidence of additional monitoring actions. One such action was to put in place contact points— Mr. Hoskins and Ms. Blair—for information. Second, the Board established a procedure where a negotiating counterweight—Houlihan Lokey, on behalf of the selling shareholders—existed to GreatBanc and Duff. This meant that the Board could be confident that the process it structured would promote the arms-length deal that occurred. This is not delegation of the duty to monitor but rather an appointing fiduciary supplementing traditional face-to-face monitoring, going far beyond what the Seventh Circuit has blessed. Finally, the district court's decision in *Keach v. U.S. Trust Co.,* 313 F. Supp. 2d 818, 864-65 (C.D. Ill. 2004)—cited often in Plaintiffs' brief— specifically finds that defendants there satisfied any duty they were under when they "instructed the management and other employees of [the company] to provide access to anything and everything that was requested," which is exactly what happened in this case. (Tr. 1515:2-1535:17; 2296:16-23; 2301:6-2302:14; 3176:15-21.)

Plaintiffs failed to develop evidence supporting a claim that the Board breached its duty to monitor GreatBanc. In fact, the evidence at the close of Plaintiffs' case showed that Defendants satisfied the limited duty to monitor. A defense case would therefore be cumulative

---

[7] Plaintiffs cherry-picked two of the nine Antioch Board members to sue for breach of the Board's duty to monitor. But it is the Board's duty, and although no law prevents such cherry-picking, Mr. Morgan's and Ms. Moran's liability is judged by the conduct of the Board because they did not, as individuals, have authority to appoint and remove GreatBanc.

and serve no benefit. Judgment for the Defendants on the duty to monitor claim at this point in the case is therefore appropriate.

### 3. The Board of Directors' So-Called Duty to Inform

Plaintiffs contend that the Board had a duty to inform GreatBanc of non-public information in the sponsor company's possession that, in hindsight, Plaintiffs feel like GreatBanc should have been given. Plaintiffs' claim fails for several independent reasons.

*First*, the duty to inform does not exist as a matter of law. Plaintiffs' lengthy attempt to distinguish the *In re Lehman Brothers* and *In re BP P.L.C.* decisions—both of which thoroughly and persuasively dispel Plaintiffs' argument that an appointing fiduciary has a "duty to inform" appointed fiduciaries of non-public information—are unconvincing.[8] The decisions were not driven by the fact that the companies were public rather than private, as Plaintiffs contend. Instead, as explained in Defendants' Motion, they were driven by the plain language of ERISA and the fear that imposing such a duty would transform the limited duties of an appointing ERISA fiduciary into all encompassing ones. *Id.* at *44-45. Every appointing fiduciary would be forced, whenever he or she received information about the company, through any business capacity, to consider whether the information must be disclosed to the appointed fiduciary. *Id.* Not only does ERISA fail to impose any such burden on an appointing fiduciary, the court noted, but the common law of trusts, separate and apart from ERISA, similarly fails to impose a continuing duty to inform on appointing fiduciaries. *Id.* at *46-47. Plaintiffs' additional attempt

---

[8] To begin with, Plaintiffs claim that *Lehman* "did not reject the duty to inform," and that any statements in the opinion suggesting otherwise are *dicta*. (Pls.' Memo. in Opp. at PAGEID# 32361.) This contention is baffling. The *Lehman* plaintiffs brought a "distinct" claim against a particular defendant based upon the allegation that the defendant failed to disclose material information to the appointed fiduciaries. *In re Lehman Bros. Sec. & ERISA Litig.*, No. 08-cv-5598, 2015 U.S. Dist. LEXIS 90109, at *40 (S.D.N.Y. July 10, 2015). The defendant moved to dismiss the claim pursuant to Rule 12(b)(6) and the court granted that motion, finding that "ERISA does not impose a duty on appointing fiduciaries to keep their appointees apprised of nonpublic information." *Id.* at *44. Thus, the court squarely addressed the issue, and its decision on the issue was the entire basis for dismissing the plaintiffs' claim, not *dicta* as Plaintiffs claim.

to distinguish the decision on the basis that "the defendant's fiduciary role in *Lehman* was limited" ignores that the Antioch Board's fiduciary role was limited exactly as in *Lehman* and in *BP*. (JX-18; JX-39.) Plaintiffs fail to explain why their final attempt to distinguish the cases, that *Lehman* did not involve "an extraordinary corporate transaction," makes any difference at all. The cases say nothing to suggest such a transaction would be governed differently, as Plaintiffs implicitly concede. In sum, nothing Plaintiffs argue changes that *Lehman* and *BP* are thorough, recent cases rejecting a duty to inform.[9]

