UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BONNIE FISH, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>GREATBANC TRUST COMPANY, et al.,<br><br>Defendants. | Case No. 1:09-cv-01668<br><br>Honorable Jorge L. Alonso<br><br>Honorable Maria Valdez |

**DEFENDANTS LEE MORGAN'S, ASHA MORAN'S AND CHANDRA ATTIKEN'S RESPONSE TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**

The *Chesemore* decision provided to the Court by Plaintiffs as supplemental authority is exemplary of those circumstances that can lead to ERISA liability: corporate raiding, pledging ESOP assets as collateral, direct purchases of securities by an ESOP, and interested transactions with no independent trustee. None of those circumstances exist in the present case. Therefore, as explained below, the *Chesemore* decision supports judgment for Defendants.

**I.     Factual Context of *Chesemore***

The factual context of *Chesemore* is important. The first relevant company is Trachte Building Systems. In the 1980s that company was owned and managed by Stephen Pagelow. Slip Op. at 4, Doc. 678-1. In 1987 Pagelow directed the establishment of an ESOP as an employee benefit, "selling some of his shares to the plan."[1] *Id*. Trachte then "experienced significant growth" in sales and operations during the 1990s. *Id*.

---

[1] This stands in contrast to the Antioch Company where the Morgan family authorized the issuance of new shares to the ESOP, diluting their ownership interest, and receiving no financial compensation in return. Defs.' Proposed Findings of Fact and Conclusions of Law ("FFCL"), Doc. 661, ¶ 17.

David Fenkell was CEO and the only director of Alliance, the other company important in *Chesemore*. Alliance's business was to "buy[] and sell[] ESOP-owned, closely held companies that might otherwise be difficult to sell." *Id*. at 5. "In short," the Seventh Circuit said, "Fenkell and Alliance made money by flipping ESOP-owned, closely held companies with limited marketability." *Id.*

In 2002 Alliance purchased about 80% of Trachte for $26 million. Consistent with Alliance's business model, the Trachte ESOP was dissolved by folding it into the Alliance ESOP. Four years later, "and with serious doubts about Trachte's future performance, Fenkell decided it was past time to sell." *Id.* at 6. With respect to his goals in such a sale, in 2002, "Fenkell had projected that Trachte would sell for as much as $50 million in 2007. Throughout 2006 he looked for a buyer at or near that price, but he came up empty-handed. Failing to find an independent buyer at his desired price, Fenkell devised and implemented a complicated leveraged buyout to off-load the company onto Trachte's employees." *Id.*

To accomplish his plan, "Fenkell orchestrated the removal of Trachte's entire board of directors" and in its place installed two people beholden to him. *Id*. "[F]ollowing a plan of Fenkell's devising," the new board created a new Trachte ESOP and installed themselves and a third person as the trustees. *Id*. Then the accounts of the Trachte employees were spun off from the Alliance ESOP to establish a new Trachte ESOP; Trachte used the new Trachte ESOP accounts as collateral for loans; and finally the Trachte ESOP purchased Trachte equity from Alliance, Alliance employees, and Pagelow. *Id.* at 7-8.

Following the August 2007 transaction, the company could not meet its loan covenants by May 2008 and was insolvent by the end of 2008.

2

After a bench trial, the court found Fenkell liable under ERISA. Central to the district court's holding was that Fenkell ensured there was no independent trustee. Rather, those "charged with decision-making authority on the other side of the transaction would remain answerable to Alliance and Fenkell should" the transaction not move forward. *Id*. at 8-9 (quoting *Chesemore v. Alliance Holdings, Inc*. (*Chesemore I*), 886 F. Supp. 2d 1007, 1052 (W.D. Wis. 2012) (internal quotations omitted)). "In other words, if there had been an actual independent fiduciary, Fenkell and Alliance wouldn't have gotten away with it. They installed trustees who (1) had a conflict of interest that placed them under substantial duress during the negotiation and assessment of the deal; and (2) lacked the experience and the incentive to assess a deal of this type and complexity." Slip Op. at 9, Doc. 678-1 (quoting *Chesemore I*, 886 F. Supp. 2d at 1052) (internal quotations omitted). In sum, Fenkell and Alliance "controlled the decision" to pledge ESOP accounts as collateral and "orchestrated the entire complex transaction." *Id.*

The facts of *Chesemore* could not be further from the evidence in the record concerning the 2003 Transaction at the Antioch Company. The 2003 Transaction was not pursued as an exit strategy by a corporate raider that could not find a suitable transaction in the marketplace. Instead, the transaction was motivated by the potential for large tax savings for the company, among other significant benefits. *See, e.g.*, FFCL at ¶¶ 28-29, 40. Unlike Fenkell's view on Trachte's future, none of Antioch management, GreatBanc, the lending syndicate, or those individuals accepting the "package" had doubts about Antioch's viability. Certainly there is no evidence that any Defendant doubted the future success of the Company. Fenkell removed the Trachte board of directors to facilitate the transaction and installed directors beholden to him. Antioch's board remained constant and independent. All the evidence at the trial is that Antioch's board was constituted with serious and talented individuals. *See, e.g.*, FFCL at ¶ 36.

There are still other important differences. Not one but two ESOPs directly participated in the challenged transaction in *Chesemore*. First, the Alliance ESOP participated in the spinoff of Trachte interests. Second, the new Trachte ESOP's assets were pledged as collateral for loans and that ESOP directly purchased equity including from Fenkell – in the transaction. In the Antioch case, the Antioch ESOP did not participate in the transaction as a purchaser or seller and no plan assets were utilized as payment or collateral. Further, Trachte was insolvent in 16 months whereas Antioch did not file bankruptcy for nearly five years.