None of the Seventh Circuit cases cited by Plaintiffs stand for or even address Plaintiffs' position that appointing fiduciaries have a duty to inform appointed fiduciaries. Instead, the cases address the issue of required disclosures when communicating directly to beneficiaries themselves, which is not the case Plaintiffs litigate here. Furthermore, the standard that the Seventh Circuit sets out related to beneficiary disclosures is a high bar that Plaintiffs have not even arguably met. The Circuit has explained that, "while there is a duty to provide accurate information [to beneficiaries] under ERISA, *negligence in fulfilling that duty is not actionable*. That is why the employer *must have set out to disadvantage or deceive its employees* . . . in order for a breach of fiduciary duty to be made out." *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 642 (7th Cir. 2004) (emphasis added); *see also Hecker v. Deere & Co.*, 556 F.3d 575, 585 (7th Cir. 2009) ("Before such a violation can be found, there must be either an *intentionally* misleading statement [] or a material omission." (emphasis added) (citations omitted)). Although the cases have no applicability to our case, Plaintiffs failed to develop any evidence that the Board, or any director, made an intentionally misleading statement or material omission.

---

[9] Plaintiffs cite out-of-context testimony from Lee Morgan and argue he admitted he had a duty to inform. But legal duties are not established by witness testimony of non-lawyers, they are supplied by the law. And the law is that no duty to inform exists.

And although the court in *Keach v. U.S. Trust Co.*, 313 F. Supp. 2d 818 (C.D. Ill. 2004) ascribed a duty upon the defendant board members to inform the appointed fiduciaries of material facts affecting the beneficiaries, the court went on to find that the directors fulfilled the duty because they "instructed the management and other employees of F&G to provide access to anything and everything that was requested." *Id.* at 864-65. That is right in line with the uncontradicted evidence introduced in Plaintiffs' case. (Tr. 1515:2-1535:17; 2296:16-23; 2301:6-2302:14; 3176:15-21.)

The other district court cases cited by Plaintiffs also fail to persuade that the Board had a duty to inform GreatBanc or that it breached any such duty. Plaintiffs cite two district court cases from Georgia, but the more recent decision acknowledges that district courts are split on the issue even in Georgia, with one Georgia district court citing several appeals courts in rejecting a duty to inform. *In re Beazer Homes USA, Inc.*, No. 1:07-CV-0952, 2010 U.S. Dist. LEXIS 33476, at *27-28 (N.D. Ga. 2010) (*citing Mellot v. ChoicePoint, Inc.*, 561 F. Supp. 2d 1305, 1318 (N.D. Ga. 2007)).[10]

*Second*, Defendants showed in the Motion (through the argument and through the attached appendix) that GreatBanc either knew or should have known everything Plaintiffs argue was not provided to GreatBanc pursuant to the duty to inform. Incredibly, Plaintiffs fail to challenge Defendants' position at all. They do not claim that the Board slanted the facts or that what we identify did not effectively transmit the information to GreatBanc. On the record as Plaintiffs rested, there is no evidence that the Board failed to meet whatever duty to inform might have existed.

---

[10] In *Hill v. Tribune Co.*, No. 05 C 2602, 2006 U.S. Dist. LEXIS 71244 (N.D. Ill. Sept. 29, 2006), the court followed one of these Georgia cases in applying a duty to inform, without substantive analysis, but then dismissed the plaintiffs' claim nonetheless. *Id.* at *73-74. Defendants already distinguished Plaintiffs' other Illinois-based district court case pertaining to a duty to inform appointed fiduciaries, *Howell v. Motorola, Inc.*, 337 F. Supp. 2d 1079 (N.D. Ill. 2004), in their Motion. (PAGEID# 31970-71.)

*Third*, Plaintiffs failed to identify any evidence that the allegedly missing information was "material." (*See* Defs.' Mot. at PAGEID# 31973-74.) Plaintiffs write the word "material" but never define it, and the reason is obvious. They do not deal at all with Ms. Marchetti's consistent testimony that she did not know whether any piece of information, individually or collectively, would have caused GreatBanc to veto the transaction by tendering shares, or renegotiate terms. Such testimony may establish the materiality evidence missing from Plaintiffs' proofs, but Plaintiffs failed to develop any such evidence. Establishing materiality is, of course, an essential element of Plaintiffs' claim. *Keach v. U.S. Trust Co.*, 419 F.3d 626, 638 (7th Cir. 2005).

Plaintiffs also refer to Ms. Marchetti testifying that the information might have generated discussion, but that is not the same thing as saying the information is material. *Id*. There is simply *no* evidence in the record that GreatBanc would have stopped the transaction or renegotiated terms if it had the allegedly missing information, and Plaintiffs do not claim otherwise.

Moreover, Plaintiffs overlook that in *Keach*, the Seventh Circuit held that when a plaintiff alleges that missing information would have been material to a fiduciary's decision, the Court must place the missing information into the context of an otherwise exhaustive due diligence investigation—the type of exhaustive analysis that occurred by GreatBanc proven in Plaintiffs' case. *Id.* ("However, the fact that the due diligence review did not identify or did not document MBC's sweepstakes marketing does not negate, on this record, the reasonableness of U.S. Trust's overall analysis of the merits of the ESOP II transaction in the circumstances prevailing in 1995. Rather, it is important to place U.S. Trust's reliance on Sonnenschein's legal

due diligence within the context of the totality of the circumstances of U.S. Trust's valuation process.").[11]

ERISA does not impose a duty to inform on the Board, so Defendants are entitled to judgment at this point in the case on this claim. Alternatively, if it does exist then it was satisfied, and if the information was not provided, then there is no non-speculative evidence of materiality. Any one of these alternatives likewise requires a defense judgment.

### 4. The EAC Had No Duty to Inform

Plaintiffs suggest on page 12 (PAGEID# 32367) of their memorandum that the EAC members had a duty to inform. No surprise that this is unsupported by citation because nothing in the plan documents, ERISA, or case law supports this contention that the duty exists. Judgment for Defendants on this derivative claim should be entered without a defense case.[12]

### D. Judgment Is Appropriate on Plaintiffs' Prohibited Transaction Claim

As described in Defendants' Motion, Plaintiffs' prohibited transaction claim fails because the facts established by Plaintiffs during their case do not meet the statutory standard for proving a prohibited transaction. Nothing in Plaintiffs' memorandum compels a contrary conclusion.

---

[11] One example shows Plaintiffs' materiality problem. Plaintiffs claim at p. 9 of their brief (PAGEID# 32364) that just like the TAC Board needed certain information to evaluate the transaction, GreatBanc needed the same information. But Plaintiffs are not able to cite any evidence—evidence it obviously needs—in support of this sweeping statement. This is just lawyer say-so. Plaintiffs needed Ms. Marchetti, or another member of GreatBanc's ESOP Committee, or Mr. Bloom to say such information mattered. They have no such evidence.

[12] The cases cited by Plaintiff at page 13, including n. 13 (PAGEID# 32368), do not change this conclusion. *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 590 (7th Cir. 2000) concerns the duty of a plan sponsor to accurately convey benefits information to a beneficiary. An uncontroversial proposition that has nothing to do with issues relevant to this case. *Bowerman* is not a duty to monitor case (the term "monitor" is not in the case) nor does it discuss the duty to inform as it relates to this case. Similarly, *Glaziers &. Glassworkers v. Newbridge Sec.*, 93 F.3d 1171 (3d Cir. 1996) is a benefits case and irrelevant to the duty to monitor and the so-called duty to inform.

1.       There is No Evidence that Defendants Caused the Plan to
         Engage in a Transaction

The uncontradicted evidence shows that Defendants did not have discretionary authority to cause the Plan to enter into the 2003 tender offer. Plaintiffs failed to challenge that Defendants did not "cause" the plan to enter into a transaction, using that word's plain meaning (to make something happen). Defendants also cited two cases, *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 352 (5th Cir. 1989) and *Chesemore*, 886 F. Supp. 2d at 1050-51, for the proposition that a party must possess discretionary authority to be able to "cause" a plan to enter into a prohibited transaction. Here, Plaintiffs did not even attempt to argue that Defendants had such discretion, the cornerstone of ERISA liability. Plaintiffs were unable to identify a shred of evidence that the Defendants had discretion to "cause" the Plan to engage in a transaction with a party in interest.

Instead Plaintiffs argue that Defendants caused the transaction, as that term is used in section 406(a)(1)(A), based on evidence that Lee Morgan signed a cover letter as Antioch CEO accompanying materials regarding the transaction. This is not a serious argument. Sending out information about a transaction in the CEO capacity is obviously not the same as causing the transaction to move forward. Logically and practically, Plaintiffs' argument makes no sense, and it is no surprise Plaintiffs are unable to cite any case in support.

Plaintiffs also argue that Defendants caused the transaction by failing to provide GreatBanc with complete and current information. Leaving aside that Plaintiffs did not prove that any material information was not provided, Defendants are not aware of any case—and certainly Plaintiffs have not cited one—linking the providing of information to prohibited transaction liability. This argument (again) is not based on Defendants having any ability to act for the ESOP and continues to ignore the plain meaning of the word "cause." Moreover,

Plaintiffs' argument is based on pure speculation—they have *no* evidence (fact or expert opinion) that the transaction would not have moved forward or any term would have been different had any piece of allegedly missing information been provided.[13]

Only GreatBanc had the discretion to cause the ESOP to engage in the transaction because it alone had the authority to tender or not tender the shares. (JX-39, at sec. 5(f).) Plaintiffs' claim attempts to hold Defendants to the same liability as if no independent fiduciary had been retained and as if the plan had not been amended to alter their duties with respect to the transaction. Defendants have no prohibited transaction liability on these facts.

## 2. Plaintiffs Did Not Prove a Transaction Between the ESOP and Parties in Interest.

The other statutory hurdle Plaintiffs did not overcome was that Plaintiffs did not prove a transaction between the ESOP and a party in interest. Defendants' motion was principally premised on two simple facts: the ESOP did not purchase or sell any shares in the 2003 transaction and selling shareholders did not receive any plan assets from the ESOP but instead received corporate assets of the Antioch Company. Plaintiffs do not challenge these essential facts, nor can they because the transactional tender offer structure is uncontradicted.

Instead Plaintiffs repeat the now-tired argument that the facts of this case give rise to an indirect transaction. As we have previously noted, and did again in our Motion, it is well-established that an indirect transaction is the transfer of plan assets to or from an ESOP to or from a party in interest, with the exchange routed through an intermediary. *See Neil v. Zell*, 677

---

[13] The cases Plaintiffs do cite do not support their position. Indeed, that these cases are the most compelling Plaintiffs could identify shows the weakness of their arguments. The language Plaintiffs cite from *Gilliam v. Edwards*, 492 F. Supp. 1255, 1263 (D.N.J. 1980) is from the court's discussion of a § 406(b) claim, so it is irrelevant to whether a transaction was "caused" under § 406(a) (§ 406(b) does not have the same "cause" language as § 406(a)). *Iron Workers v. Bowen*, 624 F.2d 1255, 1261 (5th Cir. 1980) suffers from the same deficiency – it is not a 406(a) case. Indeed the word "cause" does not appear anywhere in the opinion, nor does "prohibited transaction." In *Fisher v. Mackenzie*, 1995 WL 17212463 (E.D. Wash. Nov. 19, 1995), a party was said to cause the transaction where he identified, proposed, explained, and structured an investment only to then abstain in voting. Here, there is no evidence Lee Morgan participated in GreatBanc's evaluation, let alone controlled it.

F. Supp. 2d 1010, 1027 (N.D. Ill. 2010); *McDougall v. Donovan*, 552 F. Supp. 1206, 1216 (N.D. Ill. 1982). Per these cases, alleging an indirect prohibited transaction does not relieve a plaintiff of the obligation to show that a transaction occurred between a plan and a party in interest through a third party. As we represented in opening statements, Plaintiffs were unable to prove that because the facts are to the contrary.

Plaintiffs cite certain uncontroversial evidence at page 22 of its memorandum to argue that the transaction impacted the Plan in some ways. But, crucially, none of the evidence shows the ESOP engaging in a transaction with a party in interest as is necessary to establish prohibited transaction liability.[14]

Plaintiffs cite to the Seventh Circuit's decision in this case as supporting the prohibited transaction claim. But the court in *Fish* was not called upon to judge the merits of Plaintiffs' claims (it was only considering the timeliness of them) and the appeals court was required to "consider the factual record in the light most favorable to the plaintiffs and give them the benefit of all conflicts in the evidence and reasonable inferences that may be drawn from the evidence." *Fish*, 740 F.3d at 674. Indeed all the court was really doing was describing Plaintiffs' unproven allegations. Now the issues are different (the merits of Plaintiffs' claim) and so is the standard (Plaintiffs' burden instead of evidence being viewed in favor of Plaintiffs).

---

[14] The cases cited by the Plaintiffs again provide far greater support for Defendants. For example, Plaintiffs cite *Chesemore v. Alliance Holdings, Inc.*, 886 F. Supp. 2d 1007 (W.D. Wis. 2012) but there the ESOP purchased shares at several stages of the transaction which did not happen here. *See id.* at 1037-1039, 1047 (holding that § 406 was implicated because "[t]he Trachte ESOP exchanged shares" and "a promissory note"). Likewise, in *Neil* the court found that the first step of a transaction was the ESOP making a $250 million payment. 677 F. Supp. 2d at 1027-28. The ESOP made no payment here. Plaintiffs also cite *Sandoval v. Simmons*, 622 F. Supp. 1174, 1213 (C.D. Ill. 1985). But as explained by *Wright v. Or. Metallurgical Corp.*, 222 F. Supp. 2d 1224 (D. Or. 2002), *Sandoval* held only "that when a specific transaction between a third party and a plan fund is proposed to a fund fiduciary and the fiduciary declines to enter into the transaction for self-interested reasons, that decision can trigger liability under § 1106." *Wright*, 222 F. Supp. 2d at 1236, *aff'd*, 360 F.3d 1090 (9th Cir. 2004). Here, there is no allegation and no evidence that the independent Trustee GreatBanc, as the appropriate plan fiduciary, made the decision to decline the tender offer for solely self-interested reasons.

18

Plaintiffs' suggestion that the *Fish* decision is law of the case with respect to the prohibited transaction claim is misguided. Law of the case is limited to those issues actually decided. In *Fish*, that was whether summary judgment was appropriate based on the statute of limitations. If that issue were back before the Court, law of the case would govern. But that issue and procedural context is not what is at issue now, we are at trial on the merits. There is no law of the case on the merits of this litigation because the Seventh Circuit has never reviewed the merits. *See Zamora-Mallari v. Mukasey*, 514 F.3d 679, 695-96 (7th Cir. 2008) (law of the case inapplicable where prior decision did not reach merits).[15] Moreover, application of the law of the case doctrine (as it relates to the merits of Plaintiffs' claims) is inappropriate where, as here, the factual record has changed since the Seventh Circuit reviewed the case (and here it has changed substantially—many more depositions, seven weeks of trial).[16]

Plaintiffs failed to develop evidence of a direct or indirect exchange of property between the plan and a party in interest. That is what the ERISA statute prohibits in section 406(a)(1)(A) and the Court's task is to apply the plain language of the statute to the factual record developed by Plaintiffs. Doing so can only yield the conclusion that Plaintiffs failed to put in the record any evidence supporting their prohibited transaction claim. As a result, it is unnecessary to litigate the fair value affirmative defense and the Court may enter judgment for defendants based on Plaintiffs failure to prove their case.[17]

---

[15] *See also U.S. v. Johnson*, 616 F.3d 85, 93 (2d Cir. 2010) ("the application of law-of-the-case doctrine is generally inappropriate when relevant issues are governed by different standards of review."); *Perillo v. Johnson,* 205 F.3d 775, 780 (5th Cir. 2000) (same).

[16] *See Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1283 (11th Cir. 2005) ("When the record changes, which is to say when the evidence and the inferences that may be drawn from it change, the issue presented changes as well. The first exception to the doctrine recognizes that the law of the case is the law made on a given set of facts, not law yet to be made on different facts.")

[17] Plaintiffs attempt in a number of places to place a burden of proof on Defendants with respect to the prohibited transaction claim. The analytical framework however is well-established. Plaintiffs have the burden of establishing

**E.     No Legal or Factual Basis Exists to Impose Co-Fiduciary Liability Under Section 405(a)**

Plaintiffs have it all wrong with regard to the sufficiency of proofs for co-fiduciary liability under ERISA section 405(a). For starters, as we show above in section II(C)(2)(b) (page 6) Plaintiffs have not carried their burden of proving that GreatBanc breached a fiduciary duty to the Plan, the threshold factor for co-fiduciary liability. As a result, judgment at this stage of the case is appropriate on Plaintiffs' co-fiduciary liability claims against the Defendants.

Putting that evidentiary shortcoming aside, Plaintiffs failed to prove that the Defendants had actual knowledge of any supposed fiduciary breach by GreatBanc. Plaintiffs concede that liability under 405(a)(1) requires evidence that the Defendants knew GreatBanc's conduct constituted an actual breach of fiduciary duty. (Pls.' Memo. in Opp. at PAGEID# 32382.) Plaintiffs, however, failed to develop any evidence of such knowledge, much less sufficient knowledge to proceed to a defense case.

And with regard to sections 405(a)(2) and 405(a)(3), Plaintiffs cite the incorrect legal standard applicable to prove co-fiduciary liability. First section 405(a)(2). Based on the express language of section 405(a)(2), courts have held that liability for "enabling" a defendant's co-fiduciary to commit a breach must arise from the defendant's failure to comply with the duty of prudence under section 404(a)(1). *Brandt v. Grounds*, 687 F.2d 895, 898-99 (7th Cir. 1982); *Nagy v. DeWese*, 771 F. Supp. 2d 502, 520-22 (E.D. Penn. 2011). In other words, in this case, since the Defendants were stripped of their discretionary authority with regard to the transaction, they had no duty of prudence as it related to the transaction. As a result, section 405(a)(2) is inapplicable as a matter of law. Second, Plaintiffs are plain wrong that section 405(a)(3) requires

---

the elements of a section 406 claim, including that a transfer of property between a plan and a party in interest occurred, and that defendants caused that transaction. Only if Plaintiffs had met this burden would a burden shift to Defendants to demonstrate fair value under ERISA section 408 as a defense. Defendants' Motion relates solely to Plaintiffs' section 406 burden and their failure to establish evidence supporting the elements of the claim.

anything less than actual knowledge that the action of the defendants' co-fiduciary violated the law. The plain statutory language, which courts are bound to apply and in fact do, requires nothing less than "knowledge of a breach by such other fiduciary, . . . ." 29 U.S.C. § 1105(a)(3).[18]

But even if constructive knowledge of facts met the standard, Plaintiffs' proofs do not suffice. Urging the court to adopt more lawyer say-so, they argue that Defendants knew that the transaction GreatBanc was analyzing was prohibited under section 406(a)(1) but fail to acknowledge, once again, the facts proven at trial. (Pls.' Memo. in Opp. at PAGEID# 32383.) The transaction was between a company and its shareholders; the ESOP was specifically excluded and no ESOP assets were exchanged. We submit that this is insufficient to adduce constructive knowledge of an ERISA violation.

Likewise with regard to the evidence Plaintiffs cite for constructive knowledge of a prudence violation. (Pls.' Memo. in Opp. at PAGEID# 32383-84.) The fact that the transaction price was 25% higher than the preceding valuation actually cuts the opposite way since the evidence shows that this was in line with the year-to-year price increases for the prior five years. (JX-64 at P-WOOSLEY-000067 (showing annual increases ranging from 24% to 37%).) With regard to so-called "challenges and difficulties" that company was "facing" in 2003, there is no evidence of any such issues other than the unpersuasive testimony of Rhonda Anderson (who could not distinguish what she learned on Facebook or from the Plaintiffs' lawyers from what she learned in 2003), Mark Mizen (who has questionable credibility given the suspiciously missing part of the video he produced as compared to the transcript of the talk and who has a

---

[18] Up against the several cases cited in the Motion at 27-28 (PAGEID#31978-79) supporting application of this plain statutory language, Plaintiffs cite the sole outlier case that simply suggested constructive knowledge may suffice to impose liability under section 405(a)(3). (Pls.' Mem. in Opp. at PAGEID# 32382 & n.28 (*citing Martin v. Hartline*, 1992 WL 12151224 (D. Utah 1992)).)

professional axe to grind) and Suzanne Johnson (who likewise has an axe to grind). As to Defendants' knowledge that CM-US may experience "slowing growth" in the future, the point is incomprehensible because Plaintiffs put forth no evidence that the Defendants had knowledge of the financial data that Duff or GreatBanc definitively relied upon, or that they relied upon management's projections. Similarly incomprehensible (and more importantly irrelevant) is the reference to the Plan amendment and sensitivity scenarios that GreatBanc allegedly did not receive. If GreatBanc did not have this information then it is not relevant to the Defendants' constructive knowledge of a GreatBanc breach.

Plaintiffs have not carried their evidentiary burden as of the close of their case to proceed to a defense case on the co-fiduciary claims under section 405(a). Accordingly, judgment for the defense is appropriate at this stage of the trial.

### F.     Plaintiffs Have Insufficient Proof of Their Damages

Plaintiffs' memorandum confirms that they have insufficient proof of damages at the close of their case to proceed further in the litigation.

### 1.     Plaintiffs Bear the Burden of Causation

To compensate for their lack of evidence showing that the alleged breaches by Defendants caused Plaintiffs' alleged damages, Plaintiffs incorrectly argue that they do not need to prove causation. Instead, they attempt to shift to Defendants the burden of proof with respect to this element of their claim. Plaintiffs' argument fails because it contradicts established law in this Circuit.

The Seventh Circuit has repeatedly and without exception placed the burden of proving causation upon the plaintiffs in ERISA breach of fiduciary duty actions. *E.g., Killian v. Concert Health Plan*, 742 F.3d 651, 658 (7th Cir. 2013) (beneficiary is entitled to relief for a breach of fiduciary duty under ERISA "if he proves . . . that the breach resulted in harm to the plaintiff");

*Peabody v. Davis*, 636 F.3d 368, 373 (7th Cir. 2011) (to prevail on ERISA breach of fiduciary duty claim, "the plaintiff must show a breach of fiduciary duty, and its causation of an injury"); *Howell v. Motorola, Inc.*, 633 F.3d 552, 565 (7th Cir. 2011) ("To succeed in their suit, the plaintiffs must show more than that the defendants were fiduciaries. They must also present evidence that the fiduciaries breached a duty and that the breach caused them harm.")

Plaintiffs fail to recognize this law, and instead cite the Seventh Circuit's *Leigh v. Engle*, 727 F.2d 113 (7th Cir. 1984) decision in support of their argument. But *Leigh* is unavailing because the case does not address the burden of proof on causation at all. Instead, the case examined which party should bear the burden of "disentangle[ing] commingled profits" gained through the defendants' breach. *Id.* at 138. In fact, directly contrary to Plaintiffs' argument, the *Leigh* court specifically notes that "plaintiffs must prove causal connection between plan losses and breaches of fiduciary duty." *Id.* at 137 (*citing Brandt v. Grounds*, 687 F.2d 895, 898 (7th Cir. 1982)).[19]

Because Seventh Circuit law is settled that Plaintiffs must prove causation, Plaintiffs' citation to other Circuits can be ignored. But to the extent that other Circuits are at all relevant to the issue, Plaintiffs misrepresent the state of the law in arguing that "the majority rule" shifts to defendants the burden of proof on causation. At least three other Circuits, in addition to the Seventh Circuit, hold that ERISA plaintiffs carry the burden of proving that the defendant's breach caused the plaintiff's loss. *See Silverman v. Mut. Ben. Life Ins. Co.*, 138 F.3d 98, 105 (2d Cir. 1998) ("Causation of damages is . . . an element of the [ERISA] claim, and the plaintiff bears the burden of proving it."); *Kuper v. Ivenko*, 66 F.3d 1447, 1459 (6th Cir. 1995), *abrogated*

---

[19] The district court decisions cited by Plaintiffs similarly dealt with determining the appropriate measure of damages in an ERISA case, not with the burden of proof on causation.

*on other grounds by Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014) ("[A] plaintiff must show a causal link between the failure to investigate and the harm suffered by the plan."); *Willett v. Blue Cross & Blue Shield of Ala.*, 953 F.2d 1335, 1343 (11th Cir. 1992) ("the burden of proof on the issue of causation will rest on the beneficiaries; they must establish that their claimed losses were proximately caused by [the defendants' breach]"). These decisions are firmly grounded in the statute, as Congress provided for no burden shifting in ERISA as Plaintiffs now seek. As stated by the Supreme Court, "Where a statute is silent on the allocation of the burden of persuasion, the ordinary default rule [is] that plaintiffs bear the risk of failing to prove their claims." *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 168 (2009) (internal quotation marks and citations omitted). The true majority rule abides by this rule, and recognizes that courts should not graft an unwritten burden-shifting mechanism into ERISA where Congress chose not to include one. Plaintiffs cannot overcome their lack of causation evidence by inventing Seventh Circuit law.

2. **Plaintiffs Failed To Prove Damages**

a.      Reilly's Flawed and Unreliable Opinions

Although Plaintiffs claim that through Robert Reilly they have "provided substantial evidence" of damages, their memorandum in opposition fails to address the significant errors in Reilly's analysis which make his damages opinions unsupportable and unreliable.

As to Reilly's "first flaw" damages calculation, Plaintiffs don't even attempt to address the significant errors contained in the five discounted cash flow analyses that Reilly created to "correct" for Duff & Phelps's purported "first flaw." (*See* Defs.' Mot. at PAGEID# 31984-85.) Plaintiffs do not dispute that two of Reilly's DCF scenarios are based on an ARIMA methodology that was not possessed by the Antioch Company in 2003 and is not appropriate for projecting corporate sales 10 years in the future. *Id.* Plaintiffs likewise do not dispute that

the two DCFs based upon revenues from Deloitte's "Downside" and "Big Downside" feasibility models are unreliable because these feasibility models did not incorporate any specific risks or reasonable expectations of the company's future business. *Id.* Plaintiffs also do not dispute that the 5% CSRP Reilly applies in his fifth and final DCF analysis to lower the Antioch stock value from $845 to $590 per share is simply his "professional conclusion"—or what he admitted is nothing more than "Robert Reilly's estimate." (Pls.' Memo. in Opp. at PAGEID# 32387; Tr. 4150:23-4152:6.) This "estimate" is not based on any formula or quantification of the specific risk factors identified in Reilly's report. (Tr. 4151:2-4152:6.) Rather, this 5% CSRP "estimate" is based principally on a few telephone calls of unknown length with the familiar closed feedback loop of Mark Mizen, Rhonda Anderson, and Richard Wiser. This subjectivity and lack of methodology is precisely why courts are skeptical of experts like Reilly that apply a CSRP simply to achieve their desired results—results that in this case are directly contrary to what the management and other businesspeople at the Company, the lenders, and the transaction advisors all actually believed in 2003. *See Del. Open MRI Radiology Assocs., P.A. v. Kessler*, 898 A.2d 290, 339 (Del. Ch. 2006) ("To judges, the company specific risk premium often seems like the device experts employ to bring their final results into line with their clients' objectives, when other valuation inputs fail to do the trick.")[20]

---

[20] *See also, e.g., In re Sunbelt Bev. Corp. S'holder Litig., Consol.*, C.A. No. 16089-CC, 2010 Del. Ch. LEXIS 1, *46-46 (Del. Ch. Jan. 5, 2010) ("Proponents of a company-specific risk premium . . . must overcome some level of baseline skepticism founded upon judges' observations over time of how parties have employed the quantitative tool of a company-specific risk premium.") *In re Sunbelt Bev. Corp.* is also instructive, as it represents a court that rejected Robert Reilly's attempted use of a company-specific risk premium to adjust management projections that were purported too optimistic. The court reasoned:

> The present case demonstrates another critical consideration in evaluating the propriety of a company-specific risk premium. Even if I were to have found persuasive the arguments defendants have made for inclusion of a company-specific risk premium, I would be especially skeptical of the 3% risk premium which defendants advocate. Reilly has provided no specific, quantitative

Plaintiffs similarly fail to address the reasons that Reilly's "second flaw" damages are methodologically flawed and unsupportable. Plaintiffs do not attempt to explain why Reilly was instructed to completely exclude from his analysis a third of the repurchase obligation scenarios run by Plaintiffs' expert David Weinstock, why Reilly deducts $80 million dollars directly from the Company enterprise value without giving the Company the corresponding benefit of a reduced number of outstanding shares that it would indisputably receive, or why *no* other valuation professional in this case involved with the Antioch company outside the context of litigation accounted for the potential future repurchase obligation in this manner. (Defs.' Mot. at PAGEID# 31985-86.)

Plaintiffs' silence in this regard "is deafening" and constitutes a waiver of any argument that Reilly's "first flaw" and "second flaw" damages opinions are anything other than unreliable and unworthy of any weight. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (collecting cases holding that failure to respond to an adversary's argument waives any defense to such argument).

        b.      Purported "Misappropriation of ESOP Cash" and Other Damages Theories

Plaintiffs claim that an "additional measure of damages" is that "ESOP cash [was] used to partially satisfy TAC's RO in 2004." (Pls.' Memo. in Opp. at PAGEID# 32388.) Far from a cognizable damages theory flowing out of the purported violations of ERISA sections 404, 405, or 406 in 2003, Plaintiffs are instead attempting to argue for some type of unpleaded and novel

---

explanation for why 3% is the appropriate level for a company-specific risk premium. It is important for any proposed company-specific risk premium to be based on a specific financial analysis, so that the Court can verify both the propriety of including the risk premium and the appropriate level of the premium.

*Id.* at *50 (*citing Gesoff v. IIC Industries, Inc.*, 902 A.2d 1130, 1158-59 (Del. Ch. 2006) (noting that the valuation expert was "unable, crucially, to point to specific financial analyses on which the court could rely to derive such a discount.")).

claim of liability (which this Court has ruled they could not do) flowing from actions the Board took in 2004 to manage the Company's repurchase obligation. The Board's decision to implement ESOP recycling in 2004 was a common method for funding all or part the ESOP repurchase obligation, as Plaintiffs' own expert David Weinstock testified. (Tr. 3367:3-13.) No witness has testified to the contrary. Moreover, Plaintiffs do not dispute that the ESOP recycling simply replaced once asset (cash) with another (Antioch stock), and they cannot point to any evidence that any participant preferred the cash as opposed to the Antioch shares that had been increasing in value over the prior ten years in their accounts (and that increased from $894 at year-end 2003 to $943 at year-end 2004.)

In response to Defendants' Motion, Plaintiffs do not explain why rescission of the 2003 Transaction is appropriate (it is not), or why any other alternative damages theory should be applied. Plaintiffs do little more than baldly allege that their "plain vanilla damage theories [] are certainly viable" and that other unspecified "equitable relief" is also appropriate. (Pls.' Memo. in Opp. at PAGEID# 32389-90.) As discussed above, any such alternative damage theory (including the footnote reference to "dissipation of ESOP assets") fails because Plaintiffs have not met *their* burden of proof. Plaintiffs have offered no evidence that delineates between what purported loss to the ESOP was proximately caused by Defendants' alleged breaches and what loss is attributable to any other possible cause such as the unforeseeable decline in sales. *See*, *e.g.*, *Chesemore,* 948 F. Supp. 2d at 941 (plaintiffs did not meet burden of proof on causation because they "ignore[d] the tsunami that was the 2008 financial crisis"); (Tr. 3991:21-24 (Reilly: "I don't know that anyone was able to predict 2006 and 2007 because the company's results were a lot lower than any projection, any forecast indicated.".)

In addition to all the other independent reasons discussed above, this Court should enter judgment in Defendants' favor without proceeding to a defense case because Plaintiffs have failed to prove a single, viable damages theory.

## III.  CONCLUSION

For the foregoing reasons, the Court should grant judgment to Defendants pursuant to Rule 52(c).

Respectfully Submitted,

KEATING MUETHING & KLEKAMP, PLL

By: _/s/ Michael L. Scheier_
    Michael L. Scheier
    Brian P. Muething
    Anthony M. Verticchio
    Jacob D. Rhode
    One East Fourth Street, Suite 1400
    Cincinnati, Ohio 45202
    mscheier@kmklaw.com
    bmuething@kmklaw.com
    averticchio@kmklaw.com
    jrhode@kmklaw.com
    *Attorneys for Defendants Lee Morgan,*
    *Asha Morgan Moran, and Chandra Attiken*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 6, 2016, I caused true and correct copies of the foregoing to be filed electronically using the Court's CM/ECF system and to thereby be served upon all registered participants identified in the Notice of Electronic Filing in this matter on this date. This document is available for viewing and downloading on the CM/ECF system.

/s/ Michael L. Scheier
Michael L. Scheier