The biggest difference though was the lack of an independent fiduciary in the *Chesemore* case. As previously briefed by defendants, the retention of an institutional trustee cures conflicts and is an important fact in denying breach of fiduciary duty claims. *See* Defs' Pre-Trial Memo., Doc. 552, at 13; Defs' Motion For Judg. On Partial Findings, Doc. 625-1, at 5, 9-10; Defs' Trial Brief, Doc. 662, at 5 n.2. It was no surprise then that ERISA liability was found in *Chesemore* where the trustees "had a conflict of interest that placed them under substantial duress" and they "lacked the experience and the incentive to assess a deal of this type and complexity." Slip. Op. 9, Doc. 678-1 (quoting *Chesemore I*, 886 F. Supp. 2d at 1054). That stands in substantial contrast to this case where Antioch retained an independent institutional trustee that had no conflict of interest and was not beholden to anyone; and was a trustee with perhaps more experience than any available for the role.

## II. *Chesemore* Confirms Defendants Were Not Fiduciaries

Turning to the two points Plaintiffs advanced in their notice, Plaintiffs claim *Chesemore* establishes that Defendants in this case were ERISA fiduciaries. But the opposite is true. The Seventh Circuit reaffirmed that ERISA fiduciary status turns on "*functional* terms of control and authority over the plan." *Id*. at 17 (citing *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 916 (7th Cir. 2013).) Fenkell met this standard because the "whole of the deal was designed to

4

occur only on terms favorable to him. It was arranged so that no one on the other side of the deal would look out for the interests of Trachte or its employees post-spin-off; indeed, the trustees of the new Trachte ESOP reported to Alliance and Fenkell." *Id*. In short, Fenkell was a fiduciary because "he effectively controlled both sides of the transaction." *Id.* Because "any involvement by a truly independent fiduciary looking after the Trachte interests would have scuttled the deal," but instead the deal went through, Fenkell was held to be a functional fiduciary. *Id.*

In the present case, Defendants do not meet the functional fiduciary standard. Instead of "no one look[ing] out" for the ESOP, Antioch retained the leading institutional trustee. And there is no evidence that Defendants controlled GreatBanc's consideration of the transaction. Indeed Defendants had no control whatsoever over the ESOP's consideration of the transaction; they performed no "function" to meet the functional test, and certainly did nothing like Fenkell in *Chesemore*. Without these facts, Defendants were not ERISA fiduciaries.

## III.     Effect of the Financial Crisis

The second reason *Chesemore* is relevant, per Plaintiffs, relates to the financial crisis. Unlike Fenkell's fiduciary status, which the Seventh Circuit did analyze and decide, the reference to the economic crisis in 2007-08 in the opinion is in passing, in a section analyzing what the district court did. There is no holding on this topic. But what the district court did fully supports Defendants so we address the point in brief.

The economic crisis argument came up twice in the district court. First, plaintiffs alleged that the transaction caused the Trachte company's decline and insolvency and sought the loss in the Trachte share price (*i.e.*, the full value of the pre-transaction Trachte share price). *Chesemore v. Alliance Holdings, Inc.*(*Chesemore II*), 948 F. Supp. 2d 928, 941-942 (W.D. Wis. 2012). The second place was plaintiffs' claim to have the spinoff of assets from the Alliance ESOP to the new Trachte ESOP restored, a claim for "restoration." *Id.* at 945-946.

The district court held that as for damages based on the decline in the share price, the intervening effect of the financial crisis prevented plaintiffs' damages because they could not sort out the cause of the financial decline of the company. *Id.* at 942. (And recall, Trachte failed in 16 months, not five years like Antioch where there were many more intervening circumstances). As for the restoration claim, the district court said the recession was not relevant to this claim seeking to undo a transaction that the ESOP directly participated in, particularly where plaintiffs there introduced evidence (which the court ultimately adopted) that had the funds remained in the Alliance ESOP, they most likely would have been liquidated in a third-party sale shortly thereafter. *Id.* at 945-946.

In other words, for a stock-price-based damages claim, plaintiffs had to sort out causation issues. For the purely equitable restoration claim – the return of plan assets – the financial crisis was irrelevant. As applied to this case, Plaintiffs in this case have asserted something akin to the first claim (requiring them to sort out one possible reason the company declined from any other) and nothing like the second (they could not because there was no spinoff, or other use of ESOP assets to "restore"). Plaintiffs' point in their supplemental filing misses the mark because under the district court's reasoning in *Chesemore*, Plaintiffs needed to (and did not) meet their burden of proving what caused their claimed damages.

Respectfully Submitted,

KEATING MUETHING & KLEKAMP, PLL

By: */s/ Michael L. Scheier*
    Michael L. Scheier
    Brian P. Muething
    Anthony M. Verticchio
    Jacob D. Rhode
    One East Fourth Street, Suite 1400
    Cincinnati, Ohio 45202
    mscheier@kmklaw.com
    bmuething@kmklaw.com
    tverticchio@kmklaw.com
    jrhode@kmklaw.com
    *Attorneys for Defendants Lee Morgan,*
    *Asha Morgan Moran, and Chandra Attiken*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 8, 2016, I caused true and correct copies of the foregoing to be filed electronically using the Court's CM/ECF system and to thereby be served upon all registered participants identified in the Notice of Electronic Filing in this matter on this date. This document is available for viewing and downloading on the CM/ECF system.

    /s/ Michael L. Scheier
    Michael L. Scheier

6974